PERETORE & PERETORE, P.C.
110 Park Street
Staten Island, NY 10306
(718) 667-8785
Attorneys for General Electric Capital Corporation

_____

Frank Peretore, Esq.
FP #7020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

GENERAL ELECTRIC CAPITAL CORPORATION,

      Plaintiff,

      v.

RURAK OCEAN TOURS, INC., ROYAL TOURS
SERVICE, INC., HIROAKI ONUKI, MICHAEL
COLANGELO, PREMIER COACH, INC., AGIM
LOZOJA,

      Defendants.

-------------------------------------------------------------------x

Case Number: 08-CV-03378

Judge Stein

ECF CASE

VERIFIED COMPLAINT

Plaintiff, General Electric Capital Corporation (hereinafter referred to as plaintiff or "GE") by its attorneys, Peretore & Peretore, P.C., complaining of the defendants alleges as follows:

## JURISDICTION AND PARTIES

1. This court has jurisdiction of the within cause of action pursuant to 28 U.S.C. Section 1332, plaintiff and defendants being citizens of different states and the amount in controversy exceeding Seventy Five Thousand Dollars ($75,000.00), exclusive of costs and interest.

2. Plaintiff is a Delaware corporation with its principal offices in Danbury, Connecticut.

3.    Upon information and belief, defendant Royal Tours Services is a New York corporation with offices located at 1150 Longwood Ave., Bronx, New York 10454.

4.    Upon information and belief, defendant Rurak Ocean Tours is a New York corporation with offices located at 1150 Longwood Avenue, Bronx, New York 10454.

5. Upon information and belief, defendant Michael Colangelo is a New Jersey resident residing at 929 E. Ridgewood Ave., Ridgewood, New Jersey.

6.    Upon information and belief, defendant Hiroaki Onuki is a New York resident, residing at 130 Green Street, Brooklyn, New York 11222. Hereinafter, Royal Tours Services, Rurak Ocean Tours, Michael Colangelo, and Hiroaki Onuki will be referred to collectively as the Royal/Rurak defendants.

7. Upon information and belief, defendant Premier Coach, Inc. is a New York corporation with offices located at 1150 Longwood Avenue, Bronx, New York 10454.

8. Upon information and belief, defendant Agim Lozoja is the Chairman of the Board of Premier Coach, Inc., and a New York resident, residing at 247 E.136th Street, Bronx, New York.

9. Venue is proper in this district under 28 U.S.C. Section 1391(a)(2) and (3) as a substantial part of the property that is the subject of this action is situated in this district and as four of the defendants are subject to personal jurisdiction in this district.

## AS AND FOR PLAINTIFF'S FIRST CAUSE OF ACTION

### (Lease 1:  Breach of Contract)

10. Plaintiff repeats and realleges paragraphs 1-9 of this Verified Complaint with the same force and effect as if fully set forth herein.

11.  On or about October 8, 1998, Royal Tour Services, Inc. ("Royal") entered into and

2

executed a Commercial Transportation Lease Agreement ("Lease 1"), as Lessee, with GE, as Lessor, whereby Royal leased certain vehicles from GE, which are listed in the Schedule attached thereto. **EXHIBIT A** hereto is a copy of Lease 1. **EXHIBIT B** hereto is a copy of the schedule of vehicles subject to Lease 1. GE duly obtained certificates of title registering its ownership of the vehicles subject to Lease 1. Copies of the certificates of title to the vehicles subject to Lease 1 are attached hereto as **EXHIBIT C.**

12. On or about October 16, 1998, Michael Colangelo ("Colangelo") entered into and executed an absolute, unconditional and continuing Guaranty agreement whereby he guaranteed payment by Royal. **EXHIBIT D** attached hereto is a copy of the Guaranty agreement.

13. On or about October 14, 1998, Hiroaki Onuki ("Onuki") entered into and executed an absolute, unconditional, and continuing Guaranty agreement whereby he guaranteed payment by Royal. **EXHIBIT E** attached hereto is a true and accurate copy of the Guaranty agreement.

14. From time to time, GE and Royal executed and entered into agreements modifying the payment structure of and extending Lease 2, but otherwise renewing Lease 2 on the same terms and conditions as set forth in Lease 2. A copy of the Lease Renewal Amendment (TRAC) executed and entered into between Royal and GE and dated April 1, 2007 is attached hereto as **EXHIBIT F.** In conjunction with the Lease Renewal Amendment, Colangelo and Rurak Ocean Tours, Inc. executed absolute, unconditional, and continuing Guaranty Agreements whereby they guaranteed payment by Royal. Copies of the May 31, 2007 Corporate Guaranty executed by Rurak and the June 29, 2007 Guaranty executed by Colangelo are attached hereto as **EXHIBIT G.**

15. Royal defaulted under the terms of the Lease 1 as amended in that it has failed to make the required monthly payment for August 1, 2007 and for each month thereafter, and based upon

3

the defaults under the other transactions referenced herein.

16.   The plaintiff has demanded payment but th eRoyal/Rurak defendants refuse and continue to refuse to make payment of the remaining indebtedness.

17.   Pursuant to the terms of the Lease 1 as amended, plaintiff has declared Lease 1 in default. Pursuant to the terms of Lease 1, plaintiff is entitled to accelerate the payment of all amounts due under Lease 1, and/or obtain the Stipulated Loss Value set forth in the lease.

18. As of March 11, 2008, there is currently due and owing under Lease 1 as amended and the Guaranties the sum of $231,146.80.

19.   Pursuant to the terms of Lease 1 as amended, in the event that Royal defaults, plaintiff is entitled to immediate and permanent title and possession of the vehicles that are the subject of Lease 1.

20.   Pursuant to the terms of the Lease 1 as amended and the Guaranties, in the event the Royal/Rurak defendants default, the Royal/Rurak defendants are additionally liable to plaintiff for, inter alia, contractual attorneys' fees.

### **AS AND FOR PLAINTIFF'S SECOND CAUSE OF ACTION**

#### **(Lease 2)**

21.   Plaintiff repeats and realleges paragraphs 1-20 of this Verified Complaint with the same force and effect as if fully set forth herein.

22.   On about March 27, 1997, Royal entered into and executed a Lease Agreement (Trac)("Lease 2"), as Lessee, with debis Financial Services, Inc. d/b/a DDC-MTU Financial Services, as Lessor, whereby Royal leased certain vehicles which are listed in the Equipment schedule attached thereto. **EXHIBIT H** attached hereto is a copy of Lease 2. **EXHIBIT I** is a copy of schedule of vehicles subject to Lease 2.

4

23.   On or about March 27, 1997, Colangelo entered into and executed an absolute, unconditional and continuing Guaranty agreement whereby he guaranteed payment by Royal. **EXHIBIT J** attached hereto is a true and accurate copy of the Guaranty agreement.

24.   On or about December 28, 1998, for good and valuable consideration, debis assigned to GE all of its right, title, and interest in Lease 2, the March 27, 1997 Colangelo Guaranty, and the vehicles subject to Lease 2.  A copy of the assignment is attached hereto as **EXHIBIT K.** Thereafter, GE duly obtained certificates of title evidencing its ownership of the vehicles subject to Lease 2.  Copies of the certificates of title are attached hereto as **EXHIBIT L.**

25.   From time to time, GE and Royal executed agreements modifying the payment structure of and extending Lease 2, but otherwise renewing Lease 2 on the same terms and conditions as set forth in Lease 2.  A copy of the Lease Renewal Amendment (TRAC) executed and entered into by GE and Royal and dated July 1, 2005 is attached hereto as **EXHIBIT M.**

26.   Royal defaulted under the terms of Lease 2 as amended and renewed in that it has failed to make the required monthly payment for August 1, 2007 and for each month thereafter, and based upon the defaults of the other transactions referenced in the other transactions referenced herein.

27.   The plaintiff has demanded payment but the Royal/Rurak defendants refuse and continue to refuse to make payment of the remaining indebtedness.

28.   Pursuant to the terms of Lease 2 as amended plaintiff has declared Lease 2 in default. Pursuant to the terms of Lease 2 as amended, upon default plaintiff is entitled to accelerate all amounts due under the Lease as amended. As of March 11, 2008, there is currently due and owing under Lease 2 as amended and the Guaranties a balance of $130,200.82.

29.   Pursuant to the terms of Lease 2 as amended, in the event of default, plaintiff is

5

entitled to immediate and permanent title and possession of the equipment which is the subject of Lease 2.

30.  Pursuant to the terms of Lease 2 as amended and the Guaranties, in the event of default, the Royal/Rurak defendants are additionally liable to plaintiff for, inter alia, contractual attorneys' fees.

## AS AND FOR PLAINTIFF'S THIRD CAUSE OF ACTION

### (Note and Master Security Agreement: Breach of Contract)

31. Plaintiff repeats realleges paragraphs 1-30 of this Verified Complaint with the same force and effect as if fully set forth herein.

32. On or about March 15, 2000, Rurak Ocean Tours, Inc. entered into and executed a Commercial Transportation Lease Agreement ("Lease 3"), as Lessee, with GE, as Lessor, whereby Rurak leased certain vehicles from GE, which are listed in the Schedule attached thereto. **EXHIBIT N** hereto is a copy of the Lease 3.

33.  On or about March 16, 2000, Onuki entered into and executed an absolute, unconditional, and continuing Guaranty agreement whereby he guaranteed payment by Rurak. **EXHIBIT O** attached hereto is a true and accurate copy of the Guaranty agreement.

34. On or about December 30, 2005, Rurak entered and executed a Promissory Note (the "Note") in the principal amount of $443, 985.57, which Rurak promised to repay GE in sixty-six installments of $8,446.94 with interest at the rate of 8.5% per annum. A true and accurate copy of the Note is attached hereto as **EXHIBIT P.**

35.  On or about December 30, 2005, Rurak entered into and executed a Master Security Agreement with GE to secure the amounts owing under the Note. The Master Security Agreement covered the vehicles that had been the subject of Lease 3.  **EXHIBIT Q** attached

6

hereto is a copy of the Master Security Agreement. Pursuant to the Master Security Agreement, Rurak granted GE a security interest in certain vehicles more fully described in Collateral Schedule No. 001, which vehicles had been the subject of Lease 3. A copy of Collateral Schedule No. 001 is attached hereto as **EXHIBIT R.** Copies of the certificates of title reflecting GE's interests in the vehicles are attached hereto as **EXHIBIT S.**

36.    On or about December 29, 2005, Royal entered into and executed an absolute, unconditional and continuing Corporate Guaranty agreement whereby it guaranteed payment by Rurik. **EXHIBIT T** attached hereto is a copy of the Corporate Guaranty.

37.    Rurak defaulted under the terms of the Note and Master Security Agreement in that it has failed to make the required monthly payment for September 1, 2007 and for each month thereafter, and based upon the defaults of the other transactions referenced in the other transactions referenced herein. Under the terms of the Note and Master Security Agreement, in the event of default, GE is entitled to accelerate all amounts due under the Note and Master Security Agreement.    As of March 11, 2008, there is currently due and owing under Note, Master Security Agreement, and the Guaranties a balance of $387,003.29.

38.    The plaintiff has demanded payment but the Royal/Rurak defendants refuse and continue to refuse to make payment of the remaining indebtedness.

39.    Pursuant to the terms of the Note and Master Security Agreement, plaintiff has declared Rurak in default.

40. Pursuant to the terms of the Master Security Agreement in the event of default, plaintiff is entitled to immediate and permanent title and possession of the equipment which is the subject of the Master Security Agreement.    The Royal/Rurak defendants have failed to return the equipment.

7

41. Pursuant to the terms of the Master Security Agreement and the Guaranties, in the event of default, plaintiff is entitled to contractual attorneys' fees.

## AS AND FOR PLAINTIFF'S FOURTH CAUSE OF ACTION

42. Plaintiff repeats and realleges paragraphs 1-41 of this Verified Complaint with the same force and effect as if set forth herein.

43. In entering into the transactions at issue, plaintiff relied directly upon the express representations of the Royal/Rurak defendants with regard to the Leases and the amendments thereto, the Note, the Master Security Agreement, Guaranties and related documents.

44. The Royal/Rurak defendants entered into the Leases and the amendments thereto, the Note, the Master Security Agreement, Guaranties and related documents with full knowledge of plaintiff's reliance upon its representations therein and, indeed, it made said representations to induce plaintiff to rely thereon.

45. Plaintiff has been injured as a direct and proximate result of the defendants' failure to honor the express representations in the Leases and the amendments thereto, the Guaranties, the Note, and the Master Security Agreement.

46. Based upon the foregoing, the Royal/Rurak defendants are now estopped from disputing the representations in the Leases and the amendments thereto, the Guaranties, the Note and the Master Security Agreement and the related documents.

## AS AND FOR PLAINTIFF'S FIFTH CAUSE OF ACTION

47. Plaintiff repeats realleges each paragraphs 1-48 of this Verified Complaint with the same force and effect as if fully set forth herein.

49. In entering into the transactions at issue, plaintiff relied directly upon the express representations of the Royal/Rurak defendants in the Leases and the amendments thereto, the

8

Guaranties, the Note, the Master Security Agreement and the related documents.

50. The Royal/Rurak defendants entered into the Leases and the amendments thereto, the Guaranties, the Note, the Master Security Agreement and the related documents with full knowledge of plaintiff's reliance upon the Royal/Rurak defendants' representations, and, indeed, the defendants made said representations to induce plaintiff to rely thereon.

51. Plaintiff has been injured as a direct and proximate result of the defendants' failure to honor the express representations in and terms of the Leases and the various amendments thereto, the Guaranties, the Note, the Master Security Agreement and the related documents.

52. Based upon the foregoing, the Royal/Rurak defendants are now estopped from disputing the express terms of the Leases and the various amendments thereto, the Guaranties, the Note, the Master Security Agreement and the related documents.

**AS AND FOR PLAINTIFF'S SIXTH CAUSE OF ACTION**

53. Plaintiff repeats and realleges paragraphs 1-52 of this Verified Complaint with the same force and effect as if fully set forth herein.

54. As a result of defendants' conduct as set forth above, the defendants have been unjustly enriched.

55. Plaintiff is entitled to recovery under the doctrines of quasi-contract, quantum meruit and unjust enrichment.

**AS AND FOR PLAINTIFF'S SEVENTH CAUSE OF ACTION**

56. Plaintiff repeats and realleges paragraphs 1-55 of this Verified Complaint with the same force and effect as if fully set forth herein.

57. Upon information and belief, Rurak and Colangelo transferred the vehicles subject to the Master Security Agreement to defendants Premier Coach, Inc. ("Premier") and Agim Lozaja

9

("Lozaja").

58. Such transfer was made without the authorization and consent of plaintiff.

59. Such transfer was made in violation of the Master Security Agreement.

60. Plaintiff has requested Premier and Lozaja to return the vehicles but Premier and Lozaja have failed to do so.

61. Premier and Lozaja's possession and wrongful withholding of the vehicles constitutes conversion.

WHEREFORE, plaintiff demands judgment against (1) the Royal/Rurak defendants, jointly and severally, as follows:

a.  On the First Count in the amount of $231,146.80 plus accruing interest, late charges, costs and attorneys' fees and for immediate and permanent title and possession of the equipment which is the subject of Lease 1 as amended and renewed; and

b.  On the Second Count in the amount of $130,200.82 plus accruing interest, late charges, costs and attorneys' fees and for immediate and permanent title and possession of the equipment which is the subject of Lease 2 as amended and renewed; and

c.  On the Third Count in the amount of $387,003.29 plus accruing interest, late charges, costs and attorneys' fees and for immediate and permanent title and possession of the equipment which is the subject of the Master Security Agreement; and

d.  On the Fourth Count in the amount of $748,350.91plus accruing interest, late charges, costs and attorneys' fees and for immediate and permanent title and possession of the equipment which is the subject of the agreements; and

e.  On the Fifth Count in the amount of $748,350.91plus accruing interest, late charges, costs and attorneys' fees and for immediate and permanent title and possession of the equipment

which is the subject of the agreements; and

    f.  On the Sixth Count for the reasonable value of the monies advanced to the Royal/Rurak defendants to date; and

    Wherefore, Plaintiff demands judgment (2) against defendants Premier and Lozoja on the Seventh Count for compensatory and punitive damages, including the reasonable rental value of the vehicles subject to the Master Security Agreement.

    Wherefore, Plaintiff demands judgment (3) against all defendants as follows:

    a. On the Third Count for an Order of the Court:

    (i) restraining and enjoining defendants, their agents, employees, attorneys and such other person in active concert and participation with it, from selling, secreting, moving or disposing of any or all of the collateral vehicles subject to the Master Security Agreement; and

    (ii) requiring defendants to return the collateral vehicles to Rurak principal place of business at 1150 Longwood Ave., Bronx, New York; and

    (iii) requiring defendants to surrender the collateral vehicles to the sheriff of the county where the vehicles are located and to grant possession of the collateral vehicles to plaintiff.

    b.  On all counts, for such relief as to the Court seems equitable and just.

Dated:

Frank Peretore, Esq.
PERETORE & PERETORE, P.C.
Attorneys for the Plaintiff
110 Park Street
Staten Island, New York 10306
(718) 667-8785

11

## CERTIFICATION OF VERIFICATION AND NON-COLLUSION

I am an employee for the Plaintiff, General Electric Capital Corporation. The allegations contained in the foregoing Complaint are true to the best of my knowledge, information and belief. The Complaint is made in truth and good faith and without collusion for the causes set forth therein.

I CERTIFY that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Date: 4/2/??

Seth Graff

## CERTIFICATION OF VERIFICATION AND NON-COLLUSION

I am an employee for the Plaintiff, General Electric Capital Corporation. The allegations contained in the foregoing Complaint are true to the best of my knowledge, information and belief. The Complaint is made in truth and good faith and without collusion for the causes set forth therein.

I CERTIFY that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Date: 3/25/08

Seth Graff

**EXHIBIT A**

4080467-001

**Commercial Transportation Lease Agreement**

D0094FH

This Lease Agreement (the "Agreement") effective as of October 8, 1998 is entered into by and between General Electric Capital Corporation, a New York corporation ("Lessor"), and the undersigned (the "Lessee"). If more than one party executes this Agreement as Lessee, each shall be jointly and severally liable hereunder.

**1. LEASE; DISCLAIMER.** Lessor hereby agrees to lease to Lessee and Lessee hereby agrees to lease from Lessor certain Vehicles for use in its business. Lessee's lease of a Vehicle shall be effective on the date Lessee accepts the Vehicle for Lease hereunder. Lessor hereby assigns the manufacturer's warranty to Lessee for the Lease Term. LESSEE AGREES THAT LESSOR IS NOT THE MANUFACTURER, DESIGNER OR DISTRIBUTOR OF, THE VEHICLES AND THAT EACH VEHICLE IS OF A DESIGN SELECTED BY LESSEE AND SUITABLE FOR ITS PURPOSES. ALL VEHICLES ARE LEASED "AS IS." LESSOR MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO ANY VEHICLE INCLUDING, BUT NOT LIMITED TO: THE MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF A VEHICLE; THE DESIGN, QUALITY OR CAPACITY OF A VEHICLE; OR COMPLIANCE OF A VEHICLE WITH APPLICABLE LAW.

**2. DELIVERY.** Lessee shall inspect a Vehicle at the location of delivery. Lessee's removal of a Vehicle from such location shall constitute acceptance of the Vehicle and Lessee's warranty to Lessor that the Vehicle conforms to Lessee's specifications. Lessee agrees that Lessee's obligation to pay rent and other amounts with respect to such Vehicle shall be unconditional and that Lessee shall not be entitled to any reduction of, or setoff against, such amounts (provided, however, that any such payment shall not prejudice Lessee's right to claim adjustment or reimbursement).

**3. TERM OF AGREEMENT.** This Agreement shall commence on the date set forth above, and continue until canceled or terminated by either party upon 30 days' written notice to the other. Notwithstanding termination, this Agreement shall remain in effect with respect to each Vehicle then leased until all terms and conditions of this Agreement are satisfied.

**4. LEASE TERM.** The noncancelable minimum Lease Term for each Vehicle is 367 days beginning upon the first periodic period payment date. Thereafter, the Lease Term may be renewed each payment period, provided that such renewals shall not extend the Lease term beyond the Lease term set in Exhibit C hereto.

**5. OPERATION.** Lessee shall operate the Vehicles solely in the United States (Lessee acknowledges that breach of such covenant could adversely affect Lessor's assumed tax benefits and thereby subject Lessee to liability therefore) and in accordance with applicable federal, state and local law governing the use, operation, maintenance or alteration of the Vehicles. Lessee agrees to repair the Vehicles and to maintain them in safe and good mechanical condition and running order. All additions to a Vehicle become the property of Lessor and shall be surrendered with the Vehicle. NO VEHICLES MAY BE USED TO TRANSPORT HAZARDOUS SUBSTANCES.

**6. NET LEASE.** Lessee covenants that it will pay all costs, expenses, fees, charges, fines, interest, and taxes, including, without limitation, sales, property and use taxes, incurred in connection with the Vehicle's titling, registration, delivery, purchase, sale, rental, modification, and arising from the ownership, operation or use of the Vehicle during its Lease Term regardless of when assessed or payable. If Lessor pays any of the foregoing amounts, Lessee shall promptly reimburse Lessor and pay Lessor's then current administrative charge.

**7. TITLE; REGISTRATION.** Lessee, at its own expense, will obtain all required registration plates, permits or licenses for the Vehicles. If Lessor pays for any of the foregoing, Lessee will promptly reimburse Lessor. Lessee agrees to properly title and register the Vehicles in Lessor's name and, if Lessee is in possession of the title, to promptly deliver the title to Lessor. Lessee will bear all costs and expenses, including Lessor's administrative fee, to correct incorrect titles.

**8. RENTAL CHARGES.** Lessee will pay rental for the Vehicles in accordance with the relevant Exhibits, as well as all other rental charges provided for in this Agreement. Notwithstanding any provisions hereof to the contrary, the failure of Lessee to receive an invoice for such payments or to receive invoices on a timely basis shall not excuse or otherwise modify payment terms provided for herein or in Exhibits hereto.

Lessee acknowledges that the periodic rental charges are based on a presumed after-tax return to Lessor. If any changes in federal or state tax laws or regulations (including a change in corporate income tax rate) cause Lessor's after-tax return to be reduced or impact the ability of Lessor to realize the full tax benefits contemplated herein, Lessor may, in compensation, prospectively adjust the periodic rental charges.

**9. PAYMENT TERMS.** Time is of the essence. Lessee shall pay to Lessor a late payment charge in the amount of the greater of (i) $25 or (ii) 1-1/2% per month or fraction thereof of any invoice, the payment of which is not in the possession of Lessor on or before the tenth (10th) day after the due date of the payment (or if such 10th day falls on a weekend or holiday, then the immediately preceding business day), but in no event shall such late charges exceed the highest legal rate. It is the intent of Lessor that it not receive directly or indirectly any amount in excess of that amount which may be legally paid. Any excess charges will be credited to Lessee or, upon request of Lessee, refunded. Lessee agrees to carefully review each invoice or other statement provided by Lessor. If Lessee identifies a billing error, Lessee will advise Lessor promptly and in such event, Lessor's sole liability and Lessee's exclusive remedy shall be appropriate adjustments in Lessee's account. All charges are based upon Lessor's standard operating routines, existing business policy and computer systems capabilities.

**10. SURRENDER OF VEHICLES.** At the end of the minimum Lease Term, Lessee may, and at the end of the Lease Term, Lessee shall, upon reasonable written notice to Lessor, either purchase the Vehicle for its fair market value or return the Vehicle to Lessor by delivering the Vehicle to Lessor at a mutually agreed location. Upon surrender or, if not surrendered, at final disposition, the Vehicle shall be in good, safe and lawful operating condition. Surrender of the Vehicle shall not be effective until Lessor has actual physical possession of the Vehicle and has received all license plates, registration certificates, documents of title, odometer and damage disclosures and other documentation necessary for the sale of the Vehicle. If, upon Lessee request, Lessor accepts an offer to purchase a Vehicle from a Lessee or a purchaser identified by Lessee and Lessor does not take actual physical possession of the Vehicle, neither surrender nor sale shall be deemed to occur until Lessor delivers the certificate of title and receives payment. Any personal property in a Vehicle upon surrender shall be deemed abandoned and may be disposed of by Lessor without liability.

**11. SALE OF VEHICLES.** In the event Lessee elects not to exercise its purchase option, Lessor shall, and Lessee may, solicit from prospective purchasers wholesale cash bids for Vehicles. Such Vehicles shall be sold in a commercially reasonable manner. From the sales proceeds, Lessor shall deduct all unamortized acquisition fees, sales expenses paid or incurred by Lessor in undertaking such sale and any late fees, taxes or other amounts due with respect to the Vehicles, regardless of when assessed or payable, the balance remaining to constitute the Net Proceeds which shall be payable to Lessor. If Lessor sells any vehicle owned by Lessee or a third party, Lessee agrees that the sale of such vehicle shall be subject to the indemnity herein and to pay Lessor's then current sale fee.

**12. TERMINAL RENTAL ADJUSTMENT.** As an incentive to the Lessee to maintain the value of the Vehicle by good maintenance, repair and careful use during its Lease Term, the parties agree that the enhancement or reduction in value shall be compensated as follows:

**a. Refund of Rental.** If the Net Proceeds from the sale to either Lessee or a third party exceed the Stipulated Loss Value (as defined in Exhibit S), Lessor shall retain an amount equal to the Stipulated Loss Value, and remit the excess to Lessee as a refund of rental.

**b. Rental Charge.** If the Net Proceeds from the sale to either Lessee or a third party are less than the Stipulated Loss Value, Lessee shall pay Lessor the amount of the difference between the Net Proceeds and the Stipulated Loss Value.

**13. INSURANCE.** Before delivery of any Vehicle, Lessee shall purchase from a responsible insurance company acceptable to Lessor and Lessee shall maintain, during the Lease Term of each Vehicle, the following coverages and deliver to Lessor a certificate thereof:

**a. Liability** insurance naming Lessor as an Additional Insured with limits of coverage as Lessor may require, but in no event less than $1 million combined single limit per occurrence ($5 million for Vehicles capable of transporting 9 or more passengers). No self-insured retention or deductible is permissible unless approved in writing by Lessor.

**b. Comprehensive and collision** insurance naming Lessor as Loss Payee with coverage for the actual cash value of each Vehicle and subject to a deductible no greater than the following amounts unless approved by Lessor: ($5,000 for intercity coaches; $2,500 for school buses, shuttle buses and vans and ambulances; $1,000 for medium and heavy duty trucks and trailers, tool trucks, tow trucks and tire service trucks. Lessee shall also obtain no-fault insurance complying with applicable legal requirements. Lessee shall bear all risk of loss, damage or destruction to the Vehicle (which may exceed actual cash value), however caused, from the time of acceptance until surrender to Lessor.

**c. Conditions.** All insurance policies shall provide for 30 days' prior written notice to Lessor of any cancellation or reduction in coverage. Lessor has no obligation to examine insurance certificates or to advise Lessee if its insurance is not in compliance with this Agreement. Lessee authorizes Lessor to endorse Lessee's name to insurance checks related to the Vehicles and to take any actions to pursue insurance claims and recover payments if Lessee fails to do so.

**d. Casualty.** In the event for any reason a Vehicle becomes worn out, lost, stolen, destroyed or unusable (herein, each, a "Loss"), on the rental payment date next succeeding the occurrence of such Loss, Lessee shall pay to Lessor the sum of (x) the Stipulated Loss Value of the affected Vehicle (determined as of the rental payment date immediately preceding the date of such Loss), and (y) all rent and other amounts which are then due under this Agreement. Upon payment of all such sums, the term of this Lease as to such affected Vehicle shall terminate. So long as no event of default shall have occurred and be continuing, any insurance proceeds attributable to such Vehicle shall be payable to reimburse Lessee for the payments required hereunder up to the amount of the Stipulated Loss Value. Lessee understands that such Stipulated Loss Value may exceed the actual cash value of the Vehicle as determined by the insurer of the Vehicle and that Lessee remains required to pay the entire amount due hereunder.

**14. INDEMNITY. LESSEE WILL INDEMNIFY AND DEFEND LESSOR (INCLUDING ANY OF ITS AFFILIATES) AGAINST ANY LOSS, LIABILITY OR CLAIM, DIRECTLY OR INDIRECTLY RELATING TO THE OWNERSHIP, LEASE, MAINTENANCE, USE, CONDITION (INCLUDING BUT NOT LIMITED TO, PATENT AND LATENT DEFECTS WHETHER OR NOT DISCOVERABLE, PRODUCT LIABILITY CLAIMS OR THE CONDITION OF THE VEHICLE AT SURRENDER) OR SURRENDER OF ANY VEHICLE BETWEEN THE TIME OF DELIVERY TO LESSEE AND THE TIME OF SURRENDER. IF LESSOR SELLS ANY VEHICLE TO LESSEE, ANY OF ITS EMPLOYEES OR A PURCHASER FROM WHOM LESSEE OBTAINS AN OFFER, LESSEE'S COVENANTS OF INDEMNITY WITH RESPECT TO SUCH VEHICLE SHALL CONTINUE. THIS INDEMNITY IS ABSOLUTE AND UNCONDITIONAL AND INCLUDES CLAIMS OF NEGLIGENCE, STRICT LIABILITY, ENVIRONMENTAL LIABILITY AND BREACH OF WARRANTY, BUT DOES NOT EXTEND TO CLAIMS OR LIABILITY ARISING FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF LESSOR, ITS AGENTS OR EMPLOYEES. THIS INDEMNITY SHALL SURVIVE THE TERMINATION OF THIS AGREEMENT.**

**15. NATURE OF AGREEMENT. THE PARTIES INTEND ALL LEASES OF VEHICLES HEREUNDER TO BE TRUE LEASES.** Lessee has no right, title or interest in and to any Vehicle leased hereunder except as lessee, and Lessee has no option to purchase any Vehicle for any amount less than its fair market value. Lessor has the right to mark the Vehicle at any time stating its interest as owner and to receive and retain compensation related to the Vehicles from manufacturers, suppliers and vendors. Without prejudice to the intention of the parties that this Agreement be a true lease, Lessee hereby grants Lessor a security interest in the Vehicles, all vehicles and other equipment and property subject to other leases or loans with Lessor, and all proceeds, accessions, documents, instruments, accounts, chattel paper, equipment and general intangibles related thereto to secure all of Lessee's obligations under this or any other agreement with Lessor. Lessee hereby grants Lessor its power of attorney to act for and on behalf of Lessee in all matters pertaining to the titling and registration of Vehicles and the filing, recording or perfecting of Lessor's interest and title in the Vehicles, including execution of Uniform Commercial Code financing statements, and agrees to execute such other documents as may be necessary to effect or evidence such grant. A photocopy or other reproduction of this Agreement shall be sufficient as a financing statement.

**16. FINANCIAL STATEMENTS; INSPECTIONS.** The creditworthiness of Lessee and any guarantor is a material condition to this Agreement. Lessee shall provide Lessor with financial information reasonably requested by and satisfactory to Lessor each year of this Agreement. Nothing herein shall be construed to require Lessor to lease any vehicle. Lessor may inspect the Vehicles and related records at any time upon reasonable notice.

**17. DEFAULT; REMEDIES.** If Lessee shall fail to make the payments, maintain insurance coverage or title any Vehicle properly and in a timely manner, all as herein required or after 10 days' written notice shall fail to perform any of its other covenants under this Agreement, or Lessee or any guarantor shall (i) make an assignment for the benefit of creditors; or suffer a receiver or trustee to be appointed, or file or suffer to be filed any petition under any bankruptcy or insolvency law of any jurisdiction; or (ii) discontinue business; or (iii) dissolve, terminate, cease its corporate or partnership existence or die; or (iv) be in default under any other agreement it may have with Lessor or any parent, subsidiary or affiliate of Lessor; or (v) suffer a material adverse change in operating or financial condition which impairs Lessee's ability to perform its obligations hereunder or Lessor's title to or rights in the Vehicles; or (vi) make any representation or warranty herein, or in any document delivered to Lessor in connection herewith, which shall prove to be false or misleading in any material respect; or (vii) merge, consolidate, or undergo a change in controlling ownership; or (viii) be in default under any other agreement it may have with Lessor or any parent, subsidiary or affiliate or Lessor; then in such event Lessee shall be in default under this Agreement. A default under the terms of this Agreement shall constitute a default under any other agreement Lessee has with Lessor, or any parent, subsidiary or affiliate of Lessor. Lessor shall have the right to offset any amounts due to Lessee against amounts due to Lessor and all rights and remedies available at law or in equity including, without limitation, the right to repossess any and all Vehicles leased hereunder (and for that purpose, Lessor or its agents may enter upon any premises owned by or under the control of Lessee or any of its employees or affiliates). Notwithstanding repossession and sale of any Vehicle, Lessor may recover from Lessee all damages sustained as a result of Lessee's default, and is not accountable to Lessee for any proceeds of any such sale. Such damages shall include but not be limited to: the full amount of rentals then due and unpaid, the Stipulated Loss Value of the Vehicles calculated pursuant to Exhibit S as of the rental payment date immediately preceding the default, and all other amounts of any nature due under this Agreement including, without limitation any amounts due as terminal rental adjustments, together with all costs of collection and repossession including attorneys' fees and collection fees. All of Lessor's rights and remedies shall be cumulative and not exclusive.

**18. NO CONSEQUENTIAL DAMAGES.** In no event shall Lessor be liable for any loss of profits, other consequential damages or inconvenience resulting from any delay in delivery, theft, damage to, loss of, defect in or failure of any Vehicle, or the time consumed in recovering, repairing, adjusting, servicing, or replacing same and there shall be no abatement or apportionment of rental during such time. EXCEPT WITH RESPECT TO LESSEE'S OBLIGATIONS OF INDEMNITY HEREUNDER, EACH PARTY AGREES THAT: ITS SOLE AND EXCLUSIVE REMEDY FOR ANY MATTER OR CAUSE OF ACTION RELATED DIRECTLY OR INDIRECTLY TO ANY BREACH BY THE OTHER PARTY OF THIS AGREEMENT SHALL BE A CONTRACT ACTION; DAMAGES SHALL BE LIMITED TO ACTUAL AND DIRECT DAMAGES INCURRED; AND NO INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES WILL BE CLAIMED.

**19. ASSIGNMENTS.** LESSEE SHALL NOT ASSIGN, SUBLET, LIEN, ENCUMBER, OR TRANSFER ANY INTEREST IN ANY OF THE VEHICLES LEASED HEREUNDER OR ANY INTEREST IN THIS AGREEMENT TO ANY PARTY WITHOUT THE WRITTEN CONSENT OF LESSOR. ANY SUCH CONSENT BY LESSOR SHALL NOT RELIEVE LESSEE OF ITS OBLIGATIONS AND LIABILITIES. Lessor may assign all or any part of its right, title and interest in this Agreement or the Vehicles, including all receivables.

**20. RELATED ENTITLES.** Any Vehicles leased or operated by present or future subsidiaries, parents or affiliates of Lessee shall be within the terms and conditions of this Agreement, unless covered by a separate agreement with such subsidiary, parent or affiliate, and Lessee agrees that, in the event such subsidiary, parent or affiliate does not perform according to the terms and conditions of this Agreement, Lessee guarantees such performance.

**21. WAIVER OF JURY TRIAL.** BOTH PARTIES TO THIS AGREEMENT HEREBY WAIVE ANY AND ALL RIGHT TO ANY TRIAL BY JURY IN ANY ACTION OR PROCEEDINGS DIRECTLY OR INDIRECTLY HEREUNDER.

**22. GOVERNING LAW.** THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL IN ALL RESPECTS BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF CONNECTICUT (WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES OF SUCH STATE), INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, REGARDLESS OF THE LOCATION OF THE VEHICLES. THE PARTIES FURTHER AGREE THAT ALL ACTIONS OR PROCEEDINGS ARISING, DIRECTLY OR INDIRECTLY, FROM THIS AGREEMENT, SHALL BE LITIGATED, AT THE OPTION OF LESSOR, IN COURTS HAVING SITUS WITHIN THE STATE OF CONNECTICUT, AND LESSEE HEREBY CONSENTS TO THE PERSONAL JURISDICTION OVER LESSEE BY ANY LOCAL, STATE OR FEDERAL COURT SELECTED BY LESSOR THAT IS LOCATED WITHIN THE STATE OF CONNECTICUT. LESSEE WAIVES ANY OBJECTION TO VENUE IN ANY SUCH ACTION AND AGREES NOT TO DISTURB SUCH CHOICE OF FORUM BY LESSOR. LESSEE HEREBY CONSENTS TO SERVICE OF PROCESS BY MAIL AND THAT SUCH SERVICE BY MAILING SHALL CONSTITUTE DUE AND PERSONAL SERVICE UPON LESSEE.

**23. ODOMETER DISCLOSURE STATEMENT.** Federal law (and State law, if applicable) requires that Lessee as lessee disclose, and Lessee shall disclose, the mileage of each Vehicle to Lessor in connection with the transfer of ownership of the Vehicle. Failure to complete an odometer disclosure statement or making a false statement may result in fines and/or imprisonment. LESSEE AGREES TO PAY AN ADMINISTRATIVE FEE IF LESSEE FAILS TO PROVIDE A REQUIRED ODOMETER OR DAMAGE DISCLOSURE STATEMENT AT TIME OF SURRENDER.

**24. MODIFICATIONS.** This Agreement, its Exhibits, Schedules and amendments contain the entire understanding of the parties and merge all oral understandings, Purchase orders relating to Vehicles may be issued by Lessee for administrative convenience, but are subject to the terms and conditions of this Agreement and shall not amend or supplement it. ANY MODIFICATIONS, CHANGES, OR AMENDMENTS MAY BE MADE ONLY IN A WRITING DULY SIGNED BY LESSEE AND LESSOR. FAILURE OF EITHER PARTY TO ENFORCE ANY RIGHT GRANTED HEREIN SHALL NOT BE DEEMED A WAIVER OF SUCH RIGHT.

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be signed by duly authorized representatives.

LESSOR:
General Electric Capital Corporation

By: _____

Title: _____

Address: 11010 Prairie Lakes Drive, Eden Prairie, MN 55344

LESSEE:
ROYAL TOURS SERVICE, INC.

X By: _____
Hiroaki Onuki

Title: President _____

Address: ~~25-18 38TH AVENUE, LONG ISLAND CITY, NY 11101~~

130 Green St, Brooklyn, NY 11222

**EXHIBIT B**

OCT 14 1998 15:01 FR GE CAPITAL-CT      612 833 5776 TO 917183499588      P.01/01

1010

# EXHIBIT C
## Rental Schedule No. 001
## Uneven Rentals
### Dated This ___OCT·14·98___

This Exhibit C is a part of and subject to that certain Lease Agreement (hereinafter the "Agreement"), dated October 8, 1998, between the LESSOR and the LESSEE set forth below.

| Number of Units | Capitalized Lessors Cost Per Unit | Manufacturer | VIN Number | Model and Type of Equipment |
|---|---|---|---|---|
| 1 | $358,648.00 | Kassbohrer | WKK138UC0X1045127 | SDH217 Coach |
| 1 | $358,648.00 | Kassbohrer | WKK138UC2X1045128 | SDH217 Coach |

Lease Term (In Months, exclusive of any interim rental period):      84

Mileage allowance: _____

Excess mileage charge: _____

The Capitalized Cost of each Vehicle is computed by adding the following amounts:

(i)   The invoice price of the Vehicle including sales tax, if applicable; and
(ii)  The invoice price of any authorized additions or modifications to the Vehicle made pursuant to LESSEE's request.

The Capitalized Cost of the Vehicle(s) is: $ 717,296.00

LESSEE shall pay to LESSOR the following rentals as specified herein:

1)   Interim Rent: An amount equal to Dollars ($ _____ ) per day for the number of days from the acceptance date to, but not including, the first day of the first billing period, (such period being the interim rental period) due and payable on _____ .

2)   Basic Term Rent: Commencing on _December 1st 1998_ and on the same day of each month thereafter, Lessee agrees to pay to Lessor Eighty Four (84) consecutive monthly rental payments as follows:

| | |
|---|---|
| 1: | $52,042.00 |
| 2: | $10,507.48 |
| 3-4: | $     0.00 |
| 5-14: | $10,507.48 |
| 15-16: | $     0.00 |
| 17-26: | $10,507.48 |
| 27-28: | $     0.00 |
| 29-38: | $10,507.48 |
| 39-40: | $     0.00 |
| 41-50: | $10,507.48 |
| 51-52: | $     0.00 |
| 53-62: | $10,507.48 |
| 63-64: | $     0.00 |
| 65-74: | $10,507.48 |
| 75-76: | $     0.00 |
| 77-84: | $10,507.48 |

3)   Advance Rent: Upon execution of this Exhibit, Lessee agrees to pay to Lessor the total amount of Fifty Two Thousand Forty Two and 00/100 Dollars ($52,042.00) of which Fifty Two Thousand Forty Two and 00/100 Dollars ($52,042.00) will be applied to the first rental as it becomes due and payable.

LESSOR:
General Electric Capital Corporation

By: _____

Title: _Risk Analyst_ _____

LESSEE:
ROYAL TOURS SERVICE, INC.

By: _____
    Hiroaki Onuki

Title: **President** _____

**EXHIBIT C**



# CERTIFICATE OF TITLE

## STATE OF NEW YORK

| Title and Identification No. | Year | Make | Model Code | Body/Hull | Document No. |
|---|---|---|---|---|---|
| WKK138UC2X1045128 | 1999 | SETRA | N/A | BUS | 134326E |

| Color | Wt./Sts./Lgth. | Fuel | Cyl./Prop. | New or Used | Type of Title | Date Issued |
|---|---|---|---|---|---|---|
| WH | 36080 | DIE | 6 | NEW | VEHICLE | 1/26/99 |

Name and Address of Owner(s)

GENERAL ELECTRIC
CAPITAL CORP

11010 PRAIRE LKS 150
EDEN PRAIRIE MN
55344

ODOMETER READING: 04277
ACTUAL MILEAGE

This document is your proof of ownership for this vehicle, boat or manufactured home. Keep it in a safe place, not with your license or registration or in your vehicle or boat. To dispose of your vehicle, boat or manufactured home, complete the transfer section on the back and give this title to the new owner.

002493

Lienholder

G E CAPITAL CORP
PO BX 44829
EDEN PRAIRIE MN    55344

Lienholder

Lienholder

Lienholder

01

MV-999 (11/96)

### DEPARTMENT OF MOTOR VEHICLES

MV-999 (11/96)

## ANY CHANGE OR ERASURE WILL VOID THIS TITLE -- ANY FALSE STATEMENT IS A MISDEMEANOR

### SECTION I - Transfer by Owner

#### ODOMETER DISCLOSURE STATEMENT

*Note: This vehicle cannot be registered or titled in the name of the new owner unless mileage is disclosed.*

**Federal and State Law require that you state the mileage of the vehicle described on this certificate when transferring ownership. Failure to do so, or providing a false statement, may result in fines and/or imprisonment.**

☐ 1.  I certify that, to the best of my knowledge, this odometer reading reflects the ACTUAL MILEAGE of the vehicle described on the front.

☐ 2.  I certify that, to the best of my knowledge, this odometer reading "EXCEEDS MECHANICAL LIMITS."

☐ 3.  I certify that, to the best of my knowledge, this odometer reading is "NOT THE ACTUAL MILEAGE. WARNING ODOMETER DISCREPANCY."

| ODOMETER READING |
| --- |
| (no tenths) |

I or we transfer the vehicle, boat or manufactured home described on this certificate. At the time of transfer, this title is subject only to the liens or encumbrances listed on this certificate, if any. I also certify that this is the most recent title issued for this vehicle, boat or manufactured home.

*Note: Application for a title must be made within 30 days of transfer.*

I certify that, to the best of my knowledge, this vehicle ☐ has ☐ has not been (check one) wrecked, destroyed or damaged to the extent that the total estimate or actual cost of parts and labor to rebuild or reconstruct the vehicle to its pre-accident condition, and for legal operation on the road or highways, exceeds 75% of the retail value of the vehicle at the time of loss.

*Note: If the "has" box is checked, an anti-theft examination is required before registration. The title issued will have the brand "Rebuilt Salvage".*

| Seller's Signature | | | Seller's Name *(Print in Full)* | | |
| --- | --- | --- | --- | --- | --- |
| Street Address | City | | State | ZIP Code | Date of Statement |
| Buyer's Signature | | | Buyer's Name *(Print in Full)* | | |
| Street Address | City | | State | ZIP Code | Date of Statement |

### SECTION II - Reassignment by Manufactured Home Dealer or Registered Boat Dealer or Out-of-State Dealer

#### ODOMETER DISCLOSURE STATEMENT

*Note: This vehicle cannot be registered or titled in the name of the new owner unless mileage is disclosed.*

**Federal and State Law require that you state the mileage of the vehicle described on this certificate when transferring ownership. Failure to do so, or providing a false statement, may result in fines and/or imprisonment.**

☐ 1.  I certify that, to the best of my knowledge, this odometer reading reflects the ACTUAL MILEAGE of the vehicle described on the front.

☐ 2.  I certify that, to the best of my knowledge, this odometer reading "EXCEEDS MECHANICAL LIMITS."

☐ 3.  I certify that, to the best of my knowledge, this odometer reading is "NOT THE ACTUAL MILEAGE. WARNING ODOMETER DISCREPANCY."

| ODOMETER READING |
| --- |
| (no tenths) |

I or we transfer the vehicle, boat or manufactured home described on this certificate. At the time of transfer, this title is subject only to the liens or encumbrances listed on this certificate, if any. I also certify that this is the most recent title issued for this vehicle, boat or manufactured home.

*Note: Application for a title must be made within 30 days of transfer.*

| Seller's Signature | | | Seller's Name *(Print in Full)* | | |
| --- | --- | --- | --- | --- | --- |
| Street Address | City | | State | ZIP Code | Date of Statement |
| Buyer's Signature | | | Buyer's Name *(Print in Full)* | | |
| Street Address | City | | State | ZIP Code | Date of Statement |

**CONTROL NUMBER**

A 1306593

| Boat Dealer's Facility # |
| --- |

4080461-001

# CERTIFICATE OF TITLE

## STATE OF NEW YORK

| Title and Identification No. | Year | Make | Model Code | Body/Hull | Document No. |
|---|---|---|---|---|---|
| WKK138UC0X1045127 | 1999 | SETRA | N/A | BUS | 609992L |
| Color | Wt./Sts./Lgth. | Fuel | Cyl./Prop. | Type of Title | Date Issued |
| WH | 36080 | DIE | 6 | VEHICLE | 4/06/00 |
| | | | New or Used | | |
| | | | NEW | | |

Name and Address of Owner(s)

GENERAL ELECTRIC
CAPITAL CORP

11010 PRAIRE LKS 150
EDEN PRAIRIE MN
55344

ODOMETER READING: 03362
ACTUAL MILEAGE

---

This document is your proof of ownership for this vehicle, boat or manufactured home. Keep it in a safe place, not with your license or registration or in your vehicle or boat. To dispose of your vehicle, boat or manufactured home, complete the transfer section on the back and give this title to the new owner.

001591

Lienholder _____    Lienholder _____

01

G E CAPITAL CORP
PO BX 44829
EDEN PRAIRIE MN  55344
Lienholder _____    Lienholder _____

MV-999 (11/96)

## DEPARTMENT OF MOTOR VEHICLES

VOID IF ALTERED

**EXHIBIT D**

FROM :                        PHONE NO. :                Oct. 16 1998 11:56AM P1

OCT 09 1998 10:31 FR GE CAPITAL-CT      612 833 5778 TO 917183499588      P.14/16

(6/91)

# INDIVIDUAL GUARANTY

Date: _10/16_ , 19 _98_

General Electric Capital Corporation
11010 Prairie Lakes Drive Suite 150
Eden Prairie, MN 55344

To induce you to enter into, purchase or otherwise acquire, now or at any time hereafter, any promissory notes, security agreements, chattel mortgages, pledge agreements, conditional sale contracts, lease agreements, and/or any other documents or instruments evidencing, or relating to, any lease, loan, extension of credit or other financial accommodation (collectively "Account Documents" and each an "Account Document") to ROYAL TOURS SERVICE, INC., a corporation organized and existing under the laws of the State of New York ("Customer"), but without in any way binding you to do so, the undersigned, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, does hereby guarantee to you, your successors and assigns, the due, regular and punctual payment of any sum or sums of money which the Customer may owe to you now or at any time hereafter, whether evidenced by an Account Document, on open account or otherwise, and whether it represents principal, interest, rent, late charges, indemnities, an original balance, an accelerated balance, liquidated damages, a balance reduced by partial payment, a deficiency after sale or other disposition of any leased equipment, collateral or security, or any other type of sum of any kind whatsoever that the Customer may owe to you now or at any time hereafter, and does hereby further guarantee to you, your successors and assigns, the due, regular and punctual performance of any other duty or obligation of any kind or character whatsoever that the Customer may owe to you now or at any time hereafter (all such payment and performance obligations being collectively referred to as "Obligations"). Undersigned does hereby further guarantee to pay upon demand all losses, costs, attorneys' fees and expenses which may be suffered by you by reason of Customer's default or default of the undersigned.

This Guaranty is a guaranty of prompt payment and performance (and not merely a guaranty of collection). Nothing herein shall require you to first seek or exhaust any remedy against the Customer, its successors and assigns, or any other person obligated with respect to the Obligations, or to first foreclose, exhaust or otherwise proceed against any leased equipment, collateral or security which may be given in connection with the Obligations. It is agreed that you may, upon any breach or default of the Customer, or at any time thereafter, make demand upon the undersigned and receive payment and performance of the Obligations, with or without notice or demand for payment or performance by the Customer, its successors or assigns, or any other person. Suit may be brought and maintained against the undersigned, at your election, without joinder of the Customer or any other person as parties thereto. The obligations of each signatory to this Guaranty shall be joint and several.

The undersigned agrees that its obligations under this Guaranty shall be primary, absolute, continuing and unconditional, irrespective of and unaffected by any of the following actions or circumstances (regardless of any notice to or consent of the undersigned): (a) the genuineness, validity, regularity and enforceability of the Account Documents or any other document; (b) any extension, renewal, amendment, change, waiver or other modification of the Account Documents or any other document; (c) the absence of, or delay in, any action to enforce the Account Documents, this Guaranty or any other document; (d) your failure or delay in obtaining any other guaranty of the Obligations (including, without limitation, your failure to obtain the signature of any other guarantor hereunder); (e) the release or, extension of time for payment or performance by, or any other indulgence granted to the Customer or any other person with respect to the Obligations by operation of law or otherwise; (f) the existence, value, condition, loss, subordination or release (with or without substitution) of, or failure to have title to or perfect and maintain a security interest in, or the time, place and manner of any sale or other disposition of any leased equipment, collateral or security given in connection with the Obligations, or any other impairment (whether intentional or negligent, by operation of law or otherwise) of the rights of the undersigned; (g) the Customer's voluntary or involuntary bankruptcy, assignment for the benefit of creditors, reorganization, or similar proceedings affecting the Customer or any of its assets; or (h) any other action or circumstances which might otherwise constitute a legal or equitable discharge or defense of a surety or guarantor.

This Guaranty may be terminated upon delivery to you (at your address shown above) of a written termination notice from the undersigned. However, as to all Obligations (whether matured, unmatured, absolute, contingent or otherwise) incurred by the Customer prior to your receipt of such written termination notice (and regardless of any subsequent amendment, extension or other modification which may be made with respect to such Obligations), this Guaranty shall nevertheless continue and remain undischarged until all such Obligations are indefeasibly paid and performed in full.

The undersigned agrees that this Guaranty shall remain in full force and effect or be reinstated (as the case may be) if at any time payment or performance of any of the Obligations (or any part thereof) is rescinded, reduced or must otherwise be restored or returned by you, all as though such payment or performance had not been made. If, by reason of any bankruptcy, insolvency or similar laws affecting the rights of creditors, you shall be prohibited from exercising any of your rights or remedies against the Customer or any other person or against any property, then, as between you and the undersigned, such prohibition shall be of no force and effect, and you shall have the right to make demand upon, and receive payment from, the undersigned of all amounts and other sums that would be due to you upon a default with respect to the Obligations.

Notice of acceptance of this Guaranty and of any default by the Customer or any other person is hereby waived. Presentment, protest demand, and notice of protest, demand and dishonor of any of the Obligations, and the exercise of possessory, collection or other remedies for the Obligations, are hereby waived. The undersigned warrants that it has adequate means to obtain from the Customer on a continuing basis financial data and other information regarding the Customer and is not relying upon you to provide any such data or other information. Without limiting the foregoing, notice of adverse change in the Customer's financial condition or of any other fact which might materially increase the risk of the undersigned is also waived. All settlements, compromises, accounts stated and agreed balances made in good faith between the Customer, its successors or assigns, and you shall be binding upon and shall not affect the liability of the undersigned.

Payment of all amounts now or hereafter owed to the undersigned by the Customer or any other obligor for any of the Obligations is hereby subordinated in right of payment to the indefeasible payment in full to you of all Obligations and is hereby assigned to you as a security therefor. The undersigned hereby irrevocably and unconditionally waives and relinquishes all statutory, contractual, common law, equitable and all other claims against the Customer, any other obligor for any of the Obligation, any collateral therefor, or any other assets of the Customer or any such other obligor, for subrogation, reimbursement, exoneration, contribution, indemnification, setoff or other recourse in respect of sums paid or payable to you by the undersigned hereunder,



D0094FK

FROM :                    PHONE NO. :              Oct. 16 1998 11:58AM P2

OCT 09 1998 10:32 FR GE CAPITAL-CT      612 833 5778 TO 917183499588      P.15/16

and the undersigned hereby further irrevocably and unconditionally waives and relinquishes any and all other benefits which it might otherwise directly or indirectly receive or be entitled to receive by reason of any amounts paid by, or collected or due from, it, the Customer or any other obligor for any of the Obligations, or realized from any of their respective assets.

THE UNDERSIGNED HEREBY UNCONDITIONALLY WAIVES ITS RIGHT TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS BETWEEN US RELATING TO THE SUBJECT MATTER HEREOF OR THEREOF, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN US. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). THIS WAIVER IS IRREVOCABLE MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, OR ANY RELATED DOCUMENTS. IN THE EVENT OF LITIGATION, THIS GUARANTY MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

As used in this Guaranty, the word "person" shall include any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization, or any government or any political subdivision thereof.

This Guaranty is intended by the parties as a final expression of the guaranty of the undersigned and is also intended as a complete and exclusive statement of the terms thereof. No course of dealing, course of performance or trade usage, nor any paid evidence of any kind, shall be used to supplement or modify any of the terms hereof. Nor are there any conditions to the full effectiveness of this Guaranty. This Guaranty and each of its provisions may only be waived, modified, varied, released, terminated or surrendered, in whole or in part, by a duly authorized written instrument signed by you. No failure by you to exercise your rights hereunder shall give rise to any estoppel against you, or excuse the undersigned from performing hereunder. Your waiver of any right to demand performance hereunder shall not be a waiver of any subsequent or other right to demand performance hereunder.

This Guaranty shall not be discharged or affected by the death of any of the undersigned, but shall bind their respective heirs, executors, administrators, and assigns, and the benefits thereof shall extend to and include your successors and assigns. In the event of default hereunder, you may at any time inspect undersigned's records, or at your option, undersigned shall furnish you with a current independent audit report.

If any provisions of this Guaranty are in conflict with any applicable statute, rule or law, then such provisions shall be deemed null and void to the extent that they may conflict therewith, but without invalidating any other provisions hereof.

THIS GUARANTY IS BEING EXECUTED BY THE UNDERSIGNED INDIVIDUALS IN THEIR OWN CAPACITY AND NOT AS A DIRECTOR, OFFICER, EMPLOYEE, OR REPRESENTATIVE FOR ANY CORPORATION OR OTHER ORGANIZATION.

**WITNESS** our hands on the day and year above written.

Signed in the presence of:

_____        x _____

Print Name:   Michael Colangelo
Address:      929 E Ridgewood Ave
              Ridgewood NJ 07450
Telephone No.:  201-612-0109
Social Security No.:  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

(Sign and print your name only. DO NOT add any title or corporate office.)

**EXHIBIT E**

(6/91)

# INDIVIDUAL GUARANTY

Date: Oct 14 _____, 19 98

General Electric Capital Corporation
11010 Prairie Lakes Drive Suite 150
Eden Prairie, MN 55344

    To induce you to enter into, purchase or otherwise acquire, now or at any time hereafter, any promissory notes, security agreements, chattel mortgages, pledge agreements, conditional sale contracts, lease agreements, and/or any other documents or instruments evidencing, or relating to, any lease, loan, extension of credit or other financial accommodation (collectively "Account Documents" and each an "Account Document") to ROYAL TOURS SERVICE, INC., a corporation organized and existing under the laws of the State of New York ("Customer"), but without in any way binding you to do so, the undersigned, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, does hereby guarantee to you, your successors and assigns, the due regular and punctual payment of any sum or sums of money which the Customer may owe to you now or at any time hereafter, whether evidenced by an Account Document, on open account or otherwise, and whether it represents principal, interest, rent, late charges, indemnities, an original balance, an accelerated balance, liquidated damages, a balance reduced by partial payment, a deficiency after sale or other disposition of any leased equipment, collateral or security, or any other type of sum of any kind whatsoever that the Customer may owe to you now or at any time hereafter, and does hereby further guarantee to you, your successors and assigns, the due, regular and punctual performance of any other duty or obligation of any kind or character whatsoever that the Customer may owe to you now or at any time hereafter (all such payment and performance obligations being collectively referred to as "Obligations"). Undersigned does hereby further guarantee to pay upon demand all losses, costs, attorneys' fees and expenses which may be suffered by you by reason of Customer's default or default of the undersigned.

    This Guaranty is a guaranty of prompt payment and performance (and not merely a guaranty of collection). Nothing herein shall require you to first seek or exhaust any remedy against the Customer, its successors and assigns, or any other person obligated with respect to the Obligations, or to first foreclose, exhaust or otherwise proceed against any leased equipment, collateral or security which may be given in connection with the Obligations. It is agreed that you may, upon any breach or default of the Customer, or at any time thereafter, make demand upon the undersigned and receive payment and performance of the Obligations, with or without notice or demand for payment or performance by the Customer, its successors or assigns, or any other person. Suit may be brought and maintained against the undersigned, at your election, without joinder of the Customer or any other person as parties thereto. The obligations of each signatory to this Guaranty shall be joint and several.

    The undersigned agrees that its obligations under this Guaranty shall be primary, absolute, continuing and unconditional, irrespective of and unaffected by any of the following actions or circumstances (regardless of any notice to or consent of the undersigned): (a) the genuineness, validity, regularity and enforceability of the Account Documents or any other document; (b) any extension, renewal, amendment, change, waiver or other modification of the Account Documents or any other document; (c) the absence of, or delay in, any action to enforce the Account Documents, this Guaranty or any other document; (d) your failure or delay in obtaining any other guaranty of the Obligations (including, without limitation, your failure to obtain the signature of any other guarantor hereunder); (e) the release of, extension of time for payment or performance by, or any other indulgence granted to the Customer or any other person with respect to the Obligations by operation of law or otherwise; (f) the existence, value, condition, loss, subordination or release (with or without substitution) of, or failure to have title to or perfect and maintain a security interest in, or the time, place and manner of any sale or other disposition of any leased equipment, collateral or security given in connection with the Obligations, or any other impairment (whether intentional or negligent, by operation of law or otherwise) of the rights of the undersigned; (g) the Customer's voluntary or involuntary bankruptcy, assignment for the benefit of creditors, reorganization, or similar proceedings affecting the Customer or any of its assets; or (h) any other action or circumstances which might otherwise constitute a legal or equitable discharge or defense of a surety or guarantor.

    This Guaranty may be terminated upon delivery to you (at your address shown above) of a written termination notice from the undersigned. However, as to all Obligations (whether matured, unmatured, absolute, contingent or otherwise) incurred by the Customer prior to your receipt of such written termination notice (and regardless of any subsequent amendment, extension or other modification which may be made with respect to such Obligations), this Guaranty shall nevertheless continue and remain undischarged until all such Obligations are indefeasibly paid and performed in full.

    The undersigned agrees that this Guaranty shall remain in full force and effect or be reinstated (as the case may be) if at any time payment or performance of any of the Obligations (or any part thereof) is rescinded, reduced or must otherwise be restored or returned by you, all as though such payment or performance had not been made. If, by reason of any bankruptcy, insolvency or similar laws affecting the rights of creditors, you shall be prohibited from exercising any of your rights or remedies against the Customer or any other person or against any property, then, as between you and the undersigned, such prohibition shall be of no force and effect, and you shall have the right to make demand upon, and receive payment from, the undersigned of all amounts and other sums that would be due to you upon a default with respect to the Obligations.

    Notice of acceptance of this Guaranty and of any default by the Customer or any other person is hereby waived. Presentment, protest demand, and notice of protest, demand and dishonor of any of the Obligations, and the exercise of possessory, collection or other remedies for the Obligations, are hereby waived. The undersigned warrants that it has adequate means to obtain from the Customer on a continuing basis financial data and other information regarding the Customer and is not relying upon you to provide any such data or other information. Without limiting the foregoing, notice of adverse change in the Customer's financial condition or of any other fact which might materially increase the risk of the undersigned is also waived. All settlements, compromises, accounts stated and agreed balances made in good faith between the Customer, its successors or assigns, and you shall be binding upon and shall not affect the liability of the undersigned.

    Payment of all amounts now or hereafter owed to the undersigned by the Customer or any other obligor for any of the Obligations is hereby subordinated in right of payment to the indefeasible payment in full to you of all Obligations and is hereby assigned to you as a security therefor. The undersigned hereby irrevocably and unconditionally waives and relinquishes all statutory, contractual, common law, equitable and all other claims against the Customer, any other obligor for any of the Obligations, any collateral therefor, or any other assets of the Customer or any such other obligor, for subrogation, reimbursement, exoneration, contribution, indemnification, setoff or other recourse in respect of sums paid or payable to you by the undersigned hereunder,

and the undersigned hereby further irrevocably and unconditionally waives and relinquishes any and all other benefits which it might otherwise directly or indirectly receive or be entitled to receive by reason of any amounts paid by, or collected or due from, it, the Customer or any other obligor for any of the Obligations, or realized from any of their respective assets.

THE UNDERSIGNED HEREBY UNCONDITIONALLY WAIVES ITS RIGHT TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS BETWEEN US RELATING TO THE SUBJECT MATTER HEREOF OR THEREOF, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN US. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). THIS WAIVER IS IRREVOCABLE MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, OR ANY RELATED DOCUMENTS. IN THE EVENT OF LITIGATION, THIS GUARANTY MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

As used in this Guaranty, the word "person" shall include any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization, or any government or any political subdivision thereof.

This Guaranty is intended by the parties as a final expression of the guaranty of the undersigned and is also intended as a complete and exclusive statement of the terms thereof. No course of dealing, course of performance or trade usage, nor any paid evidence of any kind, shall be used to supplement or modify any of the terms hereof. Nor are there any conditions to the full effectiveness of this Guaranty. This Guaranty and each of its provisions may only be waived, modified, varied, released, terminated or surrendered, in whole or in part, by a duly authorized written instrument signed by you. No failure by you to exercise your rights hereunder shall give rise to any estoppel against you, or excuse the undersigned from performing hereunder. Your waiver of any right to demand performance hereunder shall not be a waiver of any subsequent or other right to demand performance hereunder.

This Guaranty shall not be discharged or affected by the death of any of the undersigned, but shall bind their respective heirs, executors, administrators, and assigns, and the benefits thereof shall extend to and include your successors and assigns. In the event of default hereunder, you may at any time inspect undersigned's records, or at your option, undersigned shall furnish you with a current independent audit report.

If any provisions of this Guaranty are in conflict with any applicable statute, rule or law, then such provisions shall be deemed null and void to the extent that they may conflict therewith, but without invalidating any other provisions hereof.

THIS GUARANTY IS BEING EXECUTED BY THE UNDERSIGNED INDIVIDUALS IN THEIR OWN CAPACITY AND NOT AS A DIRECTOR, OFFICER, EMPLOYEE, OR REPRESENTATIVE FOR ANY CORPORATION OR OTHER ORGANIZATION.

**WITNESS** our hands on the day and year above written.

Signed in the presence of:

X _Indzapli Inlunen_ _____

X _Jvule Olink_ _____

Print Name:    Hiroaki Onuki
X Address:    _130 Green St._
       _Brooklyn, NY 11222_
X Telephone No.:   _718-348-8566_
X Social Security No.:  _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_

(Sign and print your name only. DO NOT add any title or corporate office.)

**EXHIBIT F**

## LEASE RENEWAL AMENDMENT (TRAC)
### 4080467-001

THIS LEASE RENEWAL AMENDMENT dated as of April 1, 2007 ("Amendment") amends Schedule No. 001 ("Schedule") to the Master Lease Agreement dated as of March 27, 1997 ("Agreement"), such Schedule and Agreement, as the same may have been heretofore amended or otherwise modified, are hereinafter collectively referred to as the ("Lease") between General Electric Capital Corporation ("Lessor") and Royal Tours Service, Inc. ("Lessee"). Capitalized terms not defined herein shall have the meanings assigned to them in the Lease.

## WITNESSETH

WHEREAS, the term of the Lease is scheduled to expire on August 30, 2006 ("Primary Term Expiration Date"); and

WHEREAS, Lessee desires to renew the Lease pursuant to the terms set forth herein; and

WHEREAS, Lessor is willing to consent to such renewal pursuant to the terms set forth herein;

NOW, THEREFORE, in consideration of the above premises and the mutual promises contained herein, as well as other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto, intending to be legally bound, agree as follows:

1.  Renewal. Commencing on April 1, 2007, the Lease shall be renewed for an additional period of Thirty-Six (36) months ("Renewal Term") on and subject to the same terms and conditions as set forth in the Lease, except as otherwise expressly provided herein:

2.  Rent.

    (a)  Commencing on April 1, 2007 and on the same day of each month thereafter throughout the Renewed Term, Lessee shall pay to Lessor Three (3) consecutive payments of Five thousand and 00/100 Dollars ($5,000.00), followed by Thirty-three (33) consecutive payments of Seven thousand one hundred thirty-four and 16/100 Dollars ($7,134.16) as periodic rent ("Periodic Rent") plus all applicable sales, use and other taxes thereon.

    (b)  During the Renewed Term, the Stipulated Loss Value and Termination Value for any Equipment shall be equal to its Capitalized Lessors Cost (as such cost amount is specified in the Lease) multiplied by the appropriate percentage set forth in Exhibit A hereto.

    (c)  Lessee hereby represents and warrants that all of the representations and warranties included in the Lease are true and correct as of the date first above written.

3.  Terminal Rental Adjustment. The following provisions shall apply at the end of the Renewal Term:

    (a)  Definitions of Certain Terms.

        (i)  "Estimated Residual Value" means 0.0% of the Capitalized Lessor's Cost of the Equipment as set forth on the Schedule.

        (ii)  "Schedule Expiration" means the last day of the scheduled term of the Lease as to the Equipment described in the Schedule.

    (b)  Determination of Realized Value. The Realized Value for each unit of Equipment on the Schedule shall be determined as follows:

1

(i)    If Lessee elects to exercise its option to purchase the Equipment, the Realized Value of each unit shall be its Fair Market Value.

(ii)   If Lessee has not exercised its option to purchase the Equipment, Lessee shall, and Lessor may, solicit cash bids for such unit(s) on an AS IS, WHERE IS basis, provided Lessee may not bid, directly or indirectly. Such unit(s) shall be sold by Lessor to the highest bidder. In the event that a unit is not sold within thirty (30) days following Schedule Expiration, then Lessee and Lessor agree, in view of the uncertainties of market conditions and the parties' inability to predict what the actual sales price of such unit would be, that the Realized Value of such unit shall, for purposes of computing Lessee's liability as provided in paragraph (c) below, be deemed to equal zero. Upon the sale of the unit at any time after the expiration of such 30-day period, Lessor will apply the Realized Value to (i) any obligations of Lessee to Lessor not previously paid, (ii) refund to Lessee, without interest, any amount which Lessee may have previously paid to Lessor with respect to such unit as required under paragraph (c), and (iii) pay to Lessee the amount determined in accordance with paragraph (d) below.

(c)    Lessee Liability.    If the Realized Value of the Equipment is less than the Estimated Residual Value thereof, Lessor shall notify Lessee in writing and Lessee shall, within ten (10) days of its receipt of Lessor's written notice, pay to Lessor, as an adjustment to the rental payable under the Lease, an amount equal to the difference between the Realized Value and the Estimated Residual Value.

(d)    Lessor Liability.    If the Realized Value of the Equipment exceeds the Estimated Residual Value thereof, and provided that Lessee is not then in default under the Lease, Lessor shall pay to Lessee, as an adjustment to the rental payable under the Lease, an amount equal to 100% of such excess, but only to the extent Lessor actually receives the Realized Value in cash.

4.    No Implied Changes. Except as expressly modified herein, all terms and provisions of the Lease shall remain in full force and effect.

    IN WITNESS WHEREOF, the parties hereto have caused their duly authorized representatives to execute and deliver this Amendment as of the date first above written.

LESSOR:                                    LESSEE:

GENERAL ELECTRIC CAPITAL CORPORATION        ROYAL TOURS SERVICE, INC.

By: _____          X    By: _____

Title:    Collateral Specialist           Title:    President
1

Exhibit A
TO
LEASE RENEWAL AMENDMENT
DATED AS OF April 1, 2007
TO GE ACCOUNT 4080467-001

STIPULATED LOSS VALUES

| RENTAL PAYMENT NUMBER | S/LV PERCENTAGE * |
|---|---|
| 1 | 33.576 |
| 2 | 33.259 |
| 3 | 32.939 |
| 4 | 32.610 |
| 5 | 31.973 |
| 6 | 31.327 |
| 7 | 30.671 |
| 8 | 30.003 |
| 9 | 29.326 |
| 10 | 28.638 |
| 11 | 27.938 |
| 12 | 27.225 |
| 13 | 26.507 |
| 14 | 25.786 |
| 15 | 25.059 |
| 16 | 24.329 |
| 17 | 23.585 |
| 18 | 22.836 |
| 19 | 22.083 |
| 20 | 21.317 |
| 21 | 20.546 |
| 22 | 19.770 |
| 23 | 18.981 |
| 24 | 18.178 |
| 25 | 17.370 |
| 26 | 16.557 |
| 27 | 15.738 |
| 28 | 14.915 |
| 29 | 14.078 |
| 30 | 13.235 |
| 31 | 12.387 |
| 32 | 11.525 |
| 33 | 10.657 |
| 34 | 9.784 |
| 35 | 8.897 |
| 36 | 7.996 |

INITIALED: _____    INITIALED: _____

*The Stipulated Loss Value for any unit of Equipment shall be equal to its Capitalized Lessor's Cost ( $717,296.00 as such cost amount is specified in the Lease) multiplied by the appropriate percentage derived from the above tables.

Exhibit B
TO
LEASE RENEWAL AMENDMENT
DATED AS OF April 1, 2007
TO GE ACCOUNT 4080467-001

| Model | Vin Number | Capitalized Lessor's Cost |
|-------|------------|---------------------------|
| SDH217 | WKK138UC0X1045127 | $ 358,648.00 |
| SDH217 | WKK138UC2X1045128 | $ 358,648.00 |

Total          $ 717,296.00

Initialed          X          Initialed

**EXHIBIT G**

# CORPORATE GUARANTY

Date: May 31, 2007

General Electric Capital Corporation
11010 Prairie Lakes Drive Suite 150
Eden Prairie, MN 55344

To induce you to enter into, purchase or otherwise acquire, now or at any time hereafter, any promissory notes, security agreements, chattel mortgages, pledge agreements, conditional sale contracts, lease agreements, and/or any other documents or instruments evidencing, or relating to, any lease, loan, extension of credit or other financial accommodation (collectively "Account Documents" and each an "Account Document") to Royal Tours Service, Inc., a corporation organized and existing under the laws of the State of New York ("Customer"), but without in any way binding you to do so, the undersigned, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, does hereby guarantee to you, your successors and assigns, the due, regular and punctual payment of any sum or sums of money which the Customer may owe to you now or at any time hereafter, whether evidenced by an Account Document, on open account or otherwise, and whether it represents principal, interest, rent, late charge, indemnities, an original balance, an accelerated balance, liquidated damages, a balance reduced by partial payment, a deficiency after sale or other disposition of any leased equipment, collateral or security, or any other type of sum of any kind whatsoever that the Customer may owe to you now or at any time hereafter, and does hereby further guarantee to you, your successors and assigns, the due, regular and punctual performance of any other duty or obligation of any kind or character whatsoever that the Customer may owe to you now or at any time hereafter (all such payment and performance obligations being collectively referred to as "Obligations"). Undersigned does hereby further guarantee to pay upon demand all losses, costs, attorneys' fees and expenses which may be suffered by you by reason of Customer's default or default of the undersigned. As used in this Guaranty, "you" shall mean General Electric Capital Corporation and all its subsidiaries.

This Guaranty is a guaranty of prompt payment and performance (and not merely a guaranty of collection). Nothing herein shall require you to first seek or exhaust any remedy against the Customer, its successors and assigns, or any other person obligated with respect to the Obligations, or to first foreclose, exhaust or otherwise proceed against any leased equipment, collateral or security which may be given in connection with the Obligations. It is agreed that you may, upon any breach or default of the Customer, or at any time thereafter, make demand upon the undersigned and receive payment and performance of the Obligations, with or without notice or demand for payment or performance by the Customer, its successors or assigns, or any other person. Suit may be brought and maintained against the undersigned, at your election, without joinder of the Customer or any other person as parties thereto. The obligations of each signatory to the Guaranty, and each other guarantor of the Obligations, shall be joint and several.

The undersigned agrees that its obligations under this Guaranty shall be primary, absolute, continuing and unconditional, irrespective of and unaffected by any of the following actions or circumstances (regardless of any notice to or consent of the undersigned): (a) the genuineness, validity, regularity and enforceability of the Account Documents or any other document; (b) any extension, renewal, amendment, change, waiver or other modification of the Account Documents or any other document; (c) the absence of, or delay in, any action to enforce the Account Documents, this Guaranty or any other document; (d) your failure or delay in obtaining any other guaranty of the Obligations (including, without limitation, your failure to obtain the signature of any other guarantor hereunder); (e) the release of, extension of time for payment or performance by, or any other indulgence granted to the Customer or any other person with respect to the Obligations by operation of law or otherwise; (f) the existence, value, condition, loss, subordination or release (with or without substitution) of, or failure to have title to or perfect and maintain a security interest in, or the time, place and manner of any sale or other disposition of any leased equipment, collateral or security given in connection with the Obligations, or any other impairment (whether intentional or negligent, by operation of law or otherwise) of the rights of the undersigned; (g) the Customer's voluntary or involuntary bankruptcy, assignment for the benefit of creditors, reorganization, or similar proceedings affecting the Customer or any of its assets; or (h) any other action or circumstances which might otherwise constitute a legal or equitable discharge or defense of a surety or guarantor.

This Guaranty, the Account Documents and the Obligations may be assigned by you, without the consent of the Undersigned. The Undersigned agrees that if it receives written notice of an assignment from you, the Undersigned will pay all amounts due hereunder to such assignee or as instructed by you. The Undersigned also agrees to confirm in writing receipt of the notice of assignment as may be reasonably requested by assignee. The Undersigned hereby waives and agrees not to assert against any such assignee any of the defenses set forth in the immediate proceeding paragraph.

This Guaranty may be terminated upon delivery to you (at your address shown above) of a written termination notice from the undersigned. However, as to all Obligations (whether matured, unmatured, absolute, contingent or otherwise) incurred by the Customer prior to your receipt of such written termination notice (and regardless of any subsequent amendment, extension or other modification which may be made with respect to such Obligations), this Guaranty shall nevertheless continue and remain undischarged until all such Obligations are indefeasibly paid and performed in full.

The undersigned agrees that this Guaranty shall remain in full force and effect or be reinstated (as the case may be) if at any time payment or performance of any of the Obligations (or any part thereof) is rescinded, reduced or must otherwise be restored or returned by you, all as though such payment or performance had not been made. If, by reason of any bankruptcy, insolvency or similar laws effecting the rights of creditors, you shall be prohibited from exercising any of your rights or remedies against the Customer or any other person or against any property, then, as between you and the undersigned, such prohibition shall be of no force and effect, and you shall have the right to make demand upon, and receive payment from, the undersigned of all amounts and other sums that would be due to you upon a default with respect to the Obligations.

Notice of acceptance of this Guaranty and of any default by the Customer or any other person is hereby waived. Presentment, protest, demand, and notice of protest, demand and dishonor of any of the Obligations, and the exercise of possessory, collection or other remedies for the Obligations, are hereby waived. The undersigned warrants that it has adequate means to obtain from the Customer on a continuing basis financial data and other information regarding the Customer and is not relying upon you to provide any such data or other information. Without limiting the foregoing, notice of adverse change in the Customer's financial condition or of any other fact which might materially increase the risk of the undersigned is also waived. All settlements, compromises, accounts stated and agreed balances made in good faith between the Customer, its successors or assigns, and you shall be binding upon and shall not affect the liability of the undersigned.

Payment of all amounts now or hereafter owed to the undersigned by the Customer or any other obligor for any of the Obligations is hereby subordinated in right of payment to the indefeasible payment in full to you of all Obligations and is hereby assigned to you as a security therefor. The undersigned hereby irrevocably and unconditionally waives and relinquishes all statutory, contractual, common law, equitable and all other claims against the Customer, any other obligor for any of the Obligations, any collateral therefor, or any other assets of the Customer or any such other obligor, for subrogation, reimbursement, exoneration, contribution, indemnification, setoff or other recourse in respect of sums paid or payable to you by the undersigned hereunder, and the undersigned hereby further irrevocably and unconditionally waives and relinquishes any and all other benefits which it might otherwise directly or indirectly receive or be entitled to receive by reason of any amounts paid by, or collected or due from, it, the Customer or any other obligor for any of the Obligations, or realized from any of their respective assets.

THE UNDERSIGNED HEREBY UNCONDITIONALLY WAIVES ITS RIGHT TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS BETWEEN US RELATING TO THE SUBJECT MATTER HEREOF OR THEREOF, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN US. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). THIS WAIVER IS IRREVOCABLE MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, OR ANY RELATED DOCUMENTS. IN THE EVENT OF LITIGATION, THIS GUARANTY MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

As used in this Guaranty, the word "person" shall include any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization, or any government or any political subdivision thereof.

This Guaranty is intended by the parties as a final expression of the guaranty of the undersigned and is also intended as a complete and exclusive statement of the terms thereof. No course of dealing, course of performance or trade usage, nor any paid evidence of any kind, shall be used to supplement or modify any of the terms hereof. Nor are there any conditions to the full effectiveness of this Guaranty. This Guaranty and each of its provisions may only be waived, modified, varied, released, terminated or surrendered, in whole or in part, by a duly authorized written instrument signed by you. No failure by you to exercise your rights hereunder shall give rise to any estoppel against you, or excuse the undersigned from performing hereunder. Your waiver of any right to demand performance hereunder shall not be a waiver of any subsequent or other right to demand performance hereunder.

This Guaranty shall be governed by, or construed in accordance with, the laws of the State of Connecticut. This Guaranty shall bind the undersigned's successors and assigns and the benefits thereof shall extend to and include your successors and assigns. The undersigned will deliver to you its complete financial statements certified by a recognized firm of certified public accountants, within ninety (90) days of the close of each fiscal year of the undersigned. If you request, the undersigned will deliver to you copies of its quarterly financial reports certified by its chief financial officer, within ninety (90) days after the close of each fiscal quarter of the undersigned and copies of its most current tax returns. The undersigned will deliver to you copies of all Forms 10-K and 10-Q, if any, within 30 days after the dates on which they are filed with the Securities and Exchange Commission. In addition, in the event of default hereunder, you may at any time inspect undersigned's records. The undersigned represents, warrants and covenants that all financial statements delivered to you in connection with this Guaranty have been (and will be) prepared in accordance with generally accepted accounting principles, and since the date of the most recent financial statements or other financial information delivered to you, there has been no material adverse change in the undersigned's financial condition.

The undersigned hereby represents and warrants to you as of the date hereof that (i) the undersigned's execution, delivery and performance hereof does not and will not violate any judgment, order or law applicable to the undersigned, or constitute a breach of or default under any indenture, mortgage, deed of trust, or other agreement entered into by the undersigned with the undersigned's creditors or any other party; (ii) no approval, consent or withholding of objections is required from any governmental authority or any other entity with respect to the execution, delivery and performance by the undersigned of this Guaranty; (iii) this Guaranty constitutes a valid, legal and binding obligation of the undersigned, enforceable in accordance with its terms; (iv) there are no proceedings presently pending or threatened against the undersigned which will impair its ability to perform under this Guaranty; (v) since the date of the undersigned's most recent financial statement, there has been no material adverse change in the financial condition of the undersigned; and (vi) the undersigned is and will remain in full compliance with all laws and regulations applicable to it including, without limitation, it neither is nor shall be (Y) listed on the Specially Designated Nationals and Blocked Person List maintained by the Office of Foreign Assets Control ("OFAC"), Department of the Treasury, and/or any other similar lists maintained by OFAC pursuant to any authorizing statute, Executive Order or regulation or (Z) a person designated under Section 1(b), (c) or (d) of Executive Order No. 13224 (September 23, 2001), any related enabling legislation or any other similar Executive Orders.

If any provisions of this Guaranty are in conflict with any applicable statute, rule or law, then such provisions shall be deemed null and void to the extent that they may conflict therewith, but without invalidating any other provisions hereof.

THE UNDERSIGNED IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE STATE OF CONNECTICUT TO HEAR AND DETERMINE ANY SUIT, ACTION OR PROCEEDING AND TO SETTLE ANY DISPUTES, WHICH MAY ARISE OUT OF OR IN CONNECTION HEREWITH AND WITH THE ACCOUNT DOCUMENTS (COLLECTIVELY, THE "PROCEEDINGS"), AND THE UNDERSIGNED FURTHER IRREVOCABLY WAIVES ANY RIGHT IT MAY HAVE TO REMOVE ANY SUCH PROCEEDINGS FROM ANY SUCH COURT (EVEN IF REMOVAL IS SOUGHT TO ANOTHER OF THE ABOVE-NAMED COURTS). THE UNDERSIGNED IRREVOCABLY WAIVES ANY OBJECTION WHICH IT MIGHT NOW OR HEREAFTER HAVE TO THE ABOVE-NAMED COURTS BEING NOMINATED AS THE EXCLUSIVE FORUM TO HEAR AND DETERMINE ANY SUCH PROCEEDINGS AND AGREES NOT TO CLAIM THAT IT IS NOT PERSONALLY SUBJECT TO THE JURISDICTION OF THE ABOVE-NAMED COURTS FOR ANY REASON WHATSOEVER, THAT IT OR ITS PROPERTY IS IMMUNE FROM LEGAL PROCESS FOR ANY REASON WHATSOEVER, THAT ANY SUCH COURT IS NOT A CONVENIENT OR APPROPRIATE FORUM IN EACH CASE WHETHER ON THE GROUNDS OF VENUE OR FORUM NON-CONVENIENS OR OTHERWISE. THE UNDERSIGNED ACKNOWLEDGES THAT BRINGING ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY COURT OTHER THAN THE COURTS SET FORTH ABOVE WILL CAUSE IRREPARABLE HARM TO PAYEE WHICH COULD NOT ADEQUATELY BE COMPENSATED BY MONETARY DAMAGES, AND, AS SUCH, THE UNDERSIGNED AGREES THAT, IN ADDITION TO ANY OF THE REMEDIES TO WHICH PAYEE MAY BE ENTITLED AT LAW OR IN EQUITY, YOU WILL BE ENTITLED TO AN INJUNCTION OR INJUNCTIONS (WITHOUT THE POSTING OF ANY BOND AND WITHOUT PROOF OF ACTUAL DAMAGES) TO ENJOIN THE PROSECUTION OF ANY SUCH PROCEEDINGS IN ANY OTHER COURT. Notwithstanding the foregoing, you and the undersigned shall have the right to apply to a court of competent jurisdiction in the United States of America or abroad for equitable relief as is necessary to preserve, protect and enforce its respective rights under this Guaranty and the Account Documents, including, but not limited to orders of attachment or injunction necessary to maintain the status quo pending litigation or to enforce judgments against the undersigned, the Customer or the collateral pledged to you pursuant to any Account Document or to gain possession of such collateral.

Each signatory on behalf of a corporate guarantor warrants that he had authority to sign on behalf of such corporation and by so signing, to bind said guarantor corporation hereunder.

**IN WITNESS WHEREOF**, this Guaranty is executed the day and year above written.

Rurak Ocean Tours

By: _____
        (Signature)

Title: _President_
        (Officer's Title)

Federal Tax ID: 11-2470461

ATTEST: _____
        Secretary/Assistant Secretary

## INDIVIDUAL GUARANTY

✱ Date: 6/29/07

General Electric Capital Corporation
Normandale Lake Blvd, Suite 470
Bloomington, MN 55437

To induce you to enter into, purchase or otherwise acquire, now or at any time hereafter, any promissory notes, security agreements, chattel mortgages, pledge agreements, conditional sale contracts, lease agreements, and/or any other documents or instruments evidencing, or relating to, any lease, loan, extension of credit or other financial accommodation (collectively "Account Documents" and each an "Account Document") to Royal Tours Service, Inc., a corporation organized and existing under the laws of the State of New York ("Customer"), but without in any way binding you to do so, the undersigned, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, does hereby guarantee to you, your successors and assigns, the due regular and punctual payment of any sum or sums of money which the Customer may owe to you now or at any time hereafter, whether evidenced by an Account Document, an open account or otherwise, and whether it represents principal, interest, rent, late charges, indemnities, an original balance, an accelerated balance, liquidated damages, a balance reduced by partial payment, a deficiency after sale or other disposition of any leased equipment, collateral or security, or any other type of sum of any kind whatsoever that the Customer may owe to you now or at any time hereafter, and does hereby further guarantee to you, your successors and assigns, the due, regular and punctual performance of any other duty or obligation of any kind or character whatsoever that the Customer may owe to you now or at any time hereafter (all such payment and performance obligations being collectively referred to as "Obligations"). Undersigned does hereby further guarantee to pay upon demand all losses, costs, attorneys' fees and expenses which may be suffered by you by reason of Customer's default or default of the undersigned. As used in this Guaranty, "your" shall mean General Electric Capital Corporation and all its subsidiaries.

This Guaranty is a guaranty of prompt payment and performance (and not merely a guaranty of collection). Nothing herein shall require you to first seek or exhaust any remedy against the Customer, its successors and assigns, or any other person obligated with respect to the Obligations, or to first foreclose, exhaust or otherwise proceed against any leased equipment, collateral or security which may be given in connection with the Obligations. It is agreed that you may, upon any breach or default of the Customer, or at any time thereafter, make demand upon the undersigned and receive payment and performance of the Obligations, with or without notice or demand for payment or performance by the Customer, its successors or assigns, or any other person. Suit may be brought and maintained against the undersigned, at your election, without joinder of the Customer or any other person as parties thereto. The obligations of each signatory to this Guaranty, and each other guarantor of the Obligations, shall be joint and several.

The undersigned agrees that its obligations under this Guaranty shall be primary, absolute, continuing and unconditional, irrespective of and unaffected by any of the following actions or circumstances (regardless of any notice to or consent of the undersigned): (a) the genuineness, validity, regularity and enforceability of the Account Documents or any other document; (b) any extension, renewal, amendment, change, waiver or other modification of the Account Documents or any other document; (c) the absence of, or delay in, any action to enforce the Account Documents, this Guaranty or any other document; (d) your failure or delay in obtaining any other guaranty of the Obligations (including, without limitation, your failure to obtain the signature of any other guarantor hereunder); (e) the release of, extension of time for payment or performance by, or any other indulgence granted to the Customer or any other person with respect to the Obligations by operation of law or otherwise; (f) the existence, value, condition, loss, subordination or release (with or without substitution) of, or failure to have title to or perfect and maintain a security interest in, or the time, place and manner of any sale or other disposition of any leased equipment, collateral or security given in connection with the Obligations, or any other impairment (whether intentional or negligent, by operation of law or otherwise) of the rights of the undersigned; (g) the Customer's voluntary or involuntary bankruptcy, assignment for the benefit of creditors, reorganization, or similar proceedings affecting the Customer or any of its assets; or (h) any other action or circumstances which might otherwise constitute a legal or equitable discharge or defense of a surety or guarantor.

This Guaranty, the Account Documents and the Obligations may be assigned by you, without the consent of the Undersigned. The Undersigned agrees that if it receives written notice of an assignment from you, the Undersigned will pay all amounts due hereunder to such assignee or as instructed by you. The Undersigned also agrees to confirm in writing receipt of the notice of assignment as may be reasonably requested by assignee. The Undersigned hereby waives and agrees not to assert against any such assignee any of the defenses set forth in the immediate preceding paragraph.

This Guaranty may be terminated upon delivery to you (at your address shown above) of a written termination notice from the undersigned. However, as to all Obligations (whether matured, unmatured, absolute, contingent or otherwise) incurred by the Customer prior to your receipt of such written termination notice (and regardless of any subsequent amendment, extension or other modification which may be made with respect to such Obligations), this Guaranty shall nevertheless continue and remain undischarged until all such Obligations are indefeasibly paid and performed in full.

The undersigned agrees that this Guaranty shall remain in full force and effect or be reinstated (as the case may be) if at any time payment or performance of any of the Obligations (or any part thereof) is rescinded, reduced or must otherwise be restored or returned by you, all as though such payment or performance had not been made. If, by reason of any bankruptcy, insolvency or similar laws affecting the rights of creditors, you shall be prohibited from exercising any of your rights or remedies against the Customer or any other person or against any property, then, as between you and the undersigned, such prohibitions shall be of no force and effect, and you shall have the right to make demand upon, and receive payment from, the undersigned of all amounts and other sums that would be due to you upon a default with respect to the Obligations.

Notice of acceptance of this Guaranty and of any default by the Customer or any other person is hereby waived. Presentment, protest demand, and notice of protest, demand and dishonor of any of the Obligations, and the exercise of possessory, collection or other remedies for the Obligations, are hereby waived. The undersigned warrants that it has adequate means to obtain from the Customer on a continuing basis financial data and other information regarding the Customer and is not relying upon you to provide any such data or other information. Without limiting the foregoing, decline of adverse change in the Customer's financial condition or of any other fact which might materially increase the risk of the undersigned is also waived. All settlements, compromises, accounts stated and agreed balances made in good faith between the Customer, its successors or assigns, and you shall be binding upon and shall not affect the liability of the undersigned.

Payment of all amounts now or hereafter owed to the undersigned by the Customer or any other obligor for any of the Obligations is hereby subordinated in right of payment to the indefeasible payment in full to you of all Obligations and is hereby assigned to you as a security therefor. The undersigned hereby irrevocably and unconditionally waives and relinquishes all statutory, contractual, common law, equitable and all other claims against the Customer, any other obligor for any of the Obligations, any collateral therefor, or any other assets of the Customer or any such other obligor, for subrogation, reimbursement, exoneration, contribution, indemnification, setoff or other recourse in respect of sums paid or payable to you by the undersigned hereunder, and the undersigned hereby further irrevocably and unconditionally waives and relinquishes any and all other benefits which it might otherwise directly or indirectly receive or be entitled to receive by reason of any amounts paid by, or collected or due from, it, the Customer or any other obligor for any of the Obligations, or realized from any of their respective assets.

The undersigned hereby represents and warrants to you as of the date hereof that (i) the undersigned's execution, delivery and performance hereof does not and will not violate any judgment, order or law applicable to the undersigned, or constitute a breach of or default under any indenture, mortgage, deed of trust, or other agreement entered into by the undersigned with the undersigned's creditors or any other party; (ii) no approval, consent or withholding of objections is required from any governmental authority or any other entity with respect to the execution, delivery and performance by the undersigned of this Guaranty; (iii) this Guaranty constitutes a valid, legal and binding obligation, enforceable in accordance with its terms; (iv) there are no proceedings presently pending or threatened against the undersigned which will impair its ability to perform under this Guaranty; (v) since the date of the most recent financial statement, there has been no material adverse change in the financial condition of the undersigned; and (vi) the undersigned is and will remain in full compliance with all laws and regulations applicable to it including, without limitation, it neither is nor shall be (Y) listed on the Specially Designated Nationals and Blocked Person List maintained by the Office of Foreign Assets Control ("OFAC"), Department of the Treasury, and/or any other similar lists maintained by OFAC pursuant to any authorizing statute, Executive Order or regulation or (Z) a person designated under Section 1(b), (c) or (d) of Executive Order No. 13224 (September 23, 2001), any related enabling legislation or any other similar Executive Orders.

THE UNDERSIGNED HEREBY UNCONDITIONALLY WAIVES ITS RIGHT TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS BETWEEN US RELATING TO THE SUBJECT MATTER HEREOF OR THEREOF, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN US. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). THIS WAIVER IS IRREVOCABLE MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, OR ANY RELATED DOCUMENTS. IN THE EVENT OF LITIGATION, THIS GUARANTY MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

As used in this Guaranty, the word "person" shall include any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization, or any government or any political subdivision thereof.

This Guaranty is intended by the parties as a final expression of the guaranty of the undersigned and is also intended as a complete and exclusive statement of the terms thereof. No course of dealing, course of performance or trade usage, nor any paid evidence of any kind, shall be used to supplement or modify any of the terms hereof. Nor are there any conditions to the full effectiveness of this Guaranty. This Guaranty and each of its provisions may only be waived, modified, varied, released, terminated or surrendered, in whole or in part, by a duly authorized written instrument signed by you. No failure by you to exercise your rights hereunder shall give rise to any estoppel against you, or excuse the undersigned from performing hereunder. Your waiver of any right to demand performance hereunder shall not be a waiver of any subsequent or other right to demand performance hereunder.

This Guaranty shall be governed by, or construed in accordance with, the laws of the State of Connecticut. This Guaranty shall not be discharged or affected by the death of any of the undersigned, but shall bind their respective heirs, executors, administrators, and assigns, and the benefits thereof shall extend to and

1

include your successors and assigns.  The undersigned will deliver to you the undersigned's complete financial statements, reflecting the undersigned's assets, liabilities, net worth and income and expenses in reasonable detail, along with copies of the undersigned's most current tax returns, within ninety (90) days of the close of each calendar year.  In addition, in the event of default hereunder, you may at any time inspect undersigned's records.  The undersigned represents, warrants and covenants that since the date of the most recent financial statements or other financial information delivered to you, there has been no material adverse change in the undersigned's financial condition.

If any provisions of this Guaranty are in conflict with any applicable statute, rule or law, then such provisions shall be deemed null and void to the extent that they may conflict therewith, but without invalidating any other provisions hereof.

THE UNDERSIGNED IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE STATE OF CONNECTICUT TO HEAR AND DETERMINE ANY SUIT, ACTION OR PROCEEDING AND TO SETTLE ANY DISPUTES, WHICH MAY ARISE OUT OF OR IN CONNECTION HEREWITH AND WITH THE ACCOUNT DOCUMENTS (COLLECTIVELY, THE "PROCEEDINGS"), AND THE UNDERSIGNED FURTHER IRREVOCABLY WAIVES ANY RIGHT IT MAY HAVE TO REMOVE ANY SUCH PROCEEDINGS FROM ANY SUCH COURT (EVEN IF REMOVAL IS SOUGHT TO ANOTHER OF THE ABOVE-NAMED COURTS). THE UNDERSIGNED IRREVOCABLY WAIVES ANY OBJECTION WHICH IT MIGHT NOW OR HEREAFTER HAVE TO THE ABOVE-NAMED COURTS BEING NOMINATED AS THE EXCLUSIVE FORUM TO HEAR AND DETERMINE ANY SUCH PROCEEDINGS AND AGREES NOT TO CLAIM THAT IT IS NOT PERSONALLY SUBJECT TO THE JURISDICTION OF THE ABOVE-NAMED COURTS FOR ANY REASON WHATSOEVER, THAT IT OR ITS PROPERTY IS IMMUNE FROM LEGAL PROCESS FOR ANY REASON WHATSOEVER, THAT ANY SUCH COURT IS NOT A CONVENIENT OR APPROPRIATE FORUM IN EACH CASE WHETHER ON THE GROUNDS OF VENUE OR FORUM NON-CONVENIENS OR OTHERWISE. THE UNDERSIGNED ACKNOWLEDGES THAT BRINGING ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY COURT OTHER THAN THE COURTS SET FORTH ABOVE WILL CAUSE IRREPARABLE HARM TO PAYEE WHICH COULD NOT ADEQUATELY BE COMPENSATED BY MONETARY DAMAGES, AND, AS SUCH, THE UNDERSIGNED AGREES THAT, IN ADDITION TO ANY OF THE REMEDIES TO WHICH PAYEE MAY BE ENTITLED AT LAW OR IN EQUITY, YOU WILL BE ENTITLED TO AN INJUNCTION OR INJUNCTIONS (WITHOUT THE POSTING OF ANY BOND AND WITHOUT PROOF OF ACTUAL DAMAGES) TO ENJOIN THE PROSECUTION OF ANY SUCH PROCEEDINGS IN ANY OTHER COURT. Notwithstanding the foregoing, you and the undersigned shall have the right to apply in a court of competent jurisdiction in the United States of America or abroad for equitable relief as is necessary to preserve, protect and enforce its respective rights under this Guaranty and the Account Documents, including, but not limited to orders of attachment or injunction necessary to maintain the status quo pending litigation or to enforce judgments against the undersigned, the Customer or the collateral pledged to you pursuant to any Account Document or to gain possession of such collateral.

THIS GUARANTY IS BEING EXECUTED BY THE UNDERSIGNED INDIVIDUAL IN THEIR OWN CAPACITY AND NOT AS A DIRECTOR, OFFICER, EMPLOYEE, OR REPRESENTATIVE FOR ANY CORPORATION OR OTHER ORGANIZATION.

**IN WITNESS WHEREOF,** the undersigned hereby executes this Guaranty as of the date first above written.

By: _____
(Signature)

Print Name: Michael Colangelo

Address: 691 Eastern Ct
Ridgewood NJ 07450

Telephone No.: 347-992-9196

Social Security No.: 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

(Sign and print your name only. DO NOT add any title or corporate office.)

**EXHIBIT H**



**DDC·MTU**
FINANCIAL SERVICES

## LEASE AGREEMENT (TRAC)

This Lease Agreement ("Lease") is entered into on the 27th day of March, 1997, by and between **debis Financial Services, Inc. dba DDC-MTU Financial Services**, a Delaware corporation, with its principal place of business at 201 Merritt 7, Suite 700, Norwalk, CT 06856 ("Lessor") and **Royal Tours Service, Inc.**, a New York corporation, with its principal place of business at ~~25-18 38th Avenue, Long Island City, NY 11101~~ ("Lessee"). *[initials]*
*130 GREEN ST., BROOKLYN, NY 11222*

1.    **EQUIPMENT.** Lessor agrees to lease to Lessee and Lessee agrees to lease from Lessor the vehicle(s) described in each Schedule A now or hereafter executed pursuant to this Lease ("Schedule"), together with any attachments or accessories now or hereafter incorporated in or attached to said vehicle(s) ("Vehicle(s)").

It is hereby agreed that additional Vehicle(s) may be leased hereunder, at the sole discretion of the Lessor, by the execution of additional Schedules by Lessor and Lessee. Each such Schedule, when so executed, shall constitute a separate Lease of the Vehicle(s) described therein. Except as specifically modified in any Schedule, all of the terms and conditions of this Lease shall govern the rights and obligations of Lessee and Lessor with respect to the Vehicle(s) described in the Schedule. Whenever reference is made herein to "Lease" it shall be deemed to include all Schedules executed hereunder.

2.    **TERM.** This Lease shall commence on the delivery date stated on the applicable Schedule and shall continue until all rental payments as hereinafter described, and all of Lessee's other obligations hereunder, have been satisfied in full by Lessee.

3.    **RENTAL.** Lessee agrees to pay Lessor monthly payments in an amount and for the term indicated in the Schedule, without reduction or set off for any reason, except as otherwise provided in this Lease. The first payment shall be due on the date stated in the Schedule.

4.    **LATE CHARGE.** In the event Lessee fails to pay rental payments or any other sum required to be paid by Lessee, within ten (10) days of its due date, Lessor may, without declaring Lessee to be in default, charge Lessee an amount equal to five percent (5%) of such past due amounts or the maximum allowed by applicable state law.

5.    **FEES AND TAXES.** Lessee agrees to pay when due all fees, sales and use taxes, duties, assessments, highway use taxes, or other taxes and charges, however designated, now or hereafter levied or based upon the purchase, rental, ownership, use, possession, leasing, operation, control, maintenance or sale of the Vehicle(s), whether or not paid or payable by Lessor (excluding Lessor's net income, franchise and business and occupation taxes), and shall supply Lessor with proof of payment upon written demand therefor by Lessor.

**LESSEE EXPRESSLY UNDERSTANDS AND AGREES THAT IN THE EVENT THE PRESENT FEDERAL TAX LEGISLATION IS MODIFIED, ALTERED, REVOKED OR SUPPLEMENTED BY NEW FEDERAL TAX LEGISLATION DURING THE TERM OF THE LEASE, THE RESULT OF WHICH WOULD BE TO REDUCE OR DISALLOW ACCELERATED DEPRECIATION PRESENTLY AVAILABLE TO LESSOR, LESSEE'S MONTHLY LEASE PAYMENTS WILL BE INCREASED BY THE AMOUNTS NECESSARY TO COMPENSATE LESSOR FOR SUCH LOST TAX BENEFITS.**

6.    **INSURANCE.** With respect to the Vehicle(s), Lessee shall provide and maintain, at its own expense, public liability insurance for bodily injury or death and property damage insurance with an aggregate limit of not less than $5,000,000 per occurrence, or such other higher limit as may be required by law.

Lessee shall also provide and maintain, at its own expense, collision and upset insurance with a deductible of not more than ~~$2,500~~, and fire, theft and combined additional insurance with a deductible of not more than ~~$2,500~~. *$15,000.00*    *$5,000.00 [initials]*

All insurance required herein shall protect Lessor and Lessee as their interests may appear. All insurance required to be provided by Lessee shall designate Lessor as named additional insured and loss payee and shall, by the terms of the

1

policies or appropriate endorsements thereto: (a) be primary to, and in no respect excess or contributory to or contingent upon, any liability insurance provided by Lessor; (b) waive any right of subrogation against Lessor; (c) provide that all liability insurance shall first be applied against any claim against Lessor; (d) provide that all insurance proceeds are to be paid directly to Lessor in respect of any damage to the Vehicle(s); and (e) provide that coverage may not be changed, altered or canceled by the issuing insurance company without thirty (30) days prior written notice to Lessor.

All insurance required herein to be provided by Lessee shall be placed with an insurance company acceptable to and approved by Lessor. Lessor shall be provided with certificates of insurance (or other documents acceptable to Lessor) evidencing the insurance coverage required herein and establishing that such insurance is in effect with respect to the Vehicle(s).

With respect to any such insurance, Lessee hereby appoints Lessor, or Lessor's assignee, as Lessee's attorney in fact, with full power to: (a) determine at Lessor's discretion what is a reasonable sum for settlement and/or compromise of claim or suit; (b) institute suit in Lessee's name, or in Lessor's name, or both, and to add any costs or expenses relating to the suit or claim, including legal fees and expenses, to the balance of Lessee's obligations under the Lease; (c) sign in Lessee's name any settlement, draft or check.

Lessee agrees that any excess or umbrella liability insurance which it may have in addition to the minimum requirements set forth above shall also include the interest of Lessor, to the extent permitted by law.

7.    **LESSOR'S RIGHT TO PAY.** If Lessee fails to insure the Vehicle(s) as required by Section 6 hereof or if Lessee fails to pay and discharge any or all fees, taxes, liens and other charges as required by Section 5 hereof, Lessor, without prejudice to any other rights hereunder, may (but shall not be obligated to) provide such insurance, or may pay and discharge such fees, taxes, liens or other charges, and Lessee agrees to repay said sums to Lessor upon demand. If Lessee fails to repay Lessor within ten (10) days of Lessor's demand for repayment, Lessor may assess a late charge on such amounts in accordance with Section 4 hereof. If such amounts, including late charges, remain unpaid for ten (10) additional days, then Lessee shall also be liable for interest thereon at the default rate of interest set forth in Section 14 of this Lease, or the maximum amount permitted by law.

8.    **INDEMNIFICATION.** Lessee assumes liability for and agrees to defend, indemnify and hold Lessor harmless from any claim (including, without limitation, claims involving strict liability in tort or product liability), for liability, loss, cost, expense or damage of every nature (including, without limitation, fines, forfeitures, penalties, settlements, and attorney's fees) by or to any person and regardless of its basis, which directly or indirectly results from or pertains to the purchase, sale, leasing, manufacture, delivery, ownership, use, possession, operation, condition (including, without limitation, latent or other defects, whether or not discoverable, and patent, trademark and copyright infringement), removal, return or storage of the Vehicle(s), the breach by Lessee of any covenant or condition of this Lease, or the recovery of claims under insurance policies thereon. LESSEE'S INDEMNITIES AND LIABILITIES SHALL CONTINUE IN FULL FORCE AND EFFECT, NOTWITHSTANDING THE EXPIRATION OR TERMINATION OF THIS LEASE FOR ANY REASON.

Upon request by Lessor, Lessee shall assume the defense of all demands, claims, actions, suits and all other proceedings against Lessor for which indemnity is provided herein and shall allow Lessor to participate in the defense thereof. Lessee shall be subrogated to all rights of Lessor for any matter for which Lessee has assumed obligation hereunder and may not settle such demand, claim or action without Lessor's prior consent. Lessor shall be subrogated to all rights of Lessee for any matter for which Lessor has assumed obligation hereunder and may settle such demand, claim or action without Lessee's prior consent.

9.    **ASSIGNMENT.** All right, title and interest in and to this Lease, as well as to the Vehicle(s), may be assigned at any time by Lessor without Lessee's consent. Upon notice of any assignment by Lessor or its assignee, Lessee shall make all payments coming due hereunder to the assignee without offset, counterclaim or defense of any kind. It is expressly understood that any reference in this Lease to "Lessor" shall be construed to mean Lessor or Lessor's assignee.

Lessee shall not assign, transfer or sublet this Lease, the Vehicle(s) or Lessee's interest hereunder without Lessor's prior written consent (which may be withheld at Lessor's sole discretion), nor shall Lessee's interest hereunder inure to the benefit of any trustee, receiver, creditor or successor of Lessee or its property, whether or not in bankruptcy, or whether by operation of law or otherwise.

10.    **OWNERSHIP/TITLE.** Ownership of and title to all Vehicle(s) shall be and remain in Lessor, notwithstanding possession and use thereof by Lessee. Lessee has not acquired, and will not acquire by its acceptance of this Lease, any proprietary rights or interest in the Vehicle(s). Lessee and Lessor intend for this agreement to be a lease. Lessee

acknowledges that unless and until Lessor allows Lessee to purchase the Vehicle(s) pursuant to Section 15 below, Lessee's interest shall be that of lessee and not owner. Lessee shall perform and execute all things necessary to cause Lessor's ownership to be noted on the certificate(s) of title ("Title(s)"). Lessee agrees that at all times said Title(s) shall remain in the possession of Lessor and Lessee will deliver Title(s) to Lessor should Lessee come into possession of any Title(s), until such time as all amounts owing hereunder have been paid in full.

11.   **USE, INSPECTION AND ALTERATIONS.** Lessee at its sole expense shall have the Vehicle(s) serviced in accordance with the manufacturer's approved maintenance schedules, ensure that maintenance records are available for review by Lessor at reasonable times and places and maintain the Vehicle(s) in good repair, appearance, functional order, and good lawful operating condition; shall not use or permit the use of the Vehicle(s) in any unintended, injurious or unlawful manner; shall not subject the Vehicle(s) to unusual, extreme or severe operating conditions; and shall not change or alter the Vehicle(s) without Lessor's prior written consent, except that Lessee shall make such alterations and improvements, at Lessee's expense, as may be required from time to time to meet the requirements of law or of any federal, state or local governmental authority having jurisdiction over the Vehicle(s). To ensure compliance with the foregoing, Lessor shall have the right, at any time, to enter Lessee's premises or elsewhere to inspect the Vehicle(s) or to observe its use. All improvements and alterations, other than improvements which can be readily removed without causing damage to the Vehicle(s) and without rendering the Vehicle(s) unable to comply with law, shall become part of the Vehicle(s) and shall be the property of Lessor.

12.   **LOSS AND DAMAGE.** Lessee hereby assumes the risk of loss, including theft or destruction, and the risk of damage to the Vehicle(s), from any and every cause whatsoever, whether or not such loss is covered by insurance. Loss or damage to the Vehicle(s), or any part thereof, shall not relieve Lessee of any obligation under this Lease.

If the Vehicle(s) is damaged or destroyed in an accident or other occurrence or confiscated by any governmental authority or subjected to any tax lien or is stolen, abandoned or subjected to undue peril, Lessee will notify Lessor within ten (10) days of such occurrence or condition.

If the Vehicle(s) is damaged and is in a condition which Lessor believes may be reasonably repaired, Lessee shall repair the same to good working order. If the Vehicle(s) is in a condition which Lessor believes is beyond reasonable repair, or with respect to any other occurrence or condition set forth above, Lessor may terminate this Lease with respect to that Vehicle(s) immediately. If the Lease is terminated, Lessee's termination liability shall be the amount which Lessee would have to pay if Lessee had defaulted on the terms of the Lease as set forth in Section 14 hereof, less the proceeds Lessor receives from the insurance provided by Lessee, if any. Lessee expressly understands and agrees that in the event of a total loss, Lessee's insurance policy may not be sufficient to completely satisfy Lessee's indebtedness, and Lessee agrees that in such event Lessee shall be liable for, and shall pay Lessor upon demand therefor, the amount of any such deficiency.

13.   **SPECIAL REPRESENTATIONS, WARRANTIES AND COVENANTS OF LESSEE.** Lessee represents, warrants and covenants to Lessor that: (a) the Vehicle(s) will not be used outside of the United States during more than fifty percent (50%) of any calendar year or partial calendar year during the term of this Lease; (b) Lessee is not and will not become an organization exempt from the tax imposed by Chapter 1 of the Internal Revenue Code of 1986 nor will Lessee allow any such entity to use the Vehicle(s); and (c) Lessee is not the United States, any State (including the District of Columbia) or political subdivision thereof, or any agency or instrumentality of the United States, any State or political subdivision thereof or any international organization, nor will Lessee allow any such entity to use the Vehicle(s). Lessee acknowledges that if any representation, warranty or covenant herein is false or if it takes any action or omits to take any action which causes any such representation, warranty or covenant to be false or to be breached, Lessor, or the affiliate group of which it is a member, may suffer adverse tax consequences. Accordingly, Lessee agrees that if it breaches any such representation, warranty or covenant or if the same shall be or become false, this Lease shall be deemed to be in default and Lessee shall be liable to Lessor in the manner and for the amounts specified in Section 14 hereof.

14.   **DEFAULT.** Time is of the essence in this Lease, and Lessor may declare this Lease to be in default and terminated upon the occurrence of any of the following events: (a) Lessee's failure to pay when due the full amount of any payment required hereunder, including, without limitation, rent, taxes, liens, insurance, indemnification, repair or other charge; or (b) Lessee's failure to perform any of its other obligations, agreements or affirmations hereunder; or (c) the making of any false or misleading statement by Lessee prior to or in connection with this Lease; or (d) Lessee's death, dissolution, insolvency or other termination of existence; or (e) Lessee's becoming the subject of a petition in bankruptcy, either voluntarily or involuntarily, or making an assignment for the benefit of creditors, or being named or subjected to a suit for the appointment of a receiver; or (f) seizure of or levy upon the Vehicle(s) by reason of any legal or governmental

3

process directed against Lessee; or (g) any bankruptcy, insolvency, termination, or default of any guarantor of Lessee; or (h) Lessor in good faith believes the prospect for performance or payment by Lessee is substantially impaired.

Upon Lessee's default, Lessee shall be liable for, and shall pay Lessor upon demand, the sum of the following as liquidated damages: (a) any Lease payments or other amounts due and owing as of the time of default; plus (b) the balance of the Lease payments Lessee would have paid had the Lease gone to full term, less a deduction for the time value of such payments computed in accordance with the Rule of 78's; plus (c) the Residual Value, the future estimated value of equipment on lease, ("Residual Value") as set forth in the Schedule; plus (d) any and all commissions, fees or other amounts paid by Lessor's assignee as consideration for the assignment of this Lease (collectively, the "Default Liability").

In the event of Lessee's default, Lessee agrees to surrender the Vehicle(s) to Lessor at such location as Lessor may designate, and agrees that Lessor may take possession of the Vehicle(s) wherever the same may be found, whether on Lessee's premises or elsewhere, in accordance with applicable law. Lessee further agrees that any and all rights or interests Lessee may have in the Vehicle(s) shall be extinguished upon Lessee's default.

If Lessor obtains possession of the Vehicle(s) following Lessee's default, Lessor shall dispose of the Vehicle(s) by public or private sale in the wholesale or retail market, and such disposition may be with or without notice to Lessee. Following any such sale, Lessor shall deduct from the Default Liability the amount of any proceeds obtained upon disposition of the Vehicle(s), less any costs or expenses incurred by Lessor in connection with the repossession, storage, restoration and/or disposition of the Vehicle(s).

Lessor may assess, and Lessee will be liable for, interest on the total amounts Lessee may owe to Lessor from time to time by reason of Lessee's default at the rate of eighteen percent (18%) per annum, unless a lower rate is required by applicable law, in which case that rate shall apply, both before and after judgment. Lessee shall also be liable for any collection or legal costs or expenses incurred by Lessor, including reasonable attorney's fees and court costs.

Lessee understands and agrees that the remedies provided under this Lease in favor of Lessor upon default shall not be exclusive, but shall be cumulative and in addition to any other remedies available to Lessor, whether existing in law, equity or bankruptcy.

15.    PURCHASE OPTION. It is understood and agreed that Lessee has no option to purchase the Vehicle(s) at any time; however, the Lessee may have the opportunity to purchase the Vehicle(s) upon the expiration of the Lease for an amount equal to the Residual Value set forth in the Schedule. In addition, Lessee must pay any official fees and taxes assessed in connection with the purchase, plus any other amounts due hereunder but not paid at the time of termination. Lessee expressly understands that Lessee shall have absolutely no equity or other ownership rights in the Vehicle(s) unless and until Lessee purchases the Vehicle(s) pursuant to this Section 15.

16.    END OF LEASE TERMINATION LIABILITY. If Lessee does not purchase the Vehicle(s) at the end of the Lease term, Lessee shall, at Lessee's expense, assemble and return the Vehicle(s) leased hereunder unencumbered at Lessor's place of business, or at such other reasonable place as Lessor specifies, in the same condition, appearance and functional order as received, reasonable and ordinary wear and tear excepted.

Upon the return of the Vehicle(s) as herein provided, Lessor will sell the Vehicle(s) at a public or private sale with or without notice to Lessee. If the amount received from the sale (less interest on the Residual Value at the Bank of America Prime Rate plus 1.00%, floating, compounded monthly; sales tax payable; reasonable sales commissions; and restoration and storage costs, if any) exceeds the Residual Value of the Vehicle(s) as set forth in the Schedule, the amount of such surplus shall be paid to Lessee. If the amount received from the sale (less interest on the Residual Value at the Bank of America Prime Rate plus 1.00%, floating, compounded monthly; sales tax payable; reasonable sales commissions; and restoration and storage costs, if any) is less than the Residual Value of the Vehicle(s) as set forth in the Schedule, Lessee shall be liable for, and shall pay upon demand, the amount of such deficiency to Lessor. Lessee acknowledges that the potential benefit or liability contemplated by this Section 16 is not intended to create any equity interest in the Vehicle(s) for Lessee, but rather are designed as incentives for Lessee to properly maintain the Vehicle(s) as required by this Lease.

17.    DISCLAIMER OF WARRANTIES. LESSOR IS NOT THE PRODUCER, MANUFACTURER OR DESIGNER OF THE EQUIPMENT, AND LESSOR MAKES NO WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THIS LEASE AND THE EQUIPMENT INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR INTENDED USE. LESSOR SPECIFICALLY DISCLAIMS ANY AND ALL LIABILITY FOR CONSEQUENTIAL DAMAGES.

4

Lessor agrees, however, to assign to Lessee all of the manufacturer's standard warranties applicable to the Vehicle(s), together with any rights and remedies afforded thereunder, to the extent that the said warranties, rights and remedies are assignable.

18.   **ENTIRE AGREEMENT.**  This Lease and the Schedules referred to herein constitute the entire agreement of the parties hereto.  No waiver or modification of this Lease or any Schedule shall be effective unless in writing and signed by both parties.  No waiver or indulgence by Lessor of the deviation by Lessee of any performance required herein shall be deemed a waiver of Lessor's right to subsequent or other full and timely performance.

19.   **SUCCESSORS AND ASSIGNS.**  This Lease shall be binding upon and inure to the benefit of any permitted successors and assigns of the respective parties hereto.

20.   **COSTS AND ATTORNEY'S FEES.**  If Lessor employs an agent or other party for purposes of collection or repossession, or refers this Lease to an attorney for purposes of collection, repossession or enforcement of Lessor's interests herein, Lessee agrees to reimburse Lessor upon Lessor's demand for all of Lessor's reasonable repossession costs, attorney's fees and expenses to the extent permitted by applicable state law.

21.   **NOTICES.**  All notices and payments shall be mailed to the respective parties at the addresses set forth above or such other address as a party may provide from time to time in writing.

22.   **GOVERNING LAW; JURISDICTION.**  This Lease shall be deemed to have been made in the state named in Lessor's address above, and shall be interpreted, and the rights and liabilities of the parties determined, by the laws and courts of that state, to the exclusion of the courts of any other state or country; provided, however, that Lessor shall have the right, but not the obligation, to litigate in any state or country in which Lessee, the Vehicle(s), or any of Lessee's or any guarantor's assets are located.  Lessee waives any and all right to a jury trial regarding any dispute arising hereunder.

23.   **SEVERABILITY.**  If any of the provisions of this Lease are prohibited by or held invalid under applicable laws or regulations of any jurisdiction in which this Lease is sought to be enforced, then that provision shall be considered inapplicable and omitted but shall not invalidate the remaining provisions.

**LESSEE:**

**Royal Tours Service, Inc.**

By: _____
        Hiroaki Ohnuki

Title:   President _____

**LESSOR:**

**debis Financial Service, Inc. dba
DDC-MTU Financial Services**

By: _____
        Cramer Owen

Title:   Manager-Operations _____

**EXHIBIT I**

## SCHEDULE A
## (TRAC Lease)

Date of Schedule: **March 27, 1997**

This Schedule and Certification of Delivery, Inspection and Acceptance is executed and delivered under and pursuant to the terms of that certain Lease Agreement dated **March 27, 1997** by and between **debis Financial Services, Inc. dba DDC-MTU Financial Services** as Lessor and **Royal Tours Service, Inc.** as Lessee.

Equipment Description: **Two (2) 1997 Setra Motor Coaches, Model # S217HDH, VIN WKK138TCXV1045067, and VIN WKK138TC1V1045068,** together with all parts, accessories, additions and attachments thereto, and substitutions and replacements therefore, including proceeds of sale and insurance proceeds.

Base Equipment Location: **130 Green Street, Brooklyn, NY 11222**

Delivery Date: _____ ___, **1997**

Residual Value: (the future estimated value of equipment on lease) **$210,743.40**

Rent – Lessee hereby agrees and promises to pay Lessor **eighty-four (84)** payments of **$9,481.34** each, commencing on or before the date of advancement of funds and continuing on the same day of each month thereafter. In addition, the first and last monthly payments are due on or before the date of advancement of funds.

Certificate of Delivery and Acceptance and Date of Placement in Service - Lessee hereby certifies to Lessor that on and as of the date described above as "Delivery Date", the vehicle(s) described herein: (1) are tangible personal property and (2) have been delivered to and are in the possession of Lessee.

Lessee also represents, warrants and certifies that: (1) the vehicle(s) were delivered to Lessee's location and (2) the vehicle(s) were available for use and placed in service by Lessee on the above-described "Delivery Date".

Ratification and Affirmation of Representations, Warranties and Covenants - Lessee hereby agrees that its warranties and covenants made in the Lease Agreement are approved, ratified and affirmed in all aspects as of the date of this Schedule A and confirms that the representations made in the Lease Agreement are, as of the date of this Schedule A, true, accurate, and complete in all respects. Lessor and Lessee hereby characterize this Schedule A as a separate Lease with respect to each vehicle set forth above.


**LESSEE:**

**Royal Tours Service, Inc.**



By: _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
      Hiroaki Ohnuki
      President

**LESSOR:**

**debis Financial Services, Inc.
dba DDC-MTU Financial Services**



By: _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
      Cramer Owen
      Manager-Operations

**EXHIBIT J**



## AUTONOMOUS GUARANTY
### (Continuing Obligation)

1.    Identification and Relationship of Parties.  **Michael Colangelo** is an individual, with an address of 929 E. Ridgewood Avenue, Ridgewood, NJ  07450 ("Guarantor").  **Royal Tours** *130 GREEN S* **Service, Inc.** is a New York corporation, with an address of 25-18-38th Avenue, Long Island *BROOKLYN, N.* City, NY  11101 ("Lessee"). debis Financial Services, Inc. dba DDC-MTU Financial Services *11222* ("Lessor") is a corporation organized and existing under the laws of the state of Delaware in the United States of America.  Relying on the provision of this Guaranty by Guarantors, Lessor has agreed to provide certain financing to Lessee for certain equipment ("Collateral"), as more specifically set forth and described in a **Lease Agreement (Trac)**("**Agreement**") dated **March 27, 1997** executed by Lessor and Lessee ("**Agreement**").

2.    Nature of Guaranty and Guaranteed Obligations.   By execution of this Guaranty, Guarantor unconditionally and irrevocably guarantees the payment and performance of any and all obligations of Lessee to Lessor, whether currently existing or are hereafter created ("Guaranteed Obligations").  The Guaranteed Obligations specifically include, but are not limited to, any obligation of Lessee to Lessor in connection with the Collateral, whether arising under the Agreement, or otherwise.  This Guaranty is continuing in nature, and Guarantor shall remain liable on this Guaranty until such time as Guarantor notifies Lessor that this Guaranty shall no longer be considered effective; provided, however, that such notice shall not operate to relieve Guarantor of liability on this Guaranty for (a) any Guaranteed Obligations which are in existence at the time Guarantor so notifies Lessor or (b) the renewal or extension of any such Guaranteed Obligations.

Payment or other performance by Guarantor is due on this Guaranty immediately on Lessee's failure to pay or perform on any of the Guaranteed Obligations.  Payment on this Guaranty shall be made in United States currency at Lessor's principal place of business at 201 Merritt 7, Suite 700, Norwalk, Connecticut 06856-5425 or such other place of payment as Lessor may hereafter designate by notice to Guarantor.

3.    Waiver of Defenses and Limitations on Guarantor Liability.  It is Guarantor's intent and purpose that the obligations under this Guaranty shall be primary, absolute, autonomous, and unconditional under any and all circumstances.  Accordingly, Guarantor waives any and all defenses (other than payment), rights, and benefits, which Guarantor or Lessee might assert to avoid or limit liability on the Guaranteed Obligations, including the following:

a)    Invalidity, irregularity, or unenforceability of any of the Guaranteed Obligations or the documents evidencing them;

b)    Failure of Lessor to exercise any remedy it may have with respect to any collateral (including the Collateral) for any of the Guaranteed Obligations, including, but not limited to, remedies of judicial foreclosure, exercise of power of sale, or taking title in lieu of foreclosure;

c)    Settlement or compromise by Lessor of any of the Guaranteed Obligations for less then full payment or performance;

d)    Failure of Lessor to take action against Lessee or any other party who might be liable on any of the Guaranteed Obligations;

e)    Impairment of recourse against Lessee or Lessee's release on any of the Guaranteed Obligations;

f)   Retaking or exercise of any remedy against collateral for the Guaranteed Obligations, including judicial foreclosure, exercise of power of sale, or taking title in lieu of foreclosure;

g)   "One action" or "antideficiency" laws;

h)   Presentment, protest, or notice of dishonor with respect to any and all instruments evidencing any of the Guaranteed Obligations;

i)   Release or substitution of any collateral for the Guaranteed Obligations or taking additional collateral; and

j)   Notice of Lessor's acceptance of this Guaranty, of nonpayment or default by Lessee on any of the Guaranteed Obligations, of Lessee's entering into any obligations which constitute Guaranteed Obligations, and of the amount of Guaranteed Obligations existing at any time.

By this waiver, Guarantor agrees that it shall not assert any defenses (other than payment) which it or Lessee might have to the Guaranteed Obligations and shall not make any claim against Lessor, Lessee, or otherwise for any actions or failures to act with respect to which Guarantor would have had rights or benefits were it not for this waiver.  This waiver shall be absolutely enforceable even though rights which Guarantor may have against others might be diminished or destroyed.

4.     No Subrogation.  Guarantor releases any rights of subrogation, legal or equitable, which it may have against Lessee or any property, including the Collateral, taken by Lessor as collateral for any of the Guaranteed Obligations.

5.     Debt Subordination.  Any indebtedness of Lessee now or hereafter owed to Guarantor is subordinated to the Guaranteed Obligations.

6.     Notices.  To be effective, any notice given pursuant to this Guaranty shall be in writing.  It shall be deemed to have been given when sent by mail or facsimile to Lessor or Guarantor at the following address or facsimile number or such other address or number designated in writing:

debis Financial Services, Inc.
dba DDC-MTU Financial Services
201 Merritt 7, Suite 700
Norwalk, Connecticut  06856-5425
Fax:  203-847-2925

Michael Colangelo
929 E. Ridgewood Avenue,
Ridgewood, NJ  07450
Fax:

7.     Attorney Fees.  When Lessor is the prevailing party, Guarantor shall pay to Lessor all costs and expenses, including attorney fees, incurred by Lessor in connection with interpretation or enforcement of this Guaranty, whether incurred without litigation being filed, in the trial court, on appeal, or in any bankruptcy proceeding, and including costs and expenses incurred in the attachment of or execution on property of Guarantor to apply towards satisfaction of any judgment obtained by Lessor on this Guaranty.

This Guaranty is binding on the heirs, successors, and assigns of Guarantor and shall inure to the benefit of Lessor's successors and assigns.  Should any provision of this Guaranty be determined

to be illegal or unenforceable, all other provisions shall remain effective. All rights and remedies on this Guaranty are cumulative.

8.   Bankruptcy Proceedings.   The liability of Guarantor pursuant to this Guaranty shall not be affected in any way by the institution of proceedings involving Lessee under any bankruptcy or other law for the relief of debtors or by any action taken in such proceedings. If payment on the Guaranteed Obligations is made by or on behalf of Lessee and thereafter Lessor must remit the amount of that payment to a trustee or similar person under any bankruptcy law or law for the relief of debtors, that portion of the Guaranteed Obligations so remitted shall be considered unpaid for purposes of enforcement of this Guaranty.

9.   Effect and Necessity of Writing.   This writing constitutes the complete understanding of the parties with respect to the terms of this Guaranty. No parole or extrinsic evidence of any nature shall be used to supplement or modify any term. To be effective, any modification of this Guaranty must be in writing and signed by the party against whom the modification is sought to be enforced.

10.   Governing Law and Jurisdiction.   This Guaranty shall be governed by and construed in accordance with the laws of the State of Connecticut, in the United States of America, without giving effect to its provisions relating to conflicts of law. Guarantor agrees that by executing this Guaranty it is submitting to the jurisdiction of the federal or state courts in whatever state of the United States Lessor may do business or Guarantor may have assets.

11.   Miscellaneous.   Guarantor confirms that it has received adequate consideration for this Guaranty. If more than one individual or entity comprises Guarantor, each individual or entity is jointly and severally liable under this Guaranty. If an individual executes this Guaranty on behalf of an entity, that individual represents that it has authority to execute this Guaranty for that entity.

Dated as of this 27th day of March, 1997.

GUARANTOR:

By _____
      Michael Colangelo
      Individual

LESSOR:

debis Financial Services, Inc.
dba DDC-MTU Financial Services

By _____
      Cramer Owen
      Manager - Operations

**EXHIBIT K**



December 28, 1998

Royal Tours Service, Inc.          A1C  4083069-001
130 Green Street
Brooklyn, NY 11222

RE:    Assignment of Account

Gentlemen:

        Pursuant to the Lease Agreement (collectively, the "Account") dated
March 27, 1997 between you ("Debtor") and the undersigned ("debis"), the
Equipment described in the Account documents was either leased to or given as
collateral by you in relation to said Account.  Please be advised that debis
intends to assign or has assigned its entire right, title, and interest in the Account,
to General Electric Capital Corporation ("Purchaser") pursuant to the terms of a
Purchase Agreement (the "Sale and Assignment").

        By executing this letter, Debtor acknowledges, agrees and affirms (for
the benefit of Purchaser) as follows:

        1.    The Account, and all the documents associated therewith, have
been duly and validly executed and delivered by Debtor, is in full force and effect,
constitutes the valid and binding obligation of Debtor enforceable against it in
accordance with the terms (subject, however, to laws of general application
affecting creditors' rights), and constitutes the complete understanding and entire
agreement between debis and Debtor concerning the subject matter thereof.

        2.    No default by Debtor, or condition, which, with or without the
passage of time, the giving of notice or both, would constitute a default by
Debtor, exists under the Account.

        3.    The Equipment is located at the address set forth in the Account
documents.

        4.    All of the warranties and representations of Debtor contained in the
Account documents are true and correct as of the date hereof.

        5.    Upon the consummation of the Sale and Assignment, Purchaser
shall, for all purposes and without limitation, be entitled to all the rights, remedies
and privileges of

201 Merritt 7, Suite 700
P.O. Box 5025
Norwalk, CT  06856-5125
**RDB/Agr/DBISNOT:1**

Phone    (203) 847-6882
        (800) 237-9229
Fax      (203) 847-2925
Web Site  www.debis-fs-usa.com

A subsidiary of
Mercedes Benz Credit Corporation

**EXHIBIT L**



NEW YORK STATE

**CERTIFICATE OF TITLE**

Title and Identification No.
WKKC1397C1V710450068
WKKC1397C1V710450068

| Color | Wt./Sts./Lgth. | Fuel | Cyl./Prop. | Year | Make | Model Code | New or Used | Type of Title | Body/Hull | Document No. |
|---|---|---|---|---|---|---|---|---|---|---|
| WH | 36080 | DIE | 6 | 1997 | SERTA | N/A | USED | VEHICLE | BUS | 221205K |

Name and Address of Owner(s)
GENERAL ELECTRIC
CAPITAL CORP
44 OLD RIDGEBURY RD
DANBURY CT    06810

ODOMETER READING: 180784
**ACTUAL MILEAGE**

Date Issued
4/18/00

This document is your proof of ownership for this vehicle, boat or manufactured home. Keep it in a safe place, not with your license or registration or in your vehicle or boat. To dispose of your vehicle, boat or manufactured home, complete the transfer section on the back and give this title to the new owner.

Lienholder                Lienholder

Lienholder                Lienholder

DEPARTMENT OF MOTOR VEHICLES

VOID IF ALTERED

VOID IF ALTERED

MV-999(11/99)

000117



VOID IF ALTERED

CERTIFICATE OF TITLE

NEW YORK STATE

Title and Identification No.
WKK138TCXV10450567
WKK138TCXV10450567

| | Year | Make | Model Code | Body/Hull | Document No. |
|---|---|---|---|---|---|
| | 1997 | SETRA | N/A | BUS | 574556G |

Color | Wt./Sts./Lgth. | Fuel | Cyl/Prop. | New or Used | Type of Title | Date issued
WH | 36080 | DIE | 6 | USED | VEHICLE | 4/18/00

ODOMETER READING: 161397
ACTUAL MILEAGE

Name and Address of Owner(s)
GENERAL ELECTRIC
CAPITAL CORP
44 OLD RIDGEBURY RD
DANBURY CT    06810

This document is your proof of ownership for this vehicle, boat or manufactured home. Keep it in a safe place, not with your license or registration or in your vehicle or boat. To dispose of your vehicle, boat or manufactured home, complete the transfer section on the back and give this title to the new owner.

Lienholder

Lienholder

Lienholder

Lienholder

DEPARTMENT OF MOTOR VEHICLES

MV-999(11/99)

VOID IF ALTERED

000116

**EXHIBIT M**

## LEASE RENEWAL AMENDMENT (TRAC)
### 4083069-001

THIS LEASE RENEWAL AMENDMENT dated as of July 1, 2005 ("Amendment") amends Schedule No. 001 ("Schedule") to the Master Lease Agreement dated as of March 27, 1997 ("Agreement"), such Schedule and Agreement, as the same may have been heretofore amended or otherwise modified, are hereinafter collectively referred to as the ("Lease") between General Electric Capital Corporation ("Lessor") and Royal Tours Service, Inc. ("Lessee"). Capitalized terms not defined herein shall have the meanings assigned to them in the Lease.

## WITNESSETH

WHEREAS, the term of the Lease is scheduled to expire on February 9, 2005 ("Primary Term Expiration Date"); and

WHEREAS, Lessee desires to renew the Lease pursuant to the terms set forth herein; and

WHEREAS, Lessor is willing to consent to such renewal pursuant to the terms set forth herein;

NOW, THEREFORE, in consideration of the above premises and the mutual promises contained herein, as well as other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto, intending to be legally bound, agree as follows:

1.  Renewal. Commencing on July 1, 2005, the Lease shall be renewed for an additional period of Thirty-Six (36) months ("Renewal Term") on and subject to the same terms and conditions as set forth in the Lease, except as otherwise expressly provided herein:

2.  Rent.

    (a)  Commencing on July 1, 2005 and on the same day of each month thereafter throughout the Renewed Term, Lessee shall pay to Lessor Six thousand one hundred sixty-two and 08/100 Dollars ($6,162.08) as periodic rent ("Periodic Rent") plus all applicable sales, use and other taxes thereon.

    (b)  During the Renewed Term, the Stipulated Loss Value and Termination Value for any Equipment shall be equal to its Capitalized Lessors Cost (as such cost amount is specified in the Lease) multiplied by the appropriate percentage set forth in Exhibit A hereto.

    (c)  Lessee hereby represents and warrants that all of the representations and warranties included in the Lease are true and correct as of the date first above written.

3.  Terminal Rental Adjustment. The following provisions shall apply at the end of the Renewal Term:

    (a)  Definitions of Certain Terms.

        (i)  "Estimated Residual Value" means 6.61% of the Capitalized Lessor's Cost of the Equipment as set forth on the Schedule.

        (ii)  "Schedule Expiration" means the last day of the scheduled term of the Lease as to the Equipment described in the Schedule.

    (b)  Determination of Realized Value. The Realized Value for each unit of Equipment on the Schedule shall be determined as follows:

        (i)  If Lessee elects to exercise its option to purchase the Equipment, the Realized Value of each unit shall be its Fair Market Value.

    (ii)    If Lessee has not exercised its option to purchase the Equipment, Lessee shall, and Lessor may, solicit cash bids for such unit(s) on an AS IS, WHERE IS basis, provided Lessee may not bid, directly or indirectly. Such unit(s) shall be sold by Lessor to the highest bidder. In the event that a unit is not sold within thirty (30) days following Schedule Expiration, then Lessee and Lessor agree, in view of the uncertainties of market conditions and the parties' inability to predict what the actual sales price of such unit would be, that the Realized Value of such unit shall, for purposes of computing Lessee's liability as provided in paragraph (c) below, be deemed to equal zero. Upon the sale of the unit at any time after the expiration of such 30-day period, Lessor will apply the Realized Value to (i) any obligations of Lessee to Lessor not previously paid, (ii) refund to Lessee, without interest, any amount which Lessee may have previously paid to Lessor with respect to such unit as required under paragraph (c), and (iii) pay to Lessee the amount determined in accordance with paragraph (d) below.

(c)    <u>Lessee Liability</u>.    If the Realized Value of the Equipment is less than the Estimated Residual Value thereof, Lessor shall notify Lessee in writing and Lessee shall, within ten (10) days of its receipt of Lessor's written notice, pay to Lessor, as an adjustment to the rental payable under the Lease, an amount equal to the difference between the Realized Value and the Estimated Residual Value.

(d)    <u>Lessor Liability</u>.    If the Realized Value of the Equipment exceeds the Estimated Residual Value thereof, and provided that Lessee is not then in default under the Lease, Lessor shall pay to Lessee, as an adjustment to the rental payable under the Lease, an amount equal to <u>100%</u> of such excess, but only to the extent Lessor actually receives the Realized Value in cash.

4.    No Implied Changes. Except as expressly modified herein, all terms and provisions of the Lease shall remain in full force and effect.

    IN WITNESS WHEREOF, the parties hereto have caused their duly authorized representatives to execute and deliver this Amendment as of the date first above written.

LESSOR:                            LESSEE:

GENERAL ELECTRIC CAPITAL CORPORATION    ROYAL TOURS SERVICE, INC.

By: _____           By: _____

Title: _____TRAC Lease Specialist_____    Title: ____Vice - Pres____

EXHIBIT A
TO
LEASE RENEWAL AMENDMENT
DATED AS OF July 01, 2005

STIPULATED LOSS VALUE TABLES

| RENTAL PAYMENT NUMBER | S/LV PERCENTAGE * |
|---|---|
| 1 | 37.7375 |
| 2 | 36.9425 |
| 3 | 36.1457 |
| 4 | 35.3473 |
| 5 | 34.5448 |
| 6 | 33.7391 |
| 7 | 32.9300 |
| 8 | 32.1168 |
| 9 | 31.2994 |
| 10 | 30.4795 |
| 11 | 29.6569 |
| 12 | 28.8316 |
| 13 | 28.0037 |
| 14 | 27.1715 |
| 15 | 26.3366 |
| 16 | 25.4990 |
| 17 | 24.6571 |
| 18 | 23.8124 |
| 19 | 22.9649 |
| 20 | 22.1131 |
| 21 | 21.2568 |
| 22 | 20.3983 |
| 23 | 19.5376 |
| 24 | 18.6745 |
| 25 | 17.8092 |
| 26 | 16.9394 |
| 27 | 16.0672 |
| 28 | 15.1928 |
| 29 | 14.3136 |
| 30 | 13.4324 |
| 31 | 12.5487 |
| 32 | 11.6604 |
| 33 | 10.7675 |
| 34 | 9.8731 |
| 35 | 8.9773 |
| 36 | 6.6100 |

INITIALED: _____    INITIALED: _____

*The Stipulated Loss Value or Termination Value for any unit of Equipment shall be equal to its Capitalized Lessor's Cost (as such cost amount is specified in the Lease) multiplied by the appropriate percentage derived from the above tables.

**EXHIBIT N**

112470461
4100762-001


D0024GR

## Commercial Transportation Lease Agreement

This Lease Agreement (the "Agreement") effective as of March 15, 2000 is entered into by and between General Electric Capital Corporation ("Lessor"), and the undersigned ("Lessee"). If more than one party executes this Agreement as Lessee, each shall be jointly and severally liable hereunder.

1.  **LEASE; DISCLAIMER.** Lessor hereby agrees to lease to Lessee and Lessee hereby agrees to lease from Lessor certain Vehicles for use in its business. Lessee's lease of a Vehicle shall be effective on the date Lessee accepts the Vehicle for Lease hereunder. Lessor hereby assigns the manufacturer's warranty to Lessee for the Lease Term. **LESSEE AGREES THAT LESSOR IS NOT THE MANUFACTURER, DESIGNER OR DISTRIBUTOR OF, THE VEHICLES AND THAT EACH VEHICLE IS OF A DESIGN SELECTED BY LESSEE AND SUITABLE FOR ITS PURPOSES. ALL VEHICLES ARE LEASED "AS IS." LESSOR MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO ANY VEHICLE INCLUDING, BUT NOT LIMITED TO: THE MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF A VEHICLE; THE DESIGN, QUALITY OR CAPACITY OF A VEHICLE; OR COMPLIANCE OF A VEHICLE WITH APPLICABLE LAW.**

2.  **DELIVERY.** Lessee shall inspect a Vehicle at the location of delivery. Lessee's removal of a Vehicle from such location shall constitute acceptance of the Vehicle and Lessee's acknowledgment to Lessor that the Vehicle conforms to Lessee's specifications. Lessee agrees that Lessee's obligation to pay rent and other amounts with respect to such Vehicle shall be unconditional and that Lessee shall not be entitled to any reduction of, or setoff against, such amounts.

3.  **TERM OF AGREEMENT.** This Agreement shall commence on the date set forth above, and continue until canceled or terminated by either party upon 30 days' written notice to the other. Notwithstanding termination, this Agreement shall remain in effect with respect to each Vehicle then leased until all terms and conditions of this Agreement are satisfied.

4.  **LEASE TERM.** The noncancelable minimum Lease Term for each Vehicle is 367 days beginning upon the first rental payment date. Thereafter, the Lease Term may be extended provided that such extensions shall not extend the maximum Lease Term beyond the Lease Term set in Exhibit C hereto.

5.  **OPERATION.** Lessee shall operate the Vehicles solely in the United States (Lessee acknowledges that breach of such covenant could adversely affect Lessor's assumed tax benefits and thereby subject Lessee to liability therefore) and in accordance with applicable federal, state and local law governing the use, operation, maintenance or alteration of the Vehicles. Lessee agrees to repair the Vehicles and to maintain them in safe and good mechanical condition and running order. All additions to a Vehicle become the property of Lessor and shall be surrendered with the Vehicle. **NO VEHICLES MAY BE USED TO TRANSPORT HAZARDOUS SUBSTANCES.**

6.  **NET LEASE.** Lessee covenants that it will pay all costs, expenses, fees, charges, fines, interest, and taxes, including, without limitation, sales, property and use taxes, incurred in connection with the Vehicle's titling, registration, delivery, purchase, sale, rental, modification, and arising from the ownership, operation or use of the Vehicle during its Lease Term regardless of when assessed or payable. If Lessor pays any of the foregoing amounts, Lessee shall promptly reimburse Lessor and pay Lessor's then current administrative charge.

7.  **TITLE; REGISTRATION.** Lessee, at its own expense, will obtain all required registration plates, permits or licenses for the Vehicles. If Lessor pays for any of the foregoing, Lessee will promptly reimburse Lessor. Lessee agrees to properly title and register the Vehicles in Lessor's name and, if Lessee is in possession of the title, to promptly deliver the title to Lessor. Lessee will bear all costs and expenses, including Lessor's administrative fee, to correct incorrect titles.

8.  **RENTAL CHARGES.** Lessee will pay rental for the Vehicles in accordance with the relevant Exhibits, as well as all other rental charges provided for in this Agreement. Notwithstanding any provisions hereof to the contrary, the failure of Lessee to receive an invoice for such payments or to receive invoices on a timely basis shall not excuse or otherwise modify payment terms provided for herein or in Exhibits hereto and Exhibit T.
    Lessee acknowledges that the periodic rental charges are based on a presumed after-tax return to Lessor. If any changes in federal or state tax laws or regulations (including a change in corporate income tax rate) cause Lessor's after-tax return to be reduced or impact the ability of Lessor to realize the full tax benefits contemplated herein, Lessor may, in compensation, prospectively adjust the periodic rental charges.

9.  **PAYMENT TERMS.** Time is of the essence. If rent is not paid within ten (10) days of its due date, Lessee agrees to pay a late charge of five cents ($.05) per dollar on, and in addition to, the amount of such rent but not exceeding the lawful maximum, if any. It is the intent of Lessor that if not receive directly or indirectly any amount in excess of that amount which may be legally paid. Any excess charges will be credited to Lessee, or, upon request of Lessee, refunded. All charges are based upon Lessor's standard operating routines, existing business policy and computer systems capabilities.

10. **SURRENDER OF VEHICLES.** At the end of the minimum Lease Term, Lessee may, and at the end of the Lease Term, Lessee shall, upon reasonable written notice to Lessor, either purchase the Vehicle for its then fair market value or return the Vehicle to Lessor by delivering the Vehicle to Lessor at a mutually agreed location. Upon surrender or, if not surrendered, at final disposition, the Vehicle shall be in good, safe and lawful operating condition. Surrender of the Vehicle shall not be effective until Lessor has actual physical possession of the Vehicle and has received all license plates, registration certificates, documents of title, odometer and damage disclosures and other documentation necessary for the sale of the Vehicle. If, upon Lessee request, Lessor accepts an offer to purchase a Vehicle from Lessee or a purchaser identified by Lessee and Lessor does not take actual physical possession of the Vehicle, neither surrender nor sale shall be deemed to occur until Lessor delivers the certificate of title and receives payment. Any personal property in a Vehicle upon surrender shall be deemed abandoned and may be disposed of by Lessor without liability.

11. **SALE OF VEHICLES.** In the event Lessee elects not to exercise its purchase option, Lessor shall, and Lessee may, solicit from prospective purchasers wholesale cash bids for Vehicles. Such Vehicles shall be sold in a commercially reasonable manner. From the sales proceeds of a sale to Lessee or any other party, Lessor shall deduct all unamortized acquisition fees, sales expenses paid or incurred by Lessor in undertaking such sale and any late fees, taxes or other amounts due with respect to the Vehicles, regardless of when assessed or payable, the balance remaining to constitute the Net Proceeds which shall be payable to Lessor. If Lessor sells any vehicle owned by Lessee or a third party, Lessee agrees that the sale of such vehicle shall be subject to the indemnity herein and to pay Lessor's then current sale fee.

12. **TERMINAL RENTAL VALUE.** As an incentive to the Lessee to maintain the value of the Vehicle by good maintenance, repair and careful use during its Lease Term, the parties agree that the enhancement or reduction in value shall be compensated as follows:

a. **Refund of Rental.** If the Net Proceeds from the sale to either Lessee or a third party exceed the Terminal Rental Value (as defined in Exhibit T), Lessor shall retain an amount equal to the Terminal Rental Value, and remit the excess to Lessee as a refund of rental.

b. **Rental Charge.** If the Net Proceeds from the sale to either Lessee or a third party are less than the Terminal Rental Value, Lessee shall pay Lessor at the time of the sale the amount of the difference between the Net Proceeds and the Terminal Rental Value.

**13. INSURANCE.** Before delivery of any Vehicle, Lessee shall purchase from a responsible insurance company acceptable to Lessor and Lessee shall maintain, during the Lease Term of each Vehicle, the following coverages and deliver to Lessor a certificate thereof:

a. **Liability** insurance naming Lessor as an Additional Insured with limits of coverage as Lessor may require, but in no event less than $1 million combined single limit per occurrence ($5 million for Vehicles capable of transporting 9 or more passengers). No self-insured retention or deductible is permissible unless approved in writing by Lessor.

b. **Comprehensive and collision** insurance naming Lessor as Loss Payee with coverage for the actual cash value of each Vehicle and subject to a deductible no greater than the following amounts unless approved by Lessor: $5,000 for intercity coaches; $2,500 for school buses, shuttle buses and vans and ambulances; $1,000 for medium and heavy duty trucks and trailers, tool trucks, tow trucks and tire service trucks. Lessee shall also obtain no-fault insurance complying with applicable legal requirements. Lessee shall bear all risk of loss, damage or destruction to the Vehicle (which may exceed actual cash value), however caused, from the time of acceptance until surrender to Lessor.

c. **Conditions.** All insurance policies shall provide for 30 days' prior written notice to Lessor of any cancellation or reduction in coverage. Lessor has no obligation to examine insurance certificates or to advise Lessee if its insurance is not in compliance with this Agreement. Lessee authorizes Lessor to endorse Lessee's name to insurance checks related to the Vehicles and to take any actions to pursue insurance claims and recover payments if Lessee fails to do so.

d. **Casualty.** In the event for any reason a Vehicle becomes worn out, lost, stolen, destroyed or unusable (herein, each, a "Loss"), on the rental payment date next succeeding the occurrence of such Loss, Lessee shall pay to Lessor the sum of (x) the Stipulated Loss Value (as defined in Exhibit S) of the affected Vehicle (determined as of the rental payment date immediately preceding the date of such Loss), and (y) all rent and other amounts which are then due under this Agreement. Upon payment of all such sums, the term of this Lease as to such affected Vehicle shall terminate. So long as no event of default shall have occurred and be continuing, any insurance proceeds attributable to such Vehicle shall be payable to reimburse Lessee for the payments required hereunder up to the amount of the Stipulated Loss Value. Lessee understands that such Stipulated Loss Value may exceed the actual cash value of the Vehicle as determined by the insurer of the Vehicle and that Lessee remains required to pay the entire amount due hereunder. Lessee may, provided it is not in default under this Agreement, and in lieu of the payment requirement in this subsection, exercise its option to purchase the Vehicle(s) suffering a Loss for an amount equal to the higher of the then fair market value and the Terminal Rental Value determined pursuant to Exhibit T.

**14. INDEMNITY.** LESSEE WILL INDEMNIFY AND DEFEND LESSOR (INCLUDING ANY OF ITS AFFILIATES) AGAINST ANY LOSS, LIABILITY OR CLAIM DIRECTLY OR INDIRECTLY RELATING TO THE OWNERSHIP, LEASE, MAINTENANCE, USE, CONDITION (INCLUDING BUT NOT LIMITED TO, PATENT AND LATENT DEFECTS WHETHER OR NOT DISCOVERABLE, PRODUCT LIABILITY CLAIMS OR THE CONDITION OF THE VEHICLE AT SURRENDER) OR SURRENDER OF ANY VEHICLE BETWEEN THE TIME OF DELIVERY TO LESSEE AND THE TIME OF SURRENDER. IF LESSOR SELLS ANY VEHICLE TO LESSEE, ANY OF ITS EMPLOYEES OR A PURCHASER FROM WHOM LESSEE OBTAINS AN OFFER, LESSEE'S COVENANTS OF INDEMNITY WITH RESPECT TO SUCH VEHICLE SHALL CONTINUE. THIS INDEMNITY IS ABSOLUTE AND UNCONDITIONAL AND INCLUDES CLAIMS OF NEGLIGENCE, STRICT LIABILITY, ENVIRONMENTAL LIABILITY AND BREACH OF WARRANTY, BUT DOES NOT EXTEND TO CLAIMS OR LIABILITY ARISING FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF LESSOR, ITS AGENTS OR EMPLOYEES. THIS INDEMNITY SHALL SURVIVE THE TERMINATION OF THIS AGREEMENT.

**15. NATURE OF AGREEMENT.** THE PARTIES INTEND ALL LEASES OF VEHICLES HEREUNDER TO BE TRUE LEASES. Lessee has no right, title or interest in and to any Vehicle leased hereunder except as lessee, and Lessee has no option to purchase any Vehicle for any amount less than its fair market value. Lessor has the right to mark the Vehicle at any time stating its interest as owner and to receive and retain compensation related to the Vehicles from manufacturers, suppliers and vendors. Without prejudice to the intention of the parties that this Agreement be a true lease, Lessee hereby grants Lessor a security interest in the Vehicles, all vehicles and other equipment and property subject to other leases or loans with Lessor, and all proceeds, accessions, documents, instruments, accounts, chattel paper, equipment and general intangibles related thereto to secure all of Lessee's obligations under this or any other agreement with Lessor. Lessee hereby grants Lessor its power of attorney to act for and on behalf of Lessee in all matters pertaining to the titling and registration of Vehicles and the filing, recording or perfecting of Lessor's interest and title in the Vehicles, including execution of Uniform Commercial Code financing statements, and agrees to execute such other documents as may be necessary to effect or evidence such grant. A photocopy or other reproduction of this Agreement shall be sufficient as a financing statement.

**16. FINANCIAL STATEMENTS; INSPECTIONS.** The creditworthiness of Lessee and any guarantor is a material condition to this Agreement. Lessee shall provide Lessor with financial information reasonably requested by and satisfactory to Lessor each year of this Agreement. Nothing herein shall be construed to require Lessor to lease any vehicle. Lessor may inspect the Vehicles and related records at any time upon reasonable notice.

**17. DEFAULT; REMEDIES.** If Lessee shall fail to make the payments, maintain insurance coverage or title any Vehicle properly and in a timely manner, all as herein required or after 10 days' written notice shall fail to perform any of its other covenants under this Agreement, or Lessee or any guarantor shall (i) make an assignment for the benefit of creditors, or suffer a receiver or trustee to be appointed, or file or suffer to be filed any petition under any bankruptcy or insolvency law of any jurisdiction; or (ii) discontinue business; or (iii) dissolve, terminate, cease its corporate or partnership existence or die; or (iv) be in default under any other agreement it may have with Lessor or any parent, subsidiary or affiliate of Lessor; or (v) suffer a material adverse change in operating or financial condition which impairs Lessee's ability to perform its obligations hereunder or Lessor's title to or rights in the Vehicles; or (vi) make any representation or warranty herein, or in any document delivered to Lessor in connection herewith, which shall prove to be false or misleading in any material respect; or (vii) merge, consolidate, or undergo a change in controlling ownership; or (viii) be in default under any other agreement it may have with Lessor or any parent, subsidiary or affiliate or Lessor, then in such event Lessee shall be in default under this Agreement. A default under the terms of this Agreement shall constitute a default under any other agreement Lessee has with Lessor, or any parent, subsidiary or affiliate of Lessor. Lessor shall have the right to offset any amounts due to Lessee against amounts due to Lessor and all rights and remedies available at law or in equity including, without limitation, the right to repossess any and all Vehicles leased hereunder (and for that purpose, Lessor or its agents may enter upon any premises owned by or under the control of Lessee or any of its employees or affiliates). Notwithstanding repossession and sale of any Vehicle, Lessor may recover from Lessee all damages sustained as

MAR 15 2000 17:26 FR GE CAPITAL-CT    612 833 5774 TO 917163499588    P.05

a result of Lessee's default, and is not accountable to Lessee for any proceeds of any such sale. Such damages shall include but not be limited to: the full amount of rentals then due and unpaid, the Stipulated Loss Value of the Vehicles calculated pursuant to Exhibit S as of the rental payment date immediately preceding the default, and all other amounts of any nature due under this Agreement including, without limitation any amounts due as terminal rental adjustments, together with all costs of collection and repossession including attorneys' fees and collection fees. All of Lessor's rights and remedies shall be cumulative and not exclusive.

**18. NO CONSEQUENTIAL DAMAGES.** In no event shall Lessor be liable for any loss of profits, other consequential damages or inconvenience resulting from any delay in delivery, theft, damage to, loss of, defect in or failure of any Vehicle, or the time consumed in recovering, repairing, adjusting, servicing, or replacing same and there shall be no abatement or apportionment of rental during such time. EXCEPT WITH RESPECT TO LESSEE'S OBLIGATIONS OF INDEMNITY HEREUNDER, EACH PARTY AGREES THAT: ITS SOLE AND EXCLUSIVE REMEDY FOR ANY MATTER OR CAUSE OF ACTION RELATED DIRECTLY OR INDIRECTLY TO ANY BREACH BY THE OTHER PARTY OF THIS AGREEMENT SHALL BE A CONTRACT ACTION; DAMAGES SHALL BE LIMITED TO ACTUAL AND DIRECT DAMAGES INCURRED; AND NO INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES WILL BE CLAIMED.

**19. ASSIGNMENTS.** LESSEE SHALL NOT ASSIGN, SUBLET, LIEN, ENCUMBER, OR TRANSFER ANY INTEREST IN ANY OF THE VEHICLES LEASED HEREUNDER OR ANY INTEREST IN THIS AGREEMENT TO ANY PARTY WITHOUT THE WRITTEN CONSENT OF LESSOR. ANY SUCH CONSENT BY LESSOR SHALL NOT RELIEVE LESSEE OF ITS OBLIGATIONS AND LIABILITIES. Lessor may assign all or any part of its right, title and interest in this Agreement or the Vehicles, including all receivables.

**20. RELATED ENTITIES.** Any Vehicles leased or operated by present or future subsidiaries, parents or affiliates of Lessee shall be within the terms and conditions of this Agreement, unless covered by a separate agreement with such subsidiary, parent or affiliate, and Lessee agrees that, in the event such subsidiary, parent or affiliate does not perform according to the terms and conditions of this Agreement, Lessee guarantees such performance.

**21. WAIVER OF JURY TRIAL.** BOTH PARTIES TO THIS AGREEMENT HEREBY WAIVE ANY AND ALL RIGHT TO ANY TRIAL BY JURY IN ANY ACTION OR PROCEEDINGS DIRECTLY OR INDIRECTLY HEREUNDER.

**22. GOVERNING LAW.** THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL IN ALL RESPECTS BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF CONNECTICUT (WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES OF SUCH STATE), INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, REGARDLESS OF THE LOCATION OF THE VEHICLES. THE PARTIES FURTHER AGREE THAT ALL ACTIONS OR PROCEEDINGS ARISING, DIRECTLY OR INDIRECTLY, FROM THIS AGREEMENT, SHALL BE LITIGATED, AT THE OPTION OF LESSOR, IN COURTS HAVING SITUS WITHIN THE STATE OF CONNECTICUT, AND LESSEE HEREBY CONSENTS TO THE PERSONAL JURISDICTION OVER LESSEE BY ANY LOCAL, STATE OR FEDERAL COURT SELECTED BY LESSOR THAT IS LOCATED WITHIN THE STATE OF CONNECTICUT. LESSEE WAIVES ANY OBJECTION TO VENUE IN ANY SUCH ACTION AND AGREES NOT TO DISTURB SUCH CHOICE OF FORUM BY LESSOR. LESSEE HEREBY CONSENTS TO SERVICE OF PROCESS BY MAIL AND THAT SUCH SERVICE BY MAILING SHALL CONSTITUTE DUE AND PERSONAL SERVICE UPON LESSEE.

**23. ODOMETER DISCLOSURE STATEMENT.** Federal law (and State law, if applicable) requires that Lessee as lessee disclose, and Lessee shall disclose, the mileage of each Vehicle to Lessor in connection with the transfer of ownership of the Vehicle. Failure to complete an odometer disclosure statement or making a false statement may result in fines and/or imprisonment. LESSEE AGREES TO PAY AN ADMINISTRATIVE FEE IF LESSEE FAILS TO PROVIDE A REQUIRED ODOMETER OR DAMAGE DISCLOSURE STATEMENT AT TIME OF SURRENDER.

**24. MODIFICATIONS.** This Agreement, its Exhibits, Schedules and amendments contain the entire understanding of the parties and merge all oral understandings. Purchase orders relating to Vehicles may be issued by Lessee for administrative convenience, but are subject to the terms and conditions of this Agreement and shall not amend or supplement it. ANY MODIFICATIONS, CHANGES, OR AMENDMENTS MAY BE MADE ONLY IN A WRITING DULY SIGNED BY LESSEE AND LESSOR. FAILURE OF EITHER PARTY TO ENFORCE ANY RIGHT GRANTED HEREIN SHALL NOT BE DEEMED A WAIVER OF SUCH RIGHT.

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be signed by duly authorized representatives.

LESSOR:
General Electric Capital Corporation

By: _____

Title: _____

Address: 11010 Prairie Lakes Drive, Eden Prairie, MN 55344

LESSEE:
Rurak Ocean Tours, Inc.

By: X_____
Hiroaki Onuki

Title: President _____

Address: 319 Eckford Street, Brooklyn, NY 11222

**EXHIBIT O**

MAR 15 2000 17:29 FR GE CAPITAL-CT        612 833 5774 TO 917183499588        P.12

(6/91R020199)    *11247046/*
*4100702-CL.I*



D0024GT

# INDIVIDUAL GUARANTY

Date: X 3/16/2000        .

General Electric Capital Corporation
11010 Prairie Lakes Drive Suite 150
Eden Prairie, MN 55344

To induce you to enter into, purchase or otherwise acquire, now or at any time hereafter, any promissory notes, security agreements, chattel mortgages, pledge agreements, conditional sale contracts, lease agreements, and/or any other documents or instruments evidencing, or relating to, any lease, loan, extension of credit or other financial accommodation (collectively "Account Documents" and each an "Account Document") to Rurak Ocean Tours, Inc., a corporation organized and existing under the laws of the State of New York ("Customer"), but without in any way binding you to do so, the undersigned, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, does hereby guarantee to you, your successors and assigns, the due regular and punctual payment of any sum or sums of money which the Customer may owe to you now or at any time hereafter, whether evidenced by an Account Document, on open account or otherwise, and whether it represents principal, interest, rent, late charges, indemnities, an original balance, an accelerated balance, liquidated damages, a balance reduced by partial payment, a deficiency after sale or other disposition of any leased equipment, collateral or security, or any other type of sum of any kind whatsoever that the Customer may owe to you now or at any time hereafter, and does hereby further guarantee to you, your successors and assigns, the due, regular and punctual performance of any other duty or obligation of any kind or character whatsoever that the Customer may owe to you now or at any time hereafter (all such payment and performance obligations being collectively referred to as "Obligations"). Undersigned does hereby further guarantee to pay upon demand all losses, costs, attorneys' fees and expenses which may be suffered by you by reason of Customer's default or default of the undersigned.

This Guaranty is a guaranty of prompt payment and performance (and not merely a guaranty of collection). Nothing herein shall require you to first seek or exhaust any remedy against the Customer, its successors and assigns, or any other person obligated with respect to the Obligations, or to first foreclose, exhaust or otherwise proceed against any leased equipment, collateral or security which may be given in connection with the Obligations. It is agreed that you may, upon any breach or default of the Customer, or at any time thereafter, make demand upon the undersigned and receive payment and performance of the Obligations, with or without notice or demand for payment or performance by the Customer, its successors or assigns, or any other person. Suit may be brought and maintained against the undersigned, at your election, without joinder of the Customer or any other person as parties thereto. The obligations of each signatory to this Guaranty shall be joint and several.

The undersigned agrees that its obligations under this Guaranty shall be primary, absolute, continuing and unconditional, irrespective of and unaffected by any of the following actions or circumstances (regardless of any notice to or consent of the undersigned): (a) the genuineness, validity, regularity and enforceability of the Account Documents or any other document; (b) any extension, renewal, amendment, change, waiver or other modification of the Account Documents or any other document; (c) the absence of, or delay in, any action to enforce the Account Documents, this Guaranty or any other document; (d) your failure or delay in obtaining any other guaranty of the Obligations (including, without limitation, your failure to obtain the signature of any other guarantor hereunder); (e) the release of, extension of time for payment or performance by, or any other indulgence granted to the Customer or any other person with respect to the Obligations by operation of law or otherwise; (f) the existence, value, condition, loss, subordination or release (with or without substitution) of, or failure to have title to or perfect and maintain a security interest in, or the time, place and manner of any sale or other disposition of any leased equipment, collateral or security given in connection with the Obligations, or any other impairment (whether intentional or negligent, by operation of law or otherwise) of the rights of the undersigned; (g) the Customer's voluntary or involuntary bankruptcy, assignment for the benefit of creditors, reorganization, or similar proceedings affecting the Customer or any of its assets; or (h) any other action or circumstances which might otherwise constitute a legal or equitable discharge or defense of a surety or guarantor.

This Guaranty, the Account Documents and the Obligations may be assigned by you, without the consent of the Undersigned. The Undersigned agrees that if it receives written notice of an assignment from you, the Undersigned will pay all amounts due hereunder to such assignee or as instructed by you. The Undersigned also agrees to confirm in writing receipt of the notice of assignment as may be reasonably requested by assignee. The Undersigned hereby waives and agrees not to assert against any such assignee any of the defenses set forth in the immediate preceding paragraph.

This Guaranty may be terminated upon delivery to you (at your address shown above) of a written termination notice from the undersigned. However, as to all Obligations (whether matured, unmatured, absolute, contingent or otherwise) incurred by the Customer prior to your receipt of such written termination notice (and regardless of any subsequent amendment, extension or other modification which may be made with respect to such Obligations), this Guaranty shall nevertheless continue and remain undischarged until all such Obligations are indefeasibly paid and performed in full.

The undersigned agrees that this Guaranty shall remain in full force and effect or be reinstated (as the case may be) if at any time payment or performance of any of the Obligations (or any part thereof) is rescinded, reduced or must otherwise be restored or returned by you, all as though such payment or performance had not been made. If, by reason of any bankruptcy, insolvency or similar laws affecting the rights of creditors, you shall be prohibited from exercising any of your rights or remedies against the Customer or any other person or against any property, then, as between you and the undersigned, such prohibition shall be of no force and effect, and you shall have the right to make demand upon, and receive payment from, the undersigned of all amounts and other sums that would be due to you upon a default with respect to the Obligations.

Notice of acceptance of this Guaranty and of any default by the Customer or any other person is hereby waived. Presentment, protest demand, and notice of protest, demand and dishonor of any of the Obligations, and the exercise of possessory, collection or other remedies for the Obligations, are hereby waived. The undersigned warrants that it has adequate means to obtain from the Customer on a continuing basis financial data and other information regarding the Customer and is not relying upon you to provide any such data or other information. Without limiting the foregoing, notice of adverse change in the Customer's financial condition or of any other fact which might materially increase the risk of the undersigned is also waived. All settlements,

compromises, accounts stated and agreed balances made in good faith between the Customer, its successors or assigns, and you shall be binding upon and shall not affect the liability of the undersigned.

Payment of all amounts now or hereafter owed to the undersigned by the Customer or any other obligor for any of the Obligations is hereby subordinated in right of payment to the indefeasible payment in full to you of all Obligations and is hereby assigned to you as a security therefor. The undersigned hereby irrevocably and unconditionally waives and relinquishes all statutory, contractual, common law, equitable and all other claims against the Customer, any other obligor for any of the Obligations, any collateral therefor, or any other assets of the Customer or any such other obligor, for subrogation, reimbursement, exoneration, contribution, indemnification, setoff or other recourse in respect of sums paid or payable to you by the undersigned hereunder, and the undersigned hereby further irrevocably and unconditionally waives and relinquishes any and all other benefits which it might otherwise directly or indirectly receive or be entitled to receive by reason of any amounts paid by, or collected or due from, it, the Customer or any other obligor for any of the Obligations, or realized from any of their respective assets.

THE UNDERSIGNED HEREBY UNCONDITIONALLY WAIVES ITS RIGHT TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS BETWEEN US RELATING TO THE SUBJECT MATTER HEREOF OR THEREOF, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN US. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). THIS WAIVER IS IRREVOCABLE MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, OR ANY RELATED DOCUMENTS. IN THE EVENT OF LITIGATION, THIS GUARANTY MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

As used in this Guaranty, the word "person" shall include any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization, or any government or any political subdivision thereof.

This Guaranty is intended by the parties as a final expression of the guaranty of the undersigned and is also intended as a complete and exclusive statement of the terms thereof. No course of dealing, course of performance or trade usage, nor any paid evidence of any kind, shall be used to supplement or modify any of the terms hereof. Nor are there any conditions to the full effectiveness of this Guaranty. This Guaranty and each of its provisions may only be waived, modified, varied, released, terminated or surrendered, in whole or in part, by a duly authorized written instrument signed by you. No failure by you to exercise your rights hereunder shall give rise to any estoppel against you, or excuse the undersigned from performing hereunder. Your waiver of any right to demand performance hereunder shall not be a waiver of any subsequent or other right to demand performance hereunder.

This Guaranty shall not be discharged or affected by the death of any of the undersigned, but shall bind their respective heirs, executors, administrators, and assigns, and the benefits thereof shall extend to and include your successors and assigns. In the event of default hereunder, you may at any time inspect undersigned's records, or at your option, undersigned shall furnish you with a current independent audit report.

If any provisions of this Guaranty are in conflict with any applicable statute, rule or law, then such provisions shall be deemed null and void to the extent that they may conflict therewith, but without invalidating any other provisions hereof.

THIS GUARANTY IS BEING EXECUTED BY THE UNDERSIGNED INDIVIDUALS IN THEIR OWN CAPACITY AND NOT AS A DIRECTOR, OFFICER, EMPLOYEE, OR REPRESENTATIVE FOR ANY CORPORATION OR OTHER ORGANIZATION.

**WITNESS** our hands on the day and year above written.

Signed in the presence of:

X _____

X _____

Print Name:    Hiroaki Onuki
Address:    X 130 Gran
            X Brooklyn, NY 11222
Telephone No.:    X 718-349-9866
Social Security No.X 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

(Sign and print your name only. DO NOT add any title or corporate office.)

**EXHIBIT P**

CT(FRMB/CF) 4172047001



## PROMISSORY NOTE

12-20-05

Date - To be completed by "GECC" personnel

130 Green Street, Brooklyn, Kings County, NY 11222

(Address of Maker)

FOR VALUE RECEIVED, Burak Ocean Tours, Inc. ("Maker") promises, jointly and severally if more than one, to pay to the order of General Electric Capital Corporation or any subsequent holder hereof (each, a "Payee") at its office located at 11010 Prairie Lakes Drive Suite 150, Eden Prairie, MN 55344 or at such other place as Payee or the holder hereof may designate, the principal sum of Four Hundred Forty-Three Thousand, Nine Hundred Eighty-Five and 57/100 Dollars ($443,985.57), with interest on the unpaid principal balance, from and including the date hereof until paid, at a fixed interest rate of Eight and One-Half percent (8.50%) per annum, to be paid in lawful money of the United States, in consecutive monthly installments of principal and interest as follows:

| Periodic Installment | Amount |
| --- | --- |
| 1-65 | $8,446.94 |

(each "Periodic Installment"), and a final Sixty-Sixth (66th) installment which shall be in the amount of Eight Thousand, Four Hundred Forty-Six and 94/100 Dollars ($8,446.94), plus any other outstanding principal, interest and any other amounts owed The first Periodic Installment shall be due and payable on February 1, 2006 and the following Periodic Installments and the final installment shall be due and payable on the same day of each succeeding month (each, a "Payment Date"). Such Installments have been calculated on the basis of a 360 day year of twelve 30-day months. Each payment may, at the option of the Payee, be calculated and applied on an assumption that each payment would be made on its due date.

The acceptance by Payee of any payment which is less than payment in full of all amounts due and owing at such time shall not constitute a waiver of Payee's right to receive payment in full at such time or at any prior or subsequent time.

The Maker hereby expressly authorizes the Payee to insert the funding date in the blank space on the face hereof and on all related documents pertaining hereto.

This Note may be secured by a security agreement, chattel mortgage, pledge agreement or like instrument each of which is hereinafter called a "Security Agreement."

Time is of the essence hereof. If any installment or any other sum due under this Note or any Security Agreement is not received within ten (10) days after its due date, the Maker agrees to pay, in addition to the amount of such installment or other sum, a late payment charge of five percent (5%) of the amount of said installment or other sum, but not exceeding any lawful maximum. If (i) Maker fails to make payment of any amount due hereunder within ten (10) days after the same become due and payable; or (ii) Maker is in default under, or fails to perform under any term or condition contained in any Security Agreement, then the entire principal sum remaining unpaid, together with all accrued interest thereon and any other sum payable under this Note or any Security Agreement, at the election of Payee, shall immediately become due and payable, with interest thereon at the lesser of eighteen percent (18%) per annum or the highest rate not prohibited by applicable law from the date of such accelerated maturity until paid (both before and after any judgment).

The Maker may prepay in full, but not in part, its entire indebtedness hereunder upon payment of the entire indebtedness. It is the intention of the parties hereto to comply with the applicable usury laws; accordingly, it is agreed that, notwithstanding any provision to the contrary in this Note or any Security Agreement, in no event shall this Note or any Security Agreement require the payment or permit the collection of interest in excess of the maximum amount permitted by applicable law. If any such excess interest is contracted for, charged or received under or pursuant to this Note or any Security Agreement, or if all of the principal balance shall be prepaid, so that under any of such circumstances the amount of interest contracted for, charged or received under this Note or any Security Agreement on the principal balance shall exceed the maximum amount of interest permitted by applicable law, then in such event (a) the provisions of this paragraph shall govern and control, (b) neither Maker nor any other person or entity now or hereafter liable for the payment hereof shall be obligated to pay the amount of such interest to the extent that it is in excess of the maximum amount of interest permitted by applicable law, (c) any such excess which may have been collected be either applied as a credit against the then unpaid principal balance or refunded to Maker, at the option of the Payee, and (d) the effective rate of interest shall be automatically reduced to the maximum lawful contract rate allowed under applicable law as now or hereafter construed by the courts having jurisdiction thereof. It is further agreed that without limitation of the foregoing, all calculations of the rate of interest contracted for, charged or received under this Note or any Security Agreement which are made for the purpose of determining whether such rate exceeds the maximum lawful contract rate, shall be made, to the extent permitted by applicable law, by amortizing, prorating, allocating and spreading in equal parts during the period of the full stated term of the indebtedness evidenced hereby, all interest at any time contracted for, charged or received from Maker or otherwise by Payee in connection with such indebtedness; provided, however, that if any applicable state law is amended or the law of the United States of America preempts any applicable state law, so that it becomes lawful for the Payee to receive a greater interest per annum rate than is presently allowed, the Maker agrees that, on the effective date of such amendment or preemption, as the case may be, the lawful maximum hereunder shall be increased to the maximum interest per annum rate allowed by the amended state law or the law of the United States of America.

The Maker and all sureties, endorsers, guarantors or any others (each such person, other than the Maker, an "Obligor") who may at any time become liable for the payment hereof jointly and severally consent hereby to any and all extensions of time, renewals, waivers or modifications of, and all substitutions or releases of, security or of any party primarily or secondarily liable on this Note or any Security Agreement or any term and provision of either, which may be made, granted or consented to by Payee, and agree that suit may be brought and maintained against any one or more of them, at the election of Payee without joinder of any other as a party thereto, and that Payee shall not be required first to foreclose, proceed against or exhaust any security hereof in order to enforce payment of this Note. The Maker and each Obligor hereby waives presentment, demand for payment, notice of nonpayment, protest, notice of protest, notice of dishonor, and all other notices in connection herewith, as well as filing of suit (if permitted by law) and diligence in collecting this Note or enforcing any of the security hereof, and agrees to pay (if permitted by law) all expenses incurred in collection, including Payee's actual attorneys' fees. Maker and each Obligor agrees that fees not in excess of twenty percent (20%) of the amount then due shall be deemed reasonable.

THE MAKER HEREBY UNCONDITIONALLY WAIVES ITS RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS NOTE, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS BETWEEN MAKER AND PAYEE RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN MAKER AND PAYEE. THE SCOPE OF THIS WAIVER IS

INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS.) THIS WAIVER IS IRREVOCABLE MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS NOTE, ANY RELATED DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION. IN THE EVENT OF LITIGATION, THIS NOTE MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

This Note and any Security Agreement constitute the entire agreement of the Maker and Payee with respect to the subject matter hereof and supercedes all prior understandings, agreements and representations, express or implied.

No variation or modification of this Note, or any waiver of any of its provisions or conditions, shall be valid unless in writing and signed by an authorized representative of Maker and Payee. Any such waiver, consent, modification or change shall be effective only in the specific instance and for the specific purpose given.

Any provision in this Note or any Security Agreement which is in conflict with any statute, law or applicable rule shall be deemed omitted, modified or altered to conform thereto.

Rurak Ocean Tours, Inc.

By: X _____ (L.S.)
    (Signature)

(Witness) _____

                          Michael Colangelo, President
(Print name) _____   Print name (and title, if applicable)

                          112470461
(Address) _____   (Federal tax identification number)

**EXHIBIT Q**

6079 (3/98R011304) 112470461

## MASTER SECURITY AGREEMENT



**THIS MASTER SECURITY AGREEMENT,** made as of December 30, 2005 ("Agreement"), by and between General Electric Capital Corporation, a Delaware corporation with an address at 11000 Prairie Lakes Drive, Suite 150, Eden Prairie, MN 55344 ("Secured Party"), and Rurak Ocean Tours, Inc., a corporation organized and existing under the laws of the state of New York with its chief executive offices located at 130 Green Street, Brooklyn, NY 11222 ("Debtor").

In consideration of the promises herein contained and of certain other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Debtor and Secured Party hereby agree as follows:

### 1.    CREATION OF SECURITY INTEREST.

Debtor hereby gives, grants and assigns to Secured Party, its successors and assigns forever, a security interest in and against any and all property listed on any collateral schedule now or hereafter annexed hereto or made a part hereof ("Collateral Schedule"), and in and against any and all additions, attachments, accessories and accessions thereto, any and all substitutions, replacements or exchanges therefor, and any and all insurance and/or other proceeds thereof (all of the foregoing being hereinafter individually and collectively referred to as the "Collateral"). The foregoing security interest is given to secure the payment and performance of any and all debts, obligations and liabilities of any kind, nature or description whatsoever (whether primary, secondary, direct, contingent, sole, joint or several, or otherwise, and whether due or to become due) of Debtor to Secured Party, now existing or hereafter arising, including but not limited to the payment and performance of certain Promissory Notes from time to time identified on any Collateral Schedule (collectively "Notes" and each a "Note"), and any renewals, extensions and modifications of such debts, obligations and liabilities (all of the foregoing being hereinafter referred to as the "Indebtedness"). Further, Debtor grants Secured Party a security interest in the collateral, all vehicles and all proceeds thereof at the location set forth in such leases or loans with Secured Party, and all proceeds, accessions, documents, instruments, accounts, chattel paper, equipment and general intangibles related thereto to secure all of Debtor's obligations under the Notes and this and any other agreement. Unless otherwise provided by applicable law, notwithstanding the foregoing, and notwithstanding anything to the contrary contained elsewhere in this Agreement, to the extent that Secured Party asserts a purchase money security interest in any items of Collateral ("PMSI Collateral"): (i) the PMSI Collateral shall only secure that portion of the Indebtedness which has been advanced by Secured Party to enable Debtor to purchase, or acquire rights in or the use of such PMSI Collateral (the "PMSI Indebtedness"), and (ii) no other Collateral shall secure the PMSI Indebtedness.

### 2.    REPRESENTATIONS, WARRANTIES AND COVENANTS OF DEBTOR.

Debtor hereby represents, warrants and covenants as of the date hereof and as of the date of executing of each Collateral Schedule hereto that:

(a)    Debtor's exact legal name is as set forth in the preamble of this Agreement and Debtor is, and will remain, duly organized, existing and in good standing under the laws of the State set forth in the first paragraph of this Agreement, has its chief executive offices at the location set forth in such paragraph, and is, and will remain, duly qualified and licensed in every jurisdiction wherever necessary to carry on its business and operations;

(b)    Debtor has adequate power and capacity to enter into, and to perform its obligations, under the Agreement, each Note and any other documents evidencing, or given in connection with, any of the Indebtedness (all of the foregoing being hereinafter referred to as the "Debt Documents");

(c)    This Agreement and the other Debt Documents have been duly authorized, executed and delivered by Debtor and constitute legal, valid and binding agreements enforceable under all applicable laws in accordance with their terms, except to the extent that the enforcement of remedies may be limited under applicable bankruptcy and insolvency laws;

(d)    No approval, consent or withholding of objections is required from any governmental authority or instrumentality with respect to the entry into, or performance by, Debtor of any of the Debt Documents, except such as may have already been obtained;

(e)    The entry into, and performance by, Debtor of the Debt Documents will not (i) violate any of the organizational documents of Debtor or any judgment, order, law or regulation applicable to Debtor, or (ii) result in any breach of, constitute a default under, or result in the creation of any lien, claim or encumbrance on any of Debtor's property (except for liens in favor of Secured Party) pursuant to, any indenture, mortgage, deed of trust, bank loan, credit agreement, or other agreement or instrument to which Debtor is a party;

(f)    There are no suits or proceedings pending or threatened in court or before any commission, board or other administrative agency against or affecting Debtor which could, in the aggregate, have a material adverse effect on Debtor, its business or operations, or its ability to perform its obligations under the Debt Documents;

(g)    All financial statements delivered to Secured Party in connection with the Indebtedness have been prepared in accordance with generally accepted accounting principles, and since the date of the most recent financial statement, there has been no material adverse change;

(h)    The Collateral is not, and will not be, used by Debtor for personal, family or household purposes;

(i)    The Collateral is, and will remain, in good condition and repair and Debtor will not be negligent in its care and use thereof;

(j)    Debtor is, and will remain, the sole and lawful owner, and in possession of, the Collateral, and has the sole right and lawful authority to grant the security interest described in this Agreement; and

(k)    The Collateral is, and will remain, free and clear of all liens, claims and encumbrances of every kind, nature and description, except for (i) liens in favor of Secured Party, (ii) liens for taxes not yet due or for taxes being contested in good faith and which do not involve, in the reasonable judgment of Secured Party, any risk of the sale, forfeiture or loss of any of the Collateral, and (iii) inchoate materialmen's, mechanic's, repairmen's and similar liens arising by operation of law in the normal course of business for amounts which are not delinquent (all of such permitted liens being hereinafter referred to as "Permitted Liens").

## 3.    COLLATERAL.

(a)    Until the declaration of any default hereunder, Debtor shall remain in possession of the Collateral; provided, however, that Secured Party shall have the right to possess (i) any chattel paper or instrument that constitutes a part of the Collateral, and (ii) any other Collateral which because of its nature may require that Secured Party's security interest therein be perfected by possession. Secured Party, its successors and assigns, and their respective agents, shall have the right to examine and inspect any of the Collateral at any time during normal business hours. Upon any request from Secured Party, Debtor shall provide Secured Party with notice of the then current location of the Collateral.

(b)    Debtor shall: (i) use the Collateral only in its trade or business, (ii) maintain all of the Collateral in good condition and working order, (iii) use and maintain the Collateral only in compliance with all applicable laws, and (iv) keep all of the Collateral free and clear of all liens, claims and encumbrances (except for Permitted Liens).

(c)    Secured Party does not authorize and Debtor agrees it shall not, (i) part with possession of any of the Collateral (except to Secured Party or for maintenance and repair), (ii) remove any of the Collateral from the continental United States, or (iii) sell, lease, mortgage, license, grant a security interest in or otherwise transfer or encumber (except for Permitted Liens) any of the Collateral.

(d)    Debtor shall pay promptly when due all taxes, license fees, assessments and public and private charges levied or assessed on any of the Collateral, on the use thereof, or on this Agreement or any of the other Debt Documents. At its option, Secured Party may discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Collateral and may pay for the maintenance, insurance and preservation of the Collateral or to effect compliance with the terms of this Agreement or any of the other Debt Documents. Debtor shall reimburse Secured Party, on demand, for any and all costs and expenses incurred by Secured Party in connection therewith and agrees that such reimbursement or obligation shall be secured hereby.

(e)    Debtor shall, at all times, keep accurate and complete records of the Collateral, and Secured Party, its successors and assigns, and their respective agents, shall have the right to examine, inspect, and make extracts from all of Debtor's books and records relating to the Collateral at any time during normal business hours.

(f)    If agreed by the parties, Secured Party may, but shall in no event be obligated to, accept substitutions and exchanges of property for property, and additions to the property, constituting all or any part of the Collateral. Such substitutions, exchanges and additions shall be accomplished at any time and from time to time, by the substitution of a revised Collateral Schedule for the Collateral Schedule now or hereafter annexed. Any property which may be substituted, exchanged or added as aforesaid shall constitute a portion of the Collateral and shall be subject to the security interest granted herein. Additions to, reductions or exchanges of, or substitutions for, the Collateral, payments on account of any obligation or liability secured hereby, increases in the obligations and liabilities secured hereby, or the creation of additional obligations and liabilities secured hereby, may from time to time be made or occur without affecting the provisions of this Agreement or the provisions of any obligation or liability which this Agreement secures.

(g)    Any third person at any time and from time to time holding all or any portion of the Collateral shall be deemed to, and shall, hold the Collateral as the agent of, and as pledge holder for, Secured Party. At any time and from time to time, Secured Party may give notice to any third person holding all or any portion of the Collateral that such third person is holding the Collateral as the agent of, and as pledge holder for, the Secured Party.

## 4.    INSURANCE.

The Collateral shall at all times be held at Debtor's risk, and Debtor shall keep it insured against loss or damage by fire and extended coverage perils, theft, burglary, and for any or all Collateral which are vehicles, for risk of loss by collision, and where request (i) by Secured Party, against other risks as required thereby, for the full replacement value thereof, with companies, in amounts and under policies acceptable to Secured Party. Debtor shall, if Secured Party so requires, deliver to Secured Party policies or certificates of insurance evidencing such coverage. Each policy shall name Secured Party as loss payee thereunder, shall provide for coverage to Secured Party regardless of the breach by Debtor of any warranty or representation made therein, shall not be subject to co-insurance, and shall provide for thirty (30) days written notice to Secured Party of the cancellation or material modification thereof. Debtor hereby appoints Secured Party as its attorney in fact to make proof of loss, claim for insurance and adjustments with insurers, and to execute or endorse all documents, checks or drafts in connection with payments made as a result of any such insurance policies. Proceeds of insurance shall be applied, at the option of Secured Party, to repair or replace the Collateral or to reduce any of the Indebtedness secured hereby.

## 5.    REPORTS.

(a)    Debtor shall promptly notify Secured Party in the event of (i) any change in the name of Debtor, (ii) any change in the state of its incorporation or registration, (iii) any relocation of its chief executive offices, (iv) any relocation of any of the Collateral, (v) any of the Collateral being lost, stolen, missing, destroyed, materially damaged or worn out, or (vi) any lien, claim or encumbrance attaching or being made against any of the Collateral other than Permitted Liens.

(b)    Debtor agrees to furnish its annual financial statements and such interim statements as Secured Party may require in form satisfactory to Secured Party. Any and all financial statements submitted and to be submitted to Secured Party have and will have been prepared on a basis of generally accepted accounting principles, and are and will be complete and correct and fairly present Debtor's financial condition as at the date thereof. Secured Party may at any reasonable time examine the books and records of Debtor and make copies thereof.

## 6.    FURTHER ASSURANCES.

(a)    Debtor shall, upon request of Secured Party, furnish to Secured Party such further information, execute and deliver to Secured Party such documents and instruments (including, without limitation, Uniform Commercial Code financing statements) and do such other acts and things, as Secured Party may at any time reasonably request relating to the perfection or protection of the security interest created by this Agreement or for the purpose of carrying out the intent of this Agreement. Without limiting the foregoing, Debtor shall cooperate and do all acts deemed necessary or advisable by Secured Party to continue in Secured Party a perfected first security interest in the Collateral, and shall obtain and furnish to Secured Party any subordinations, releases, landlord waivers, lessor waivers, mortgagee waivers, or control agreements, and similar documents as may be from time to time requested by, and which are in form and substance satisfactory to, Secured Party.

(b)    Debtor authorizes Secured Party to file a financing statement and amendments thereto describing the Collateral and containing any other information required by the applicable Uniform Commercial Code. Debtor hereby grants to Secured Party the power to sign Debtor's name and generally to act on behalf of Debtor to execute and file applications for title, transfers of title, financing statements, notices of lien and other documents pertaining to any or all of the Collateral. Debtor shall, if any certificate of title be required or permitted by law for any of the Collateral, obtain such certificate showing the lien hereof

with respect to the Collateral and promptly deliver same to Secured Party. Debtor ratifies its prior authorization for Secured Party to file financing statements and amendments thereto describing the Collateral and containing any other information required by the Uniform Commercial Code if filed prior to the date hereof.

(c)    Debtor shall indemnify and defend the Secured Party, its successors and assigns, and their respective directors, officers and employees, from and against any and all claims, actions and suits (including, without limitation, related attorneys' fees) of any kind, nature or description whatsoever arising, directly or indirectly, in connection with any of the Collateral.

## 7.    EVENTS OF DEFAULT.

Debtor shall be in default under this Agreement and each of the other Debt Documents upon the occurrence of any of the following "Event(s) of Default":

(a)    Debtor fails to pay any installment or other amount due or coming due under any of the Debt Documents within ten (10) days after its due date;

(b)    Any attempt by Debtor, without the prior written consent of Secured Party, to sell, rent, lease, license, mortgage, grant a security interest in, or otherwise transfer or encumber (except for Permitted Liens) any of the Collateral;

(c)    Debtor fails to procure, or maintain in effect at all times, any of the insurance on the Collateral in accordance with Section 4 of this Agreement;

(d)    Debtor breaches any of its other obligations under any of the Debt Documents and fails to cure the same within thirty (30) days after written notice thereof;

(e)    Any warranty, representation or statement made by Debtor in any of the Debt Documents or otherwise in connection with any of the Indebtedness shall be false or misleading in any material respect;

(f)    Any of the Collateral being subjected to, or being threatened with, attachment, execution, levy, seizure or confiscation in any legal proceeding or otherwise;

(g)    Any default by Debtor or any guarantor (as defined below) under any other agreement between such party and Secured Party or any parent affiliate or subsidiary of Secured Party;

(h)    Any dissolution, termination of existence, insolvency or business failure of Debtor or any guarantor or other obligor for any of the Indebtedness (collectively "Guarantor"), or if Debtor or any Guarantor is a natural person, any death or incompetency of Debtor or such Guarantor;

(i)    The appointment of a receiver for all or of any part of the property of Debtor or any Guarantor, or any assignment for the benefit of creditors by Debtor or any Guarantor;

(j)    The filing of a petition by Debtor or any Guarantor under any bankruptcy, insolvency or similar law, or the filing of any such petition against Debtor or any Guarantor if the same is not dismissed within thirty (30) days of such filing;

(k)    Debtor's improper filing of an amendment or termination statement relating to a filed financing statement describing the Collateral; or

(l)    Any Guarantor revokes or attempts to revoke its guaranty of any of the indebtedness or fails to observe or perform any covenant, condition or agreement to be performed under any guaranty or other related document to which it is a party.

## 8.    REMEDIES ON DEFAULT.

(a)    Upon the occurrence of an Event of Default under this Agreement, the Secured Party, at its option, may declare any or all of the Indebtedness, including without limitation the Notes, to be immediately due and payable, without demand or notice to Debtor or any Guarantor. The obligations and liabilities accelerated thereby shall bear interest (both before and after any judgment) until paid in full at the lower of a) fifteen percent (18%) per annum or the maximum rate not prohibited by applicable law. A default under the terms of this Agreement shall constitute a default under any other agreement Debtor has with Secured Party, or any parent, affiliate or subsidiary of Secured Party.

(b)    Upon such declaration of default, Secured Party shall have all of the rights and remedies of a Secured Party under the Uniform Commercial Code, and under any other applicable law. Without limiting the foregoing, Secured Party shall have the right to: (i) notify any account debtor of Debtor or any obligor on any instrument which constitutes part of the Collateral to make payment to the Secured Party, (ii) with or without legal process, enter any premises where the Collateral may be and take possession and/or remove said Collateral from said premises, (iii) sell the Collateral at public or private sale, in whole or in part, and have the right to bid and purchase at said sale, and/or (iv) lease or otherwise dispose of all or part of the Collateral, applying proceeds therefrom to the obligations then in default. If requested by Secured Party, Debtor shall promptly assemble the Collateral and make it available to Secured Party at a place to be designated by Secured Party which is reasonably convenient to both parties. Secured Party may also render any or all of the Collateral unusable at the Debtor's premises and may dispose of such Collateral on such premises without liability for rent or costs. Any notice which Secured Party is required to give to Debtor under the Uniform Commercial Code of the time and place of any public sale or the time after which any private sale or other intended disposition of the Collateral is to be made shall be deemed to constitute reasonable notice if such notice is given to the last known address of Debtor at least five (5) days prior to such action.

(c)    Proceeds from any sale or lease or other disposition shall be applied: first, to all costs of repossession, storage, and disposition including without limitation attorneys', appraisers', and auctioneers' fees; second, to discharge the obligations then in default; third, to discharge any other indebtedness of Debtor to Secured Party, whether as obligor, endorser, guarantor, surety or indemnitor; fourth, to expenses incurred in paying or settling liens and claims against the Collateral; and lastly, to Debtor, if there exists any surplus. Debtor shall remain fully liable for any deficiency.

(d)    In the event this Agreement, any Note or any other Debt Documents are placed in the hands of an attorney for collection of money due or to become due or to obtain performance of any provision hereof, Debtor agrees to pay all reasonable attorneys' fees incurred by Secured Party, and further agrees that payment of such fees is secured hereunder. Debtor and Secured Party agree that such fees to the extent not in excess of twenty percent (20%) of subject amount owing after default (if permitted by law, or such lesser sum as may otherwise be permitted by law) shall be deemed reasonable.

(e)    Secured Party's rights and remedies hereunder or otherwise arising are cumulative and may be exercised singularly or concurrently. Neither the failure nor any delay on the part of the Secured Party to exercise any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or

partial exercise of any right, power or privilege preclude any other or further exercise thereof or the exercise of any other right, power or privilege. Secured Party shall not be deemed to have waived any of its rights hereunder or under any other agreement, instrument or paper signed by Debtor unless such waiver be in writing and signed by Secured Party. A waiver on any one occasion shall not be construed as a bar to or waiver of any right or remedy on any future occasion.

(f)  DEBTOR HEREBY UNCONDITIONALLY WAIVES ITS RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS AGREEMENT, ANY OF THE OTHER DEBT DOCUMENTS, ANY OF THE INDEBTEDNESS SECURED HEREBY, ANY DEALINGS BETWEEN DEBTOR AND SECURED PARTY RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN DEBTOR AND SECURED PARTY. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT, ANY OTHER DEBT DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION. IN THE EVENT OF LITIGATION THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

## 9.  MISCELLANEOUS.

(a)  This Agreement, any Note and/or any of the other Debt Documents may be assigned, in whole or in part, by Secured Party without notice to Debtor, and Debtor hereby waives any defense, counterclaim or cross-complaint by Debtor against any assignee, agreeing that Secured Party shall be solely responsible therefor.

(b)  All notices to be given in connection with this Agreement shall be in writing, shall be addressed to the parties at their respective addresses set forth hereinabove (unless and until a different address may be specified in a written notice to the other party), and shall be deemed given (i) on the date of receipt if delivered in hand or by facsimile transmission, (ii) on the next business day after being sent by express mail, and (iii) on the fourth business day after being sent by regular, registered or certified mail. As used herein, the term "business day" shall mean and include any day other than Saturday, Sunday, or other days on which commercial banks in New York, New York are required or authorized to be closed.

(c)  Secured Party may correct patent errors herein and fill in all blanks herein or in any Collateral Schedule consistent with the agreement of the parties.

(d)  Time is of the essence hereof. This Agreement shall be binding, jointly and severally, upon all parties described as the "Debtor" and their respective heirs, executors, representatives, successors and assigns, and shall inure to the benefit of Secured Party, its successors and assigns.

(e)  This Agreement and its Collateral Schedules constitute the entire agreement between the parties with respect to the subject matter hereof and supersede all prior understandings (whether written, verbal or implied) with respect thereto. This Agreement and its Collateral Schedules shall not be changed or terminated orally or by course of conduct, but only by a writing signed by both parties hereto. Section headings contained in this Agreement have been included for convenience only, and shall not affect the construction or interpretation hereof.

(f)  This Agreement shall continue in full force and effect until all of the Indebtedness has been indefeasibly paid in full to Secured Party or its assignee. The surrender, upon payment or otherwise, of any Note or any of the other documents evidencing any of the Indebtedness shall not affect the right of Secured Party to retain the Collateral for such other Indebtedness as may then exist or as it may be reasonably contemplated will exist in the future. This Agreement shall automatically be reinstated in the event that Secured Party is ever required to return or restore the payment of all or any portion of the Indebtedness (all as though such payment had never been made).

(g)  THIS AGREEMENT, THE NOTES AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER AND THEREUNDER SHALL IN ALL RESPECTS BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF CONNECTICUT (WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES OF SUCH STATE), INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, REGARDLESS OF THE LOCATION OF THE COLLATERAL. THE PARTIES FURTHER AGREE THAT ALL ACTIONS OR PROCEEDINGS ARISING, DIRECTLY OR INDIRECTLY, FROM THIS AGREEMENT OR THE NOTES, SHALL BE LITIGATED, AT THE OPTION OF SECURED PARTY, IN COURTS HAVING SITUS WITHIN THE STATE OF CONNECTICUT, AND DEBTOR HEREBY CONSENTS TO THE PERSONAL JURISDICTION OVER DEBTOR BY ANY LOCAL, STATE OR FEDERAL COURT SELECTED BY SECURED PARTY THAT IS LOCATED WITHIN THE STATE OF CONNECTICUT. DEBTOR WAIVES ANY OBJECTION TO VENUE IN ANY SUCH ACTION AND AGREES NOT TO DISTURB SUCH CHOICE OF FORUM BY SECURED PARTY. DEBTOR HEREBY CONSENTS TO SERVICE OF PROCESS BY MAIL AND THAT SUCH SERVICE BY MAILING SHALL CONSTITUTE DUE AND PERSONAL SERVICE UPON DEBTOR.

IN WITNESS WHEREOF, Debtor and Secured Party, intending to be legally bound hereby, have duly executed this Agreement in one or more counterparts, each of which shall be deemed to be an original, as of the day and year first aforesaid.

SECURED PARTY:
General Electric Capital Corporation

By: _____

Title:  ___Risk Analyst___

DEBTOR:
Rural Ocean Tours, Inc.

By: _____

Title:  ___President___

**EXHIBIT R**

(3/91)4172047001



## COLLATERAL SCHEDULE NO. 001

**THIS COLLATERAL SCHEDULE NO. 001** is annexed to and made a part of that certain Master Security Agreement dated as of December 30, 2005 between General Electric Capital Corporation, together with its successors and assigns, I any, as Secured Party and Rurak Ocean Tours, Inc. as Debtor and describes collateral in which Debtor has granted Secured Party a security interest in connection with the Indebtedness (as defined in the Security Agreement) including without limitation that certain Promissory Note dated ___12/2305___ in the original principal amount of $443,985.57.

| Quantity | Manufacturer | Serial Number | Year/Model and Type of Equipment |
|---|---|---|---|
| One (1) | MCI | 1M8TRM1A3YP061316 | 2000 1C3EL3 Intercity Motorcoach |
| One (1) | MCI | 1M8TRM1A5YP061317 | 2000 1C3EL3 Intercity Motorcoach |

Equipment immediately listed above is located at: 130 Green Street,  Brooklyn, Kings County, NY 11222

and including all additions, attachments, accessories and unexxions thereto, and any and all substitutions, replacements or exchanges therefor, and all insurance and/or other proceeds thereof.

SECURED PARTY:

General Electric Capital Corporation

By: _____

Name: Robert Austin

Title: **Risk Analyst**

Date: 12-30-05

DEBTOR:

Rurak Ocean Tours, Inc

By: X _____

Name: **Michael Colangelo**

Title: **President**

Date: X **12/13/05**

**EXHIBIT S**



NEW YORK STATE

CERTIFICATE OF TITLE

**VOID IF ALTERED**

Title and Identification No.
1M8TRM1A3YP061316

| Color | Wt./Sts./Lgth. | Fuel | Cyl./Prop. | Year | Make | Model Code | Body/Hull | Document No. |
|-------|---------------|------|-----------|------|------|-----------|-----------|-------------|
| WH | 38960 | DIE | 6 | 2000 | MCI | N/A | BUS | 229632K |

Name and Address of Owner(s)
GENERAL ELECTRIC
CAPITAL CORP
11010 PRAIRIE LKS DR
EDEN PRAIRIE MN 55344

New or Used
NEW

Type of Title
VEHICLE

ODOMETER READING:
01740

ACTUAL MILEAGE

Date Issued
4/25/00

MV

NEW YORK STATE

This document is your proof of ownership for this vehicle, boat or manufactured home. Keep it in a safe place, not with your license or registration or in your vehicle or boat. To dispose of your vehicle, boat or manufactured home, complete the transfer section on the back and give this title to the new owner.

Lienholder

Lienholder

Lienholder

Lienholder

DEPARTMENT OF MOTOR VEHICLES

MV-899I(11/99)

4160762-001

001295



NEW YORK STATE

CERTIFICATE OF TITLE

VOID IF ALTERED

Title and Identification No.
1M8TRM1A5YP061317

Color    Wt/Sts/Lgth.    Fuel    Cyl/Prop.
WH    38960    DIE    6

Name and Address of Owner(s)
GENERAL ELECTRIC
CAPITAL CORP
11010 PRAIRIE LKS DR
EDEN PRAIRIE MN    55344

Year    Make    New or Used    Type of Title
2000    MCI    NEW    N/A

ODOMETER READING
ACTUAL MILEAGE    01729

Body/Hull
BUS

Date issued
4/25/00

Document No.
509704M

This document is your proof of ownership for this vehicle, boat or manufactured home. Keep it in a safe place, not with your license or registration or in your vehicle or boat. To dispose of your vehicle, boat or manufactured home, complete the transfer section on the back and give this title to the new owner.

Lienholder    Lienholder

Lienholder    Lienholder

DEPARTMENT OF MOTOR VEHICLES

MV-999(11/99)

VOID IF ALTERED

001296

**EXHIBIT T**

2205 (R102905) 112470462

# CORPORATE GUARANTY

Date: X _Dicember 29, 2005_

General Electric Capital Corporation
11010 Prairie Lakes Drive Suite 150
Eden Prairie, MN 55344

To induce you to enter into, purchase or otherwise acquire, now or at any time hereafter, any promissory notes, security agreements, chattel mortgages, pledge agreements, conditional sale contracts, lease agreements, and/or any other documents or instruments evidencing, or relating to, any lease, loan, extension of credit or other financial accommodation (collectively "Account Documents" and each an "Account Document") to Buxah Ocean Tours, Inc., a corporation organized and existing under the laws of the State of New York ("Customer"), but without in any way binding you to do so, the undersigned, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, does hereby guarantee to you, your successors and assigns, the due regular and punctual payment of any sum or sums of money which the Customer may owe to you now or at any time hereafter, whether evidenced by an Account Document, on open account or otherwise, and whether it represents principal, interest, rent, late charges, indemnities, an original balance, an accelerated balance, liquidated damages, a balance reduced by partial payment, a deficiency after sale or other disposition of any leased equipment, collateral or security, or any other type of sum of any kind whatsoever that the Customer may owe to you now or at any time hereafter, and does hereby further guarantee to you, your successors and assigns, the due, regular and punctual performance of any other duty or obligation of any kind or character whatsoever that the Customer may owe to you now or at any time hereafter (all such payment and performance obligations being collectively referred to as "Obligations"). Undersigned does hereby further guarantee to pay upon demand all losses, costs, attorneys' fees and expenses which may be suffered by you by reason of Customer's default or default of the undersigned. As used in this Guaranty, "you" shall mean General Electric Capital Corporation and all its subsidiaries.

This Guaranty is a guaranty of prompt payment and performance (and not merely a guaranty of collection). Nothing herein shall require you to first seek or exhaust any remedy against the Customer, its successors and assigns, or any other person obligated with respect to the Obligations, or to first foreclose, exhaust or otherwise proceed against any leased equipment, collateral or security which may be given to you in connection with the Obligations. It is agreed that you may, upon any breach or default of the Customer, or at any time thereafter, make demand upon the undersigned and receive payment and performance of the Obligations, with or without notice or demand for payment or performance by the Customer, its successors or assigns, or any other person. Suit may be brought and maintained against the undersigned, at your election, without joinder of the Customer or any other person as parties thereto. The obligations of each signatory to this Guaranty shall be joint and several.

The undersigned agrees that its obligations under this Guaranty shall be primary, absolute, continuing and unconditional, irrespective of and unaffected by any of the following actions or circumstances (regardless of any notice to or consent of the undersigned): (a) the genuineness, validity, regularity and enforceability of the Account Documents or any other document; (b) any extension, renewal, amendment, change, waiver or other modification of the Account Documents or any other document; (c) the absence of, or delay in, any action to enforce the Account Documents, this Guaranty or any other document; (d) your failure or delay in obtaining any other guaranty of the Obligations (including, without limitation, your failure to obtain the signature of any other guarantor hereunder); (e) the release of, extension of time for payment or performance by, or any other indulgence granted to the Customer or any other person with respect to the Obligations by operation of law or otherwise; (f) the existence, value, condition, loss, subordination or release (with or without substitution) of, or failure to have title to or perfect and maintain a security interest in, or the time, place and manner of any disposition of any leased equipment, collateral or security given in connection with the Obligations, or any other impairment (whether intentional or negligent) by operation of law or otherwise) of the rights of the undersigned; (g) the Customer's voluntary or involuntary bankruptcy, assignment for the benefit of creditors, reorganization, or similar proceedings affecting the Customer or any of its assets; or (h) any other action or circumstances which might otherwise constitute a legal or equitable discharge or defense of a surety or guarantor.

This Guaranty, the Account Documents and the Obligations may be assigned by you, without the consent of the Undersigned. The Undersigned agrees that if it receives written notice of an assignment from you, the Undersigned will pay all amounts due hereunder to such assignee or as instructed by you. The Undersigned also agrees to confirm in writing receipt of the notice of assignment as may be reasonably required by assignee. The Undersigned hereby waives and agrees not to assert against any such assignee any of the defenses set forth in the immediate preceding paragraph.

This Guaranty may be terminated upon delivery to you (at your address shown above) of a written termination notice from the undersigned. However, as to all Obligations (whether matured, unmatured, absolute, contingent or otherwise) incurred by the Customer prior to your receipt of such written termination notice (and regardless of any subsequent amendment, extension or other modification which may be made with respect to such Obligations), this Guaranty shall nevertheless continue and remain undischarged until all such Obligations are indefeasibly paid and performed in full.

The undersigned agrees that this Guaranty shall remain in full force and effect or be reinstated (as the case may be) if at any time payment or performance of any of the Obligations (or any part thereof) is rescinded, reduced or must otherwise be restored or returned by you, all as though such payment or performance had not been made. If, by reason of any bankruptcy, insolvency or similar laws affecting the rights of creditors, you shall be prohibited from exercising any of your rights or remedies against the Customer or any other person or against any property, then, as between you and the undersigned, such prohibition shall be of no force and effect, and you shall have the right to make demand upon, and receive payment from, the undersigned of all amounts and other sums that would be due to you upon a default with respect to the Obligations.

Notice of acceptance of this Guaranty and of any default by the Customer or any other person is hereby waived. Presentment, protest demand, and notice of protest, demand and dishonor of any of the Obligations, and the exercise of possessory, collection or other remedies for the Obligations, are hereby waived. The undersigned warrants that it has adequate means to obtain from the Customer on a continuing basis financial data and other information regarding the Customer and is not relying upon you to provide any such data or other information. Without limiting the foregoing, notice of adverse change in the Customer's financial condition or of any other fact which might materially increase the risk of the undersigned is also waived. All settlements, compromises, accounts stated and agreed balances made in good faith between the Customer, its successors or assigns, and you shall be binding upon and shall not affect the liability of the undersigned.

Payment of all amounts now or hereafter owed to the undersigned by the Customer or any other obligor for any of the Obligations is hereby subordinated in right of payment to the indefeasible payment in full to you of all Obligations and is hereby assigned to you as a security therefor. The undersigned hereby irrevocably and unconditionally waives and relinquishes all statutory, contractual, common law, equitable and all other claims against the Customer, any other obligor for any of the Obligations, any collateral therefor, or any other assets of the Customer or any such other obligor, for subrogation, reimbursement, exoneration, contribution, indemnification, setoff or other recourse in respect of sums paid or payable to you by the undersigned hereunder, and the undersigned hereby further irrevocably and unconditionally waives and relinquishes any and all other benefits which it might otherwise directly or indirectly receive or be entitled to receive by reason of any amounts paid by, or collected or due from, it, the Customer or any other obligor for any of the Obligations, or realized from any of their respective assets.

THE UNDERSIGNED HEREBY UNCONDITIONALLY WAIVES ITS RIGHT TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS BETWEEN US RELATING TO THE SUBJECT MATTER HEREOF OR THEREOF, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN US. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). THIS WAIVER IS IRREVOCABLE MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, OR ANY RELATED DOCUMENTS. IN THE EVENT OF LITIGATION, THIS GUARANTY MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

As used in this Guaranty, the word "person" shall include any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization, or any government or any political subdivision thereof.

This Guaranty is intended by the parties as a final expression of the guaranty of the undersigned and is also intended as a complete and exclusive statement of the terms thereof. No course of dealing, course of performance or trade usage, nor any paid evidence of any kind, shall be used to supplement or modify any of the terms hereof. Nor are there any conditions to the full effectiveness of this Guaranty. This Guaranty and each of its provisions may only be waived, modified, varied, released, terminated or surrendered, in whole or in part, by a duly authorized written instrument signed by you. No failure by you to exercise your rights hereunder shall give rise to any estoppel against you, or excuse the undersigned from performing hereunder. Your waiver of any right to demand performance hereunder shall not be a waiver of any subsequent or other right to demand performance hereunder.

This Guaranty shall be governed by, or construed in accordance with, the laws of the State of Connecticut. This Guaranty shall bind the undersigned's successors and assigns and the benefits thereof shall extend to and include your successors and assigns. The undersigned will deliver to you its complete financial statements, certified by a recognized firm of certified public accountants, within ninety (90) days of the close of each fiscal year of the undersigned. If you request, the undersigned will deliver to you copies of its quarterly financial reports certified by its chief financial officer, within ninety (90) days after the close of each fiscal quarter of the undersigned and copies of its most current tax returns. The undersigned will deliver to you copies of all Forms 10-K and 10-Q, if any, within 30 days after the dates on which they are filed with the Securities and Exchange Commission. In addition, in the event of default hereunder, you may at any time inspect undersigned's records. The undersigned represents, warrants and covenants that all financial statements delivered to you in connection with this Guaranty have been (and will be) prepared in accordance with generally accepted accounting principles, and since the date of the most recent financial statements or other financial information delivered to you, there has been no material adverse change in the undersigned's financial condition.

If any provision of this Guaranty are in conflict with any applicable statute, rule or law, then such provisions shall be deemed null and void to the extent that they may conflict therewith, but without invalidating any other provisions hereof.

Each signatory on behalf of a corporate guarantor warrants that he had authority to sign on behalf of such corporation and by so signing, to bind said guarantor corporation hereunder.

**IN WITNESS WHEREOF,** this Guaranty is executed the day and year above written.

Royal Tours Service, Inc.

By:  X _____
        (Signature)

Title:  X _____
        (Officer's Title)

ATTEST:  _____
        Secretary/Assistant Secretary

DISTRICT COURT OF THE SOUTHERN DISTRICT OF NEW YORK

CASE NO.

---

GENERAL ELECTRIC CAPITAL CORPORATION,

       Plaintiff,

-against-

RURAK OCEAN TOURS, INC., ROYAL TOURS
SERVICE, INC., HIROAKI ONUKI, MICHAEL
COLANGELO, PREMIER COACH, INC., AGIM
LOZOJA,

       Defendant.

---

## SUMMONS AND COMPLAINT

---

Attorneys for the Plaintiff

*Office and Post Office Address, Telephone*
PERETORE & PERETORE, P.C.
110 Park Street
Staten Island, NY 10306
(718) 667-8785